# EXHIBIT 1

US011058667B2

(12) **United States Patent**
Rizkala et al.

(10) Patent No.: **US 11,058,667 B2**
(45) **Date of Patent:** **Jul. 13, 2021**

(54) **SACUBITRIL-VALSARTAN DOSAGE REGIMEN FOR TREATING HEART FAILURE**

(71) Applicant: **Novartis AG**, Basel (CH)

(72) Inventors: **Adel Remond Rizkala**, East Brunswick, NJ (US); **Victor Chengwei Shi**, Mendham, NJ (US); **Fabian Chen**, Englewood Cliffs, NJ (US)

(73) Assignee: **Novartis AG**, Basel (CH)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **15/572,399**

(22) PCT Filed: **May 9, 2016**

(86) PCT No.: **PCT/IB2016/052633**
§ 371 (c)(1),
(2) Date: **Nov. 7, 2017**

(87) PCT Pub. No.: **WO2016/181284**
PCT Pub. Date: **Nov. 17, 2016**

(65) **Prior Publication Data**
US 2018/0125820 A1     May 10, 2018

**Related U.S. Application Data**

(60) Provisional application No. 62/159,703, filed on May 11, 2015.

(51) **Int. Cl.**
| *A61K 31/41* | (2006.01) |
| *A61K 31/225* | (2006.01) |
| *A61P 9/04* | (2006.01) |

(52) **U.S. Cl.**
CPC ............ *A61K 31/41* (2013.01); *A61K 31/225* (2013.01); *A61P 9/04* (2018.01); *A61K 2300/00* (2013.01)

(58) **Field of Classification Search**
CPC .. A61K 31/41; A61K 31/225; A61K 2300/00; A61P 9/04
See application file for complete search history.

(56) **References Cited**

FOREIGN PATENT DOCUMENTS

WO     WO-2014029848 A1 *   2/2014   .......... A61K 31/194

OTHER PUBLICATIONS

NCT01922089—version from Nov. 20, 2013 (v3) retrieved Jul. 16, 2018 (Year: 2013).*

Kobalava et al., "First Experience with Concomitant AT1 and Neprilysin (NEP 24.11) Inhibition with LCZ696 in Patients with Chronic Heart Failure", Circulation, vol. 122, No. 21 (supplement), A19278, Nov. 23, 2010 (Nov. 23, 2010).

McMurray et al., "Dual angiotensin receptor and neprilysin inhibition as an alternative to angiotensin-converting enzyme inhibition in patients with chronic systolic heart failure: rationale for and design of the Prospective comparison of ARNI with ACEI to Determine Impact", European Journal of Heart Failure, vol. 15, No. 9, Apr. 5, 2013 (Apr. 5, 2013)., pp. 1062-1073.

McMurray et al., "Angiotensin-Neprilysin Inhibition versus Enalapril in Heart Failure", New England Journal of Medicine, vol. 371, No. 11, Sep. 11, 2014 (Sep. 11, 2014), pp. 993-1004.

Gu et al., "Pharmacokinetics and pharmacodynamics of LCZ696, a novel dual-acting angiotensin receptor-neprilysin inhibitor (ARNi)", Journal of Clinical Pharmacology, vol. 50, No. 4, Apr. 1, 2010 (Apr. 1, 2010), pp. 401-414.

Kario et al., "LCZ696, a First-in-Class Angiotensin Receptor-Neprilysin Inhibitor: The First Clinical Experience in Patients With Severe Hypertension", The Journal of Clinical Hypertension, vol. 18, No. 4, Sep. 24, 2015 (Sep. 24, 2015), pp. 308-314.

Anonymous: "Entresto Prescribing Information", Aug. 1, 2015 (Aug. 1, 2015) [Retrieved from the Internet: URL: ttps://www. pharma.us.novartis.com/sites/www.pharma.us.novartis.com/files/ entresto.pdf] [retrieved on Jun. 16, 2016] See section 2.1: Dosing [retrieved on Jun. 16, 2016].

Anonymous:"Safety and Tolerability of Initiating LCZ696 in Heart Failure Patients—Full Text View—ClinicalTrials.gov", Aug. 12, 2013 (Aug. 12, 2013), [Retrieved from the Internet: URL:https:// clincialtrials.gov/jct2/show/NCT01922089?term=NCT01922089 &rank=1] [retrieved on Jun. 16, 2016].

Solomon, et al., "The angiotensin receptor neprilysin inhibitor LCZ696 in heart failure with preserved ejection fraction: a phase 2 double-blind randomised controlled trial", Lancet, 380:1387-95. 2012.

Senni et al., "Initiating sacubitril/valsartan (LCZ696) in heart failure: results of Titration, a double-blind, randomized aomparison of two uptitration regimens", including Supplemental Appendix p. 1-9, European Journal of Heart Failure (May 12, 2016) 18, 1193-1202.

Entresto Dosing and Titration Guide (2019).

Entresto Prescribing information (Jul. 2015).

Entresto Dosing and Titration Guide (2017).

Entresto Dosing and Titration Guide (2015).

Entresto Dosing and Safety, https://www.entrestohcp.com/dosing-and-safety (2020).

"Titration study confirms LCZ696 safe and tolerated in clinical practice. More than 70% of HFrEF patients achieved the target dose", European Society of Cardiology Press release (May 23, 2015).

Brauser, "Titration: Two LCZ696 Dosing Regimens Appear Safe, Tolerable for Range of HFrEF Patients", Medscape (May 25, 2015).

* cited by examiner

*Primary Examiner* — Sarah Pihonak
*Assistant Examiner* — Jason Deck
(74) *Attorney, Agent, or Firm* — Meghan S. Adams

(57) **ABSTRACT**

The present invention relates to sacubitril-valsartan dosage regimens for the treatment of heart failure in a patient.

**19 Claims, 1 Drawing Sheet**



NPC-VS-667-000037837

US 11,058,667 B2

1

**SACUBITRIL-VALSARTAN DOSAGE REGIMEN FOR TREATING HEART FAILURE**

RELATED APPLICATIONS

This application is a national stage application, filed under 35 U.S.C. § 371, of International Application No. PCT/IB2016/052633, filed May 9, 2016, which claims priority to and the benefit of U.S. Provisional Application No. 62/159,703, filed May 11, 2015, the entire contents of each of which are incorporated herein by reference in their entireties.

FIELD OF THE INVENTION

The present invention relates to novel methods and pharmaceutical compositions for the treatment of heart failure in a patient, in particular to a regimen for treating heart failure which comprises administering to a patient in need thereof a twice-daily target dose of an Angiotensin Receptor Neprilysin inhibitor (ARNi) or of a combination of an Angiotensin Receptor Blocker (ARB) with a Neutral Endopeptidase inhibitor (NEPi) or with a NEPi pro-drug, wherein said target dose is reached after a titration with an initial lower twice-daily dose of said ARNI increasing to the twice daily target dose from about 2 to about 8 weeks.

BACKGROUND OF THE INVENTION

Chronic heart failure (CHF) is a major public health problem characterized by significant mortality, frequent hospitalization, and poor quality of life, with an overall prevalence that is increasing throughout the world. In the United States (US) alone, approximately 5 million patients have heart failure (HF) and there are over half a million newly diagnosed cases annually. In Europe, the prevalence of HF is between 2 and 3%, and that in the elderly is estimated between 10 to 20%.

Medical therapies targeted at improving outcomes in HF with a low LVEF have been well studied over the past two decades, leading to an improvement in survival as well as a decrease in morbidity, mostly in the form of decrease in re-hospitalization for HF. These medical therapies include angiotensin converting enzyme (ACE) inhibitors, angiotensin receptor blockers (ARBs), β-blockers and mineralo-corticoid antagonists.

However, despite advances in pharmacological (and device therapies), the outlook remains poor. Overall 50% of patients die within 4 years, and 40% of patients admitted to hospital with HF die or are readmitted within 1 year. Thus, HF still represents a major cause of cardiac mortality and morbidity with a clear need for better therapy.

LCZ696 is a first-in-class, angiotensin receptor neprilysin inhibitor (ARNI) being developed for the treatment of CHF. Following ingestion, LCZ696 provides systemic exposure to sacubitril (AHU377; (2R,4S)-5-biphenyl-4-yl-4-(3-carboxy-propionylamino)-2-methyl-pentanoic acid ethyl ester, also named N-(3-carboxy-1-oxopropyl)-(4S)-(p-phenylphenylmethyl)-4-amino-2R-methylbutanoic acid ethyl ester), a neprilysin (neutral endopeptidase 24.11, NEP) inhibitor (NEPi) and valsartan, an ARB, in a 1:1 molar ratio. AHU377 is further metabolized via esterases to the active NEPi, LBQ657. Neprilysin degrades biologically active natriuretic peptides (NPs), including atrial natriuretic peptide (ANP), B-type natriuretic peptide (BNP) and C-type natriuretic peptide (CNP). The effects of NEP inhibition are attributed to the enhanced effects of biologically active NPs. NPs,

2

acting through the second messenger cyclic guanosine monophosphate, have potent natriuretic and vasodilator properties, inhibit the activity of the renin-angiotensin-aldosterone system (RAAS), lower sympathetic drive and have anti-fibrotic and anti-hypertrophic effects. Angiotensin receptor blockade is specific and competitive at the angiotensin type 1 (AT1) receptor, which mediates the deleterious effects of angiotensin II on the cardiovascular system. LCZ696, through its dual mode of action, potentiates NPs via NEP inhibition while inhibiting the RAS via AT1 receptor blockade. Both of these mechanisms are considered to act in a complementary and additive manner to improve the morbidity and mortality of HF patients.

The clinical efficacy of LCZ696 in reducing the cardiovascular death and hospitalizations due to HF in HF-rEF patients was assessed in the LCZ696B2314 PARADIGM-HF study. The PARADIGM-HF study incorporated a single-blind, active run-in phase that was designed to assure a large proportion of patients will maintain target dose study drug during the long term study. Patients entered a single-blind active run-in in which they received enalapril 10 mg bid, followed by LCZ696 100 mg bid, and then LCZ696 200 mg bid. Patients must tolerate the study target dose of enalapril (10 mg bid) and the study target dose of LCZ696 (200 mg bid) for at least 2 weeks in order to be randomized. However, the active run-in phase of the PARADIGM-HF study design (the sequential use of enalapril followed by LCZ696) provided limited information on how the physician should initiate the LCZ696 therapy in clinical practice, in particular for those patients who are currently on the low dose of ACEIs or ARBs, or ACEI/ARB-naïve patients.

Accordingly there was a need to provide guidance on dosing and up-titration of LCZ696 (sacubitril and valsartan in a 1:1 molar ratio).

The compounds and pharmaceutical compositions disclosed herein include novel drug candidates potentially useful for the treatment of hypertension and/or heart failure. Such compounds or pharmaceutical compositions have been previously disclosed in WO 2003/059345, WO 2007/056546, WO 2009/061713 as well as WO2014029848, which are herein incorporated by reference.

SUMMARY OF THE INVENTION

Surprisingly, it has been shown with a regimen for treating heart failure which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio (e.g. LCZ696), wherein said target dose is reached after a titration with an initial twice-daily dose of at least 50 mg of sacubitril and valsartan in a 1:1 molar ratio increasing to the twice daily target dose of 200 mg of from about 2 to about 8 weeks, the target dose can be safely reached in the large majority of the patients.

The treatment success rate with sacubitril and valsartan in a 1:1 molar ratio (e.g. LCZ696) was even more improved if patients taking lower doses of ACEIs/ARBs (i.e., the low RAAS stratum) were up-titrated more gradually than patients who were taking higher doses of ACEIs/ARBs. The treatment success rate was 10% higher (85%) for patients in the low RAAS stratum given gradual up-titration over 6 weeks compared to those given condensed up-titration over 3 weeks. This difference was due to hypotension, hyperkalemia and renal dysfunction in most cases. On the other hand, surprisingly, there was no difference in the treatment success rate for high RAAS stratum patients, regardless of the rate of up-titration (3 weeks vs. 6 weeks).

NPC-VS-667-000037838

US 11,058,667 B2

3

Accordingly, the present invention, in a first embodiment relates to a regimen for treating heart failure which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio, wherein said target dose is reached after a titration with an initial twice-daily dose of at least 50 mg of sacubitril and valsartan in a 1:1 molar ratio increasing to the twice daily target dose of 200 mg of from about 2 to about 8 weeks.

In one embodiment thereof, the patient is a human patient.

In another embodiment thereof, the compound of formula (I) is trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696).

In another embodiment, the present invention relates to a regimen for treating heart failure which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio, wherein said dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter, and wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient not taking an angiotensin-converting enzyme (ACE) inhibitor or an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

In another embodiment, the present invention relates to a regimen for treating heart failure which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio, wherein said dose is reached after a titration with a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter and wherein the twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking higher doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

In another embodiment, the present invention relates to a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio for use in the treatment of heart failure in a patient, wherein said dose is reached after a titration with an initial twice-daily dose of at least 50 mg of sacubitril and valsartan in a 1:1 molar ratio increasing to the twice daily target dose of 200 mg for from about 2 to about 8 weeks.

In another embodiment, the present invention is directed to the use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient, wherein the medicament comprises a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio which is reached after a titration with an initial twice-daily dose of at least 50 mg of sacubitril and valsartan in a 1:1 molar ratio increasing to the twice daily target dose of 200 mg for from about 2 to about 8 weeks.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1** shows the study design for the multi-center, randomized, double-blind, parallel-group study conducted

4

to evaluate the safety and tolerability of LCZ696 comparing two up-titration regimens in both outpatients and hospitalized patients (inpatients) with HFrEF.

Definitions

Throughout this specification and in the claims that follow, the following terms are defined with the following meanings, unless explicitly stated otherwise.

The term "prevention" refers to prophylactic administration to a healthy subject to prevent the development of the conditions mentioned herein. Moreover, the term "prevention" means prophylactic administration to patients being in a pre-stage of the conditions to be treated.

The term "treatment" is understood the management and care of a patient for the purpose of combating the disease, condition or disorder.

The term "therapeutically effective amount" refers to an amount of a drug or a therapeutic agent that will elicit the desired biological and/or medical response of a tissue, system or an animal (including man) that is being sought by a researcher or clinician.

The terms "patient" include, but are not limited to, humans, dogs, cats, horses, pigs, cows, monkeys, rabbits and mice. The preferred patients are humans.

The terms "administration of" and/or "administering a" compound should be understood to mean providing a compound of the invention or a pharmaceutically acceptable salt or ester thereof, or a pro-drug thereof to a subject in need of treatment. The administration of the composition of the present invention in order to practice the present methods of therapy is carried out by administering a therapeutically effective amount of the compounds in the composition to a subject in need of such treatment or prophylaxis. The need for a prophylactic administration according to the methods of the present invention is determined via the use of well-known risk factors. The effective amount of an individual compound is determined, in the final analysis, by the physician in charge of the case, but depends on factors such as the exact disease to be treated, the severity of the disease and other diseases or conditions from which the patient suffers, the chosen route of administration, other drugs and treatments which the patient may concomitantly require, and other factors in the physician's judgment.

The term "prophylactically effective amount" as used herein means the amount of the active compounds in the composition that will elicit the biological or medical response in a tissue, system, subject, or human that is being sought by the researcher, veterinarian, medical doctor or other clinician, to prevent the onset of a disease characterized and/or manifested by atrial enlargement and/or remodeling.

The term "pharmaceutically acceptable", as used herein, refers to those compounds, materials, compositions and/or dosage forms, which are, within the scope of sound medical judgment, suitable for contact with the tissues of mammals, especially humans, without excessive toxicity, irritation, allergic response and other problem complications commensurate with a reasonable benefit/risk ratio.

The New York Heart Association (NYHA) classification grades the severity of heart failure symptoms as one of four functional classes. The NYHA classification is widely used in clinical practice and in research because it provides a standard description of severity that can be used to assess response to treatment and to guide management. The New York Heart Association functional classification based on severity of symptoms and physical activity:

NPC-VS-667-000037839

US 11,058,667 B2

5 6

Class I: No limitation of physical activity. Ordinary physical activity does not cause undue breathlessness, fatigue, or palpitations.

Class II: Slight limitation of physical activity. Comfortable at rest, but ordinary physical activity results in undue breathlessness, fatigue, or palpitations.

Class III: Marked limitation of physical activity. Comfortable at rest, but less than ordinary physical activity results in undue breathlessness, fatigue, or palpitations.

Class IV: Unable to carry on any physical activity without discomfort. Symptoms at rest can be present. If any physical activity is undertaken, discomfort is increased.

Choice of endpoints: Cardiovascular death and heart failure hospitalization both reflect disease-specific endpoints related to progressive worsening of the heart failure syndrome, and experienced by patients with systolic heart failure. These endpoints can be modified by treatments improving this condition, which has generally proved to be the case with drugs such as ACEIs, aldosterone antagonists, and 3-blockers as well as devices for cardiac resynchronization therapy.

In the context of the present invention, the term "sacubitril and valsartan in a 1:1 molar ratio" refers to an Angiotensin Receptor Neprilysin inhibitor (ARNi) which is

a) trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxy-carbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696), or

b) a combination comprising a therapeutically effective amount of a 1:1 molar ratio of
(i) valsartan or a pharmaceutically acceptable salt thereof; and
(ii) sacubitril or a pharmaceutically acceptable salt thereof.

## DETAILED DESCRIPTION OF THE INVENTION

This invention has shown based on the clinical trial TITRATION (see Example section) that the large majority of patients initiated on a treatment with sacubitril and valsartan in a 1:1 molar ration achieved and maintained the target dose of 200 mg twice daily without any dose interruption or down-titration over 12 weeks. More patients who were naïve to previous ACE inhibitor or ARB therapy or on low-dose therapy (equivalent to <10 mg enalapril/day) were able to achieve and maintain the 200 mg target dose when up-titrated over 6 weeks versus 3 weeks.

Accordingly, the present invention relates to the following:

Methods of Treatment

Embodiment 1

The invention encompasses a regimen for treating heart failure which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio, wherein said target dose is reached after a titration with an initial twice-daily dose of at least 50 mg of sacubitril and valsartan in a 1:1 molar ratio increasing to the twice daily target dose of 200 mg of from about 2 to about 8 weeks.

The invention is further described in the following embodiments, numbered 2 to 20:

2. A regimen for treating heart failure according to embodiment 1, wherein said dose is reached after a titration

with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

3. A regimen for treating heart failure according to embodiment 2, wherein said dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 3 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 3 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

4. A regimen for treating heart failure according to embodiment 1, wherein said dose is reached after a titration of a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

5. A regimen for treating heart failure according to embodiment 4, wherein said dose is reached after a titration of a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 2 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

6. A regimen for treating heart failure according to embodiment 2 or 3, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient not taking an angiotensin-converting enzyme (ACE) inhibitor or an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

7. A regimen for treating heart failure according to embodiment 2, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking low doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

8. A regimen for treating heart failure according to embodiment 7, wherein the lower dose of an ACEI or ARB is equivalent to <10 mg of enalapril per day.

9. A regimen for treating heart failure according to embodiment 1, wherein said treatment mitigates a risk selected from hypotension, hyperkalemia, and renal adverse events.

10. A regimen for treating heart failure according to embodiment 4 or 5, wherein the twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking higher doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

11. A regimen for treating heart failure according to embodiment 10, wherein the higher dose of an ACEI or ARB is equivalent to ≥10 mg of enalapril per day.

12. A regimen for treating heart failure according to embodiment 1, wherein the patient suffers from chronic systolic heart failure with reduced ejection fraction.

13. A regimen for treating heart failure according to embodiment 1, wherein the patient is a human patient.

14. A regimen for treating heart failure according to embodiment 1, wherein the patient has at least one of the following characteristics
i) heart failure of NYHA class II, III or IV,

NPC-VS-667-000037840

**7**

ii) an elevated plasma BNP or NT-proBNP level, preferably a plasma BNP ≥100 pg/mL (or NT-proBNP ≥400 pg/mL), more preferably a plasma BNP ≥150 pg/mL or NT-proBNP ≥600 pg/mL, and

iii) a reduced left ventricular ejection fraction (LVEF) of ≤40%, preferably ≤35%.

15. A regimen for treating heart failure according to embodiment 1, wherein the patient suffers from chronic heart failure classified as NYHA class II, III or IV and has systolic dysfunction, preferably wherein the patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

16. A regimen for treating heart failure according to embodiment 1, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate]hemipentahydrate (LCZ696).

17. A regimen for treating heart failure according to embodiment 1, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of a pharmaceutical composition comprising

(i) valsartan or a pharmaceutically acceptable salt thereof; and

(ii) sacubitril or a pharmaceutically acceptable salt thereof.

18. A regimen for treating heart failure according to embodiment 1, wherein the patient receives a base treatment with a stable dose of a beta-blocker, an aldosterone antagonists, and/or a diuretic.

19. A regimen for treating heart failure according to embodiment 1, wherein the patient has to stop taking the angiotensin receptor blocker (ARB) or the ACE inhibitor at least 36 hours prior to taking the medicament.

20. A regimen for treating heart failure according to embodiment 1, wherein

a) the 50 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 24 mg sacubitril and 26 mg valsartan,

b) the 100 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 49 mg sacubitril and 51 mg valsartan, and

c) the 200 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 97 mg sacubitril and 103 mg valsartan.

In another embodiment of the foregoing, the patient is a human patient.

In another embodiment of the foregoing, the patient suffering from chronic systolic heart failure, in particular the patient with chronic systolic heart failure with reduced ejection fraction, has at least one of the following characteristics:

i) heart failure of NYHA class II, III or IV,

ii) an elevated plasma BNP or NT-proBNP level, preferably a plasma BNP ≥100 pg/mL (or NT-proBNP ≥400 pg/mL), more preferably a plasma BNP ≥150 pg/mL or NT-proBNP ≥600 pg/mL, and

iii) a reduced left ventricular ejection fraction (LVEF) of ≤40%, preferably ≤35%.

In addition, the patient might be characterized by one or more of the following:

iv) prior hospitalization for heart failure within the last 12 months,

v) a stable ACE inhibitor or ARB at dose ≥enalapril 10 mg daily+beta-blocker (unless contraindicated or intolerant)+aldosterone antagonist (as indicated),

vi) systolic blood pressure ≥95 mm Hg,

**8**

vii) eGFR ≥30 ml/min/1.73 m² and

viii) serum K ≤5 5.4 mEq/L.

In another embodiment of the foregoing, the patient has heart failure classified as NYHA class II, III or IV and has systolic dysfunction. In another embodiment the patient has heart failure classified as NYHA class II. In a further embodiment, the patient has heart failure classified as NYHA class II with systolic dysfunction and has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

All the aforementioned embodiments for the methods of protection and treatment according to the present invention are equally applicable to

the use of a compound of formula (I) or of the combination (i)/(ii) as defined herein for the manufacture of a medicament for use according to the present invention,

the use of a compound of formula (I) or of the combination (i)/(ii) as defined herein according to the present invention,

a compound of formula (I) or of the combination (i)/(ii) as defined herein for use according to the present invention,

the pharmaceutical compositions comprising a compound of formula (I) or of the combination (i)/(ii) as defined herein for the use according to the present invention,

the use of the pharmaceutical compositions comprising a compound of formula (I) or of the combination (i)/(ii) as defined herein according to the present invention and

the use of the pharmaceutical compositions comprising a compound of formula (I) or of the combination (i)/(ii) as defined herein for the manufacture of a medicament for use according to the present invention.

Some of these aspects are further described in more detail below, but this description should not be construed as limiting.

Compound or Combination for Use

In a separate aspect, the present invention is directed to the following embodiment 20:

A twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio for use in the treatment of heart failure in a patient, wherein said dose is reached after a titration with an initial twice-daily dose of at least 50 mg of sacubitril and valsartan in a 1:1 molar ratio increasing to the twice daily target dose of 200 mg for from about 2 to about 8 weeks.

The invention is further described in the following embodiments, numbered 22 to 40:

22. The twice-daily target dose of embodiment 21 for use in the treatment of heart failure in a patient, wherein said dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

23. The twice-daily target dose of embodiment 22 for use in the treatment of heart failure in a patient, wherein said dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 3 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 3 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

24. The twice daily target dose of embodiment 21 for use in the treatment of heart failure in a patient, wherein said dose is reached after a titration of a twice daily starting dose

US 11,058,667 B2

9

10

of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

25. The twice daily target dose of embodiment 24 for use in the treatment of heart failure in a patient, wherein said dose is reached after a titration of a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 2 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

26. The twice daily target dose of embodiment 22 or 23 for use in the treatment of heart failure in a patient, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient not taking an angiotensin-converting enzyme (ACE) inhibitor or an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

27. The twice daily target dose of embodiment 22 for use in the treatment of heart failure in a patient, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking low doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

28. The twice daily target dose of embodiment 27 for use in the treatment of heart failure in a patient, wherein the lower dose of an ACEI or ARB is equivalent to ≤10 mg of enalapril per day.

29. The twice daily target dose of embodiment 21 for use in the treatment of heart failure in a patient, wherein said titration mitigates a risk selected from hypotension, hyperkalemia, and renal adverse events.

30. The twice daily target dose of embodiment 4 or 5 for use in the treatment of heart failure in a patient, wherein the twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking higher doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

31. The twice daily target dose of embodiment 30 for use in the treatment of heart failure in a patient, wherein the higher dose of an ACEI or ARB is equivalent to ≥10 mg of enalapril per day.

32. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient suffers from chronic systolic heart failure with reduced ejection fraction.

33. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient is a human patient.

34. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient has at least one of the following characteristics

i) heart failure of NYHA class II, III or IV,

ii) an elevated plasma BNP or NT-proBNP level, preferably a plasma BNP ≥100 pg/mL (or NT-proBNP ≥400 pg/mL), more preferably a plasma BNP ≥150 pg/mL or NT-proBNP ≥600 pg/mL, and

iii) a reduced left ventricular ejection fraction (LVEF) of ≤40%, preferably ≤35%.

35. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient suffers from chronic heart failure classified as NYHA class II, III or IV and has

systolic dysfunction, preferably wherein the patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

36. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino) butyrate] hemipentahydrate (LCZ696).

37. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of a pharmaceutical composition comprising

(i) valsartan or a pharmaceutically acceptable salt thereof; and

(ii) sacubitril or a pharmaceutically acceptable salt thereof,

38. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient receives a base treatment with a stable dose of a beta-blocker, an aldosterone antagonists, and/or a diuretic.

39. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient has to stop taking the angiotensin receptor blocker (ARB) or the ACE inhibitor at least 36 hours prior to taking the medicament.

40. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein

a) the 50 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 24 mg sacubitril and 26 mg valsartan,

b) the 100 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 49 mg sacubitril and 51 mg valsartan, and

c) the 200 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 97 mg sacubitril and 103 mg valsartan.

Use for the Manufacture of a Medicament

In a separate aspect, the present invention is directed to the following embodiment 41:

41. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient, wherein the medicament comprises a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio which is reached after a titration with an initial twice-daily dose of at least 50 mg of sacubitril and valsartan in a 1:1 molar ratio increasing to the twice daily target dose of 200 mg for from about 2 to about 8 weeks.

The invention is further described in the following embodiments, numbered 42 to 61:

42. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 41, wherein said target dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

43. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 42, wherein

US 11,058,667 B2

11 12

said target dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 3 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 3 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

44. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 41, wherein said target dose is reached after a titration of a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

45. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 44, wherein said target dose is reached after a titration of a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 2 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

46. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 42 or 43, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient not taking an angiotensin-converting enzyme (ACE) inhibitor or an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

47. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 42 or 43, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking low doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

48. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 47, wherein the lower dose of an ACEI or ARB is equivalent to ≤10 mg of enalapril per day.

49. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 41, wherein said titration mitigates a risk selected from hypotension, hyperkalemia, and renal adverse events.

50. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 44 or 45, wherein the twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking higher doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

51. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 50, wherein the higher dose of an ACEI or ARB is equivalent to ≥10 mg of enalapril per day.

52. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51, wherein the patient suffers from chronic systolic heart failure with reduced ejection fraction.

53. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding claims 41 to 51, wherein the patient is a human patient.

54. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51, wherein the patient has at least one of the following characteristics

i) heart failure of NYHA class II, III or IV,

ii) an elevated plasma BNP or NT-proBNP level, preferably a plasma BNP ≥100 pg/mL (or NT-proBNP ≥400 pg/mL), more preferably a plasma BNP ≥150 pg/mL or NT-proBNP ≥600 pg/mL, and

iii) a reduced left ventricular ejection fraction (LVEF) of ≤40%, preferably ≤35%.

55. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51, wherein the patient suffers from chronic heart failure classified as NYHA class II, III or IV and has systolic dysfunction, preferably wherein the patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

56. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycar-bonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino) butyrate] hemipentahydrate (LCZ696).

57. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of a pharmaceutical composition comprising

(i) valsartan or a pharmaceutically acceptable salt thereof; and

(ii) sacubitril or a pharmaceutically acceptable salt thereof,

58. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51, wherein the patient receives a base treatment with a stable dose of a beta-blocker, an aldosterone antagonist, and/or a diuretic.

59. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51, wherein the patient receives base treatment with a stable dose of a beta-blocker and optionally an aldosterone antagonist.

60. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51, wherein the patient has to stop taking the angiotensin receptor blocker (ARB) or the ACE inhibitor at least 36 hours prior to taking the medicament.

61. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51, wherein

US 11,058,667 B2

13

a) the 50 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 24 mg sacubitril and 26 mg valsartan,

b) the 100 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 49 mg sacubitril and 51 mg valsartan, and

c) the 200 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 97 mg sacubitril and 103 mg valsartan.

Compounds and Combinations and Pharmaceutical Compositions for Use According to the Invention

The "sacubitril and valsartan in a 1:1 molar ratio" of the invention used in the aforementioned methods is provided in the form of

a) the compound trisodium [3-((1S,3R)-1-biphenyl-4-yl-methyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2"-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696), or

b) a pharmaceutical composition comprising a 1:1 molar ratio of

(i) valsartan or a pharmaceutically acceptable salt thereof; and

(ii) of sacubitril or a pharmaceutically acceptable salt thereof.

Sacubitril is the INN for N-(3-carboxy-1-oxopropyl)-(4S)-(p-phenylphenylmethyl)-4-amino-2R-methylbutanoic acid ethyl ester. This is a prodrug for (2R,4S)-5-biphenyl-4-yl-4-(3-carboxy-propionyl    amino)-2-methyl-pentanoic acid.

In a preferred embodiment, the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2"-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate is present in crystalline form.

In another embodiment, the combination comprises a 1:1 molar ratio

(i) of valsartan; and

(ii) of sacubitril or a pharmaceutically acceptable salt thereof, such as sodium or calcium salt.

In a preferred embodiment, the invention encompasses a pharmaceutical composition for use comprising a therapeutically effective amount of trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2"-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (Compound LCZ696). Such compounds and pharmaceutical compositions have been previously disclosed in WO2007/056546 and WO 2009/061713, whose preparative teachings are incorporated herein by reference.

In a further embodiment of the invention, the pharmaceutical compositions for use according to the present invention comprise trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)   propionate-(S)-3'-methyl-2'-(pentanoyl{2"-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696) and deliver upon administration the NEP inhibitor pro-drug sacubitril and the angiotensin receptor blocker valsartan together to the patient.

In one embodiment of the invention for all of its uses, the pharmaceutical composition comprises the the NEP inhibitor pro-drug sacubitril, namely N-(3-carboxy-1-oxopropyl)-(4S)-p-phenylphenylmethyl)-4-amino-(2R)-methylbutanoic acid ethyl ester or the NEP inhibitor N-(3-carboxy-1-oxo-propyl)-(4S)-p-phenylphenylmethyl)-4-amino-(2R)-meth-ylbutanoic acid, or pharmaceutically acceptable salts thereof, and the Angiotensin Receptor Blocker valsartan or

14

a pharmaceutically acceptable salt thereof. Such combinations are for example disclosed within international patent application WO 2003/059345, which is herewith incorporated by reference.

In one embodiment, the pharmaceutical composition comprises the NEP inhibitor pro-drug sacubitril, namely N-(3-carboxy-1-oxopropyl)-(4S)-p-phenylphenylmethyl)-4-amino-(2R)-methylbutanoic acid ethyl ester or the NEP inhibitor N-(3-carboxy-1-oxopropyl)-(4S)-p-phenylphenyl-methyl)-4-amino-(2R)-methylbutanoic acid, or pharmaceutically acceptable salts thereof, and the Angiotensin Receptor Blocker valsartan or a pharmaceutically acceptable salt thereof, in a 1:1 molar ratio.

(i) Valsartan or (S)—N-valeryl-N-{[2'-(1H-tetrazole-5-yl)-biphenyl-4-yl]-methyl}-valine) or a pharmaceutically acceptable salt thereof that can be purchased from commercial sources or can be prepared according to known methods, such as described in U.S. Pat. No. 5,399,578 and EP 0443983, whose preparative teachings are incorporated by reference herein. Valsartan may be used in certain embodiments of the invention in its free acid form, as well as in any suitable salt form. Depending upon the circumstance, esters or other derivatives of the carboxylic grouping may be employed as well as salts and derivatives of the tetrazole grouping.

(ii) sacubitril, namely N-(3-carboxy-1-oxopropyl)-(4S)-(p-phenylphenylmethyl)-4-amino-2R-methylbutanoic    acid ethyl ester, or (2R,4S)-5-biphenyl-4-yl-4-(3-carboxy-propio-nyl amino)-2-methyl-pentanoic acid can be prepared by known methods such as described in U.S. Pat. No. 5,217,996 which is herein incorporated by reference.

The corresponding active ingredient or a pharmaceutically acceptable salt thereof may also be used in the form of a hydrate or include other solvents used for crystallization.

The pharmaceutical compositions according to the invention can be prepared in a manner known per se and are those suitable for enteral, such as oral or rectal, and parenteral administration to mammals (warm-blooded animals), including man, comprising a therapeutically effective amount of the pharmacologically active compound, alone or in combination with one or more pharmaceutically acceptable carriers, especially suitable for enteral or parenteral application.

The pharmaceutical preparations of the invention contain, for example, from about 0.1% to about 100%, e.g. 80% or 90%, or from about 1% to about 60%, of the active ingredient. The term "about" or "approximately", as used herein in each instance, shall have the meaning of within 10%, more preferably within 5%, of a given value or range.

Pharmaceutical preparations according to the invention for enteral or parenteral administration are, e.g., those in unit dose forms, such as sugar-coated tablets, tablets, capsules, bars, sachets, granules, syrups, aqueous or oily suspensions or suppositories and furthermore ampoules. These are prepared in a manner known per se, e.g. by means of conventional mixing, granulating, sugar-coating, dissolving or lyophilizing processes. Thus, pharmaceutical preparations for oral use can be obtained by combining the active ingredient with solid carriers, if desired granulating a mixture obtained, and processing the mixture or granules, if desired or necessary, after addition of suitable excipients to give tablets or sugar-coated tablet cores.

Tablets may be formed from the active compound with fillers, for example calcium phosphate; disintegrating agents, for example maize starch, lubricating agents, for example magnesium stearate; binders, for example microcrystalline cellulose or polyvinylpyrrolidone and other

NPC-VS-667-000037844

US 11,058,667 B2

15

optional ingredients known in the art to permit tabletting the mixture by known methods. Similarly, capsules, for example hard or soft gelatin capsules, containing the active compound with or without added excipients, may be prepared by known methods. The contents of the capsule may be formulated using known methods so as to give sustained release of the active compound.

Other dosage forms for oral administration include, for example, aqueous suspensions containing the active compound in an aqueous medium in the presence of a non-toxic suspending agent such as sodium carboxymethylcellulose, and oily suspensions containing the active compounds in a suitable vegetable oil, for example *arachis* oil.

The active compound may be formulated into granules with or without additional excipients. The granules may be ingested directly by the patient or they may be added to a suitable liquid carrier (e.g. water) before ingestion. The granules may contain disintegrants, e.g. an effervescent pair formed from an acid and a carbonate or bicarbonate salt to facilitate dispersion in the liquid medium.

The dosage of the active ingredient of the composition will, of course, vary with the nature of the severity of the condition to be treated and with the particular compound in the composition and its route of administration. It will also vary according to the age, weight and response of the individual patient.

In the embodiments where the pharmaceutical composition comprises trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl) propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate]hemipentahydrate (LCZ696) in the pharmaceutical compositions for use in the context of the present invention, the unit dose of the therapeutic agents sacubitril and valsartan together will be in the range from about 1 to about 1000 mg, such as 40 mg to 400 mg (e.g., 50 mg, 100 mg, 200 mg, 400 mg) per day. Alternatively lower doses may be given, for example doses of 0.5 to 100 mg; 0.5 to 50 mg; or 0.5 to 20 mg per day. As explanatory note, a unit dose of 100 mg LCZ696 delivering 100 mg of the two agents sacubitril and valsartan corresponds to 113.1 mg of trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl) propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate]hemipentahydrate. Correspondingly, a unit dose of 200 mg requires 226.2 mg, and a unit dose of 400 mg requires 452.4 mg of trisodium [3-((1  S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl) propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino) butyrate]hemipentahydrate.

Dosages of the sum of the individual compounds (i)/(ii) in the combination of the pharmaceutical composition will be in the range from about 1 to about 1000 mg, such as 40 mg to 400 mg and include but are not limited to 5 mg, 20 mg, 25 mg, 40 mg, 50 mg, 80 mg, 100 mg, 200 mg, 400 mg, 800 mg and 1000 mg. Such dosages for compounds (i)/(ii) can be considered therapeutically effective amounts or dosage strengths. Ratios for the amount of each compound in the pharmaceutical composition are preferably in the about 1:1 molar ratio to achieve an optimal renal protection while still providing cardiovascular benefits. In preferred embodiments, the dosages of the individual compounds (i)/(ii) correspond to the same molecular amounts as in a pharmaceutical composition comprising a 50 mg, 100 mg, 200 mg or 400 mg dose of LCZ696. E.g. a 200 mg dose of LCZ696 corresponds approximately to 103 mg valsartan and 97 mg of sacubitril Pharmaceutical compositions containing a com-

16

pound of formula (I) (such as compound LCZ696), or compounds (i)/(ii) can be administered any number of times per day, i.e. once a day (q.d.), twice (b.i.d.), three times, four time, etc. in an immediate release formation or less frequently as an extended or sustained release formation. Preferably the pharmaceutical composition is administered twice daily (b.i.d.). Corresponding doses may be taken, for example, in the morning, at mid-day or in the evening.

The following example is illustrative, but does not serve to limit the scope of the invention described herein.

EXAMPLE

A multicenter, randomized, double-blind, parallel group study to assess the safety and tolerability of initiating LCZ696 in heart failure patients comparing two titration regimens.

Study Drug LCZ696:

LCZ696 refers to the supramolecular complex trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl) propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate. This compound and pharmaceutical compositions thereof have been previously disclosed in WO2007/056546 and WO 2009/061713, whose preparative teachings are incorporated herein by reference.

LCZ696 is a first-in-class angiotensin receptor neprilysin inhibitor that comprises the molecular moieties of the NEP (neutral endopeptidase EC 3.4.24.11) inhibitor pro-drug sacubitril (INN, also known as AHU377 and N-(3-carboxy-1-oxopropyl)-(4S)-p-phenylphenylmethyl)-4-amino-(2R)-methylbutanoic acid ethyl ester) and the angiotensin receptor blocker valsartan as a single compound. Sacubitril is metabolized by enzymatic cleavage to LBQ657 (N-(3-carboxy-1-oxopropyl)-(4S)-p-phenylphenylmethyl)-4-amino-(2R)-methylbutanoic acid), the active inhibitor of neutral endopeptidase, which is the major enzyme responsible for the breakdown of atrial natriuretic peptides.

Overall Study Design

This was a multicenter, randomized, double-blind, parallel group study to assess the safety and tolerability of initiating LCZ696 in heart failure patients (New York Heart Association [NYHA] class II-IV) with reduced ejection fraction defined by a left ventricular ejection fraction (LVEF)≤35%. Up-titration regimens of 3-weeks or 6-weeks to the LCZ696 target dose of 200 mg bid were evaluated. The study consisted of two main phases: (1) open-label LCZ696 run-in phase lasting approximately one week, and (2) double-blind randomized phase lasting approximately 11 weeks. Patients enrolled were stratified based on the pre-study level of RAAS inhibition (high/low).

Study Objectives

Primary Objectives

To characterize the safety and tolerability of initiating LCZ696 in HFrEF patients with 3-week and 6-week up-titration regimens over 12 weeks based on reported adverse events and laboratory assessments.

Secondary Objectives

The secondary objectives were:

To evaluate the proportion of patients in the two treatment groups who achieved treatment success, defined as those achieving and maintaining LCZ696 200 mg bid without any dose interruption or down-titration over 12 weeks.

To evaluate the proportion of patients who tolerate a regimen of LCZ696 200 mg bid for at least 2 weeks

NPC-VS-667-000037845

US 11,058,667 B2

17                                                          18

leading to study completion, regardless of previous dose interruption or down-titration.

Study Design

This was a multi-center, randomized, double-blind, parallel-group study conducted to evaluate the safety and tolerability of LCZ696 comparing two up-titration regimens in both outpatients and hospitalized patients (inpatients) with HFrEF.

Patients were stratified based on the level of RAAS inhibition as follows:

High RAAS stratum: Patients receiving >160 mg of valsartan or >10 mg total daily dose of enalapril, or equivalent doses of other ARBs/ACEIs, respectively, at screening

Low RAAS stratum: Patients receiving ≤160 mg of valsartan or ≤10 mg total daily dose of enalapril, or equivalent doses of other ARBs/ACEIs, respectively, at screening. This stratum also included patients who were not on an ACEI or an ARB 4 weeks prior to screening (i.e., ACEI/ARB-naïve patients)

At least 25% (but not more than 50%) of the randomized patients were planned to be in the low RAAS inhibition stratum. Patients hospitalized for decompensated HF were allowed to enter either the low or high RAAS inhibition stratum, corresponding to the most recent tolerated ACEI or ARB dose they had received during their hospitalization.

This study consisted of three phases: see FIG. 1.

(1) Screening phase lasting approximately one week;

(2) Open-label LCZ696 run-in phase lasting approximately one week (Day 1 to 5); and

(3) Randomized phase lasting approximately 11 weeks

Screening Phase

At Visit 1, during the screening phase, all patients who had provided their written informed consent were evaluated for eligibility to enter the study. Left ventricular ejection fraction (LVEF) measurements required for eligibility were based on locally obtained echocardiograms, MUGA (multigated acquisition) scans, CT (computerized tomography) scans, MRI (magnetic resonance imaging) scans, or ventricular angiographies performed within the prior 12 months, provided no subsequent measurements were >35%. If a LVEF measurement from the prior 12 months was not available, the patient could enter the trial based on a LVEF ≤35% obtained during the screening phase, i.e., before start of study medication intake. If a patient had an implanted cardiac resynchronization therapy (CRT) device, the LVEF value used to qualify for the study had to be obtained by at least three months after device implantation.

Both inpatients and outpatients were eligible for participation in this study. Patients who met all the eligibility criteria at screening were eligible to enter the open-label LCZ696 run-in phase and proceed to Visit 2 to start receiving the study medication. Patients who had been using ACEIs had to stop these medications under the supervision of the study investigator, and enter a 36-hour ACEI-free washout period before they attended their Visit 2.

Open-Label LCZ696 Run-in Phase

Patients who met all the entry criteria and completed the ACEI-free washout period (if required) attended Visit 2 within approximately one week after Visit 1. At Visit 2, patients began taking open-label LCZ696 50 mg bid. Eligible hospitalized patients also took the study medication while they were still in the hospital and before they were discharged. Patients took the study medication in addition to their background HF therapy, except for ACEIs and ARBs, which were replaced by the study medication.

Patients were asked to return after 5±2 days to attend Visit 3/777 (Randomization visit).

Randomized Phase

At Visit 3/777, safety and tolerability of LCZ696 50 mg bid was assessed (see table below). Patients, who could not tolerate LCZ696 50 mg bid per the criteria listed in the Table, were to be discontinued from the study and considered as run-in failures.

TABLE

| Safety criteria that must be met at Visits 3 to 6 in order to avoid treatment failure | |
|---|---|
| Parameter | Requirement |
| Potassium level | ≤5.4 mmol/L |
| Kidney function | eGFR ≥30 mL/min/1.73 m$^2$ eGFR reduction ≤35% compared to Screening value |
| Blood pressure | No symptomatic hypotension and SBP ≥95 mmHg |
| Adverse events (AEs) or conditions | No postural symptoms or any AEs that preclude continuation according to the investigator's judgment |

Patients who successfully completed the open-label run-in and tolerated LCZ696 50 mg bid were to be randomized to receive double-blind LCZ696 at one of the two different titration schemes in a 1:1 ratio: they could be up-titrated to 200 mg bid over the following two weeks (Condensed titration) or they could be up-titrated to 200 mg bid over the following five weeks (Conservative titration).

At Visit 3/777, patients randomized to the condensed up-titration arm were up-titrated to LCZ696 100 mg bid, while patients randomized to the conservative up-titration arm continued to receive LCZ696 50 mg bid.

Two weeks after Visit 3/777, at Visit 4, the patients who were judged by the investigator to be tolerant of the study medication per the safety criteria in the Table were up-titrated to the next dose level; those in the condensed up-titration arm received LCZ696 200 mg bid and those in the conservative up-titration arm received LCZ696 100 mg bid.

Patients returned three weeks later to attend Visit 5. Patients who were judged by the investigator to be tolerant of the study medication per the safety criteria in the Table further continued on the titration plan as outlined in above; patients in the condensed up-titration arm continued to receive LCZ696 200 mg bid, while patients in the conservative up-titration arm were up-titrated to LCZ696 200 mg bid.

Patients returned three weeks later to attend Visit 6. Patients who were judged by the investigator to be tolerant of the study medication per the safety criteria in the Table continued to receive LCZ696 200 mg bid and were asked to return three weeks later to attend Visit 778/End of Study (EoS) to undergo the final safety evaluations.

Patients who were deemed by the investigator to require dose reduction or interruption in study medication dosing at any post-randomization visit (despite modification of concomitant medications) were considered as treatment failures. They were switched to open-label LCZ696 at a dose level at the discretion of the investigator. Treatment failure patients were expected to attend the remaining study visits according to schedule and their doses were modified based on the investigator's judgment with the overall goal of achieving and maintaining the target dose (LCZ696 200 mg bid) for at least two uninterrupted weeks and until Visit 778/EoS.

NPC-VS-667-000037846

US 11,058,667 B2

19

Throughout the randomized phase, patients took the study medication in addition to their background HF therapy, except for ACEIs and ARBs, which were replaced by the study medication itself. Every attempt was made to maintain patients on the assigned study medication throughout the trial.

At each visit, the patients' medication compliance as well as safety and tolerability of the study medication was assessed, including, but not limited to, signs and symptoms of hypotension, elevated potassium level, and decreased renal function. If, however, in the opinion of the investigator, the patient could not tolerate the assigned study medication, the investigator could consider if the non-disease-modifying medications (e.g., CCBs, diuretics, nitrates, a-blockers) could be reduced to manage tolerability before declaring the patient to be a treatment failure and subsequently switching him/her to open-label study medication. The investigator was also allowed to adjust doses of other disease-modifying medications if they were believed to be the most likely cause of the adverse effects.

Patients

Written informed consent was obtained before any assessment was performed.

Patients eligible for inclusion in this study must have fulfilled all of the following criteria listed below:

1. Males and/or females of at least 18 years of age, who were either inpatients or outpatients

2. Diagnosis of chronic heart failure (CHF) NYHA class II-IV.

3. Left ventricular ejection fraction (LVEF)≤35% at screening (any local measurement made within the past 12 months using echocardiography, MUGA, CT scanning, MRI, or ventricular angiography was acceptable, provided no subsequent measurement was >35%).

4. Meeting one of the following criteria:
   ACEI/ARB naïve patients, i.e., not on an ACEI or ARB for at least 4 weeks before screening.
   For outpatients who were being treated with ACEI or ARB, dose had to be stable dose for at least 2 weeks before screening.
   For hospitalized patients (inpatients), being on no ACEI/ARB or on a tolerated dose of an ACEI or an ARB at screening.

5. Patients treated with a β-blocker, unless contraindicated or not tolerated (reason had to be documented in absence of that medication).

6. An aldosterone antagonist was also to be considered in all patients, taking account of renal function, serum potassium and tolerability. If given, the dose of aldosterone antagonist was to be optimized according to guideline recommendations and patient tolerability. Other evidence-based therapy for HF was also to be considered, e.g., cardiac resynchronization therapy and an implantable cardioverter-defibrillator in selected patients, as recommended by guidelines.

Treatment Arms

Patients were assigned to one of the following two treatment arms in a ratio of 1:1 as described below:
   Condensed up-titration: up-titration of LCZ696 from 50 mg bid to 200 mg bid over three weeks (including the run-in phase).
   Conservative up-titration: up-titration of LCZ696 from 50 mg bid to 200 mg bid over six weeks (including the run-in phase).

REFERENCE

The study design and procedures can be found under www.clinicaltrials.gov, study number NCT01922089, which is herewith incorporated by reference.

20

Results

Summary:

Among the randomized patients and excluding those who discontinued due to non-AE related reasons, 81% achieved the target LCZ696 200 mg bid dose without any down-titration or dose interruption over the entire 12-week study period, and 85% were on the LCZ696 200 mg bid target dose for at least 2 weeks before study completion. The most common reasons for dose adjustment/interruption or permanent discontinuation were AEs related to hypotension, renal dysfunction or hyperkalemia.

During the randomized period, a higher proportion of low RAAS stratum patients achieved the LCZ696 200 mg bid target dose and had no dose adjustment/interruption over 12 weeks if they were up-titrated more gradually. Eighty-five percent (85%) of patients who were ACEI/ARB naïve or receiving prior low levels of RAAS therapy and up-titrated over 6 weeks achieved the target dose of LCZ696 200 mg bid and had no dose adjustment/interruption over 12 weeks compared with 74% of patients up-titrated over 3 weeks. This difference was due to fewer AEs related to hypotension, renal dysfunction or hyperkalemia. Eighty-three percent (83%) of patients receiving prior high levels of RAAS therapy achieved the LCZ696 200 mg bid target dose without any dose adjustment/interruption over 12 weeks, with no difference due to the rate of up-titration (3 vs. 6 weeks). There was no major difference between the uptitration regimens in the treatment success rate among the ACEI/ARB-naïve patients.

CONCLUSION

Across both run-in and randomized periods, the proportion of patients who achieved the target dose of LCZ696 200 mg bid without any dose adjustment or interruption over 12 weeks was 76% if discontinuations due to non-AE reasons are excluded and 70% based on the total number of patients receiving at least one dose of study medication.

In the low dose stratum, the rate of treatment success was higher when LCZ696 was uptitrated more gradually.

The invention claimed is:

1. A regimen for treating chronic heart failure with reduced ejection fraction, which comprises administering to a human patient in need thereof a twice-daily target dose of 200 mg of sacubitril or a pharmaceutically acceptable salt thereof with valsartan or a pharmaceutically acceptable salt thereof, which are provided to the human patient in a 1:1 molar ratio, wherein the twice daily target dose of 200 mg corresponds to 97 mg of sacubitril and 103 mg of valsartan; wherein the twice daily target dose 200 mg is reached after a titration with a twice daily starting dose of 50 mg of sacubitril or the pharmaceutically acceptable salt thereof together with valsartan or the pharmaceutically acceptable salt thereof, which are provided to the human patient in a 1:1 molar ratio, for from about 3 weeks to about 4 weeks, wherein the twice daily starting dose of 50 mg corresponds to 24 mg of sacubitril and 26 mg of valsartan, followed by a twice daily dose of 100 mg of sacubitril or the pharmaceutically acceptable salt thereof together with valsartan or the pharmaceutically acceptable salt thereof, which are provided to the human patient in a 1:1 molar ratio, for from about 3 weeks to about 4 weeks, wherein the twice daily dose of 100 mg corresponds to 49 mg of sacubitril and 51 mg of valsartan, followed by the twice daily target dose of 200 mg thereafter; and wherein:

NPC-VS-667-000037847

US 11,058,667 B2

21

(i) the twice daily starting dose of 50 mg is for use in a human patient neither taking an angiotensin-converting enzyme (ACE) inhibitor nor taking an angiotensin II receptor blocker (ARB) before initiating treatment with sacubitril or the pharmaceutically acceptable salt thereof and valsartan or the pharmaceutically acceptable salt thereof, or

(ii) the twice daily starting dose of 50 mg is for use in a human patient taking a low dose of an angiotensin-converting enzyme (ACE) inhibitor or a low dose of an angiotensin II receptor blocker (ARB) before initiating treatment with sacubitril or the pharmaceutically acceptable salt thereof and valsartan or the pharmaceutically acceptable salt thereof, wherein the low dose of the ACE inhibitor or the low dose of the ARB is equivalent to a dose of <10 mg of enalapril per day.

**2**. The regimen for treating chronic heart failure according to claim **1**, wherein the twice daily target dose of 200 mg is reached after the titration with the twice daily starting dose of 50 mg for about 3 weeks, followed by the twice daily dose of 100 mg for about 3 weeks, followed by the twice daily target dose of 200 mg thereafter.

**3**. The regimen for treating chronic heart failure according to claim **1**, wherein the human patient has to stop taking the ARB or the ACE inhibitor at least 36 hours before initiating the treatment with sacubitril or the pharmaceutically acceptable salt thereof and valsartan or the pharmaceutically acceptable salt thereof.

**4**. The regimen for treating chronic heart failure according to claim **1**, wherein the human patient has an elevated plasma BNP of ≥100 pg/mL or NT-proBNP of ≥400 pg/mL.

**5**. The regimen for treating chronic heart failure according to claim **1**, wherein the human patient has an elevated plasma BNP of ≥150 pg/mL or NT-proBNP of ≥600 pg/mL.

**6**. The regimen for treating chronic heart failure according to claim **1**, wherein the human patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

**7**. A regimen for treating chronic heart failure with reduced ejection fraction, which comprises administering to a human patient in need thereof a twice-daily target dose of 200 mg of sacubitril or a pharmaceutically acceptable salt thereof together with valsartan or a pharmaceutically acceptable salt thereof, which are provided to the human patient in a 1:1 molar ratio, wherein the twice daily target dose of 200 mg corresponds to 97 mg of sacubitril and 103 mg of valsartan;

the twice daily target dose of 200 mg is reached after a titration with a twice daily starting dose of 50 mg of sacubitril or the pharmaceutically acceptable salt thereof together with valsartan or the pharmaceutically acceptable salt thereof, which are provided to the human patient in a 1:1 molar ratio, for from about 2 weeks to about 4 weeks, wherein the twice daily starting dose of 50 mg corresponds to 24 mg of sacubitril and 26 mg of valsartan, followed by a twice daily dose of 100 mg of sacubitril or the pharmaceutically acceptable salt thereof together with valsartan or the pharmaceutically acceptable salt thereof, which are provided to the human patient in a 1:1 molar ratio, for from about 2 weeks to about 4 weeks, wherein the twice daily target dose of 100 mg corresponds to 49 mg of sacubitril and 51 mg of valsartan, followed by the twice daily target dose of 200 mg thereafter, and wherein said titration to the target dose occurs over a period of at least about 6 weeks; and wherein:

22

(i) the twice daily starting dose of 50 mg is for use in a human patient neither taking an angiotensin-converting enzyme (ACE) inhibitor nor taking an angiotensin II receptor blocker (ARB) before initiating treatment with sacubitril or the pharmaceutically acceptable salt thereof and valsartan or the pharmaceutically acceptable salt thereof, or

(ii) the twice daily starting dose of 50 mg is for use in a human patient taking a low dose of an angiotensin-converting enzyme (ACE) inhibitor or a low dose of an angiotensin II receptor blocker (ARB) before initiating treatment with sacubitril or the pharmaceutically acceptable salt thereof and valsartan or the pharmaceutically acceptable salt thereof, wherein the low dose of the ACE inhibitor or the low dose of the ARB is equivalent to a dose of <10 mg of enalapril per day.

**8**. The regimen for treating chronic heart failure according to claim **7**, wherein the twice daily target dose is reached after the titration with the twice daily starting dose of 50 mg for about 3 weeks, followed by the twice daily dose of 100 mg for about 3 weeks, followed by the twice daily target dose of 200 mg thereafter.

**9**. The regimen for treating chronic heart failure according to claim **7**, wherein the human patient has an elevated plasma BNP of ≥100 pg/mL or NT-proBNP of ≥400 pg/mL.

**10**. The regimen for treating chronic heart failure according to claim **7**, wherein the human patient has an elevated plasma BNP of ≥150 pg/mL or NT-proBNP of ≥600 pg/mL.

**11**. The regimen for treating chronic heart failure according to claim **7**, wherein the human patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

**12**. The regimen for treating chronic heart failure according to claim **7**, wherein the human patient has to stop taking the ARB or the ACE inhibitor at least 36 hours before initiating the treatment with sacubitril or the pharmaceutically acceptable salt thereof and valsartan or the pharmaceutically acceptable salt thereof.

**13**. The regimen for treating chronic heart failure according to claim **1**, wherein the twice daily starting dose of 50 mg is for use in the human patient taking the low dose of the ACE inhibitor or the low dose of the ARB before initiating the treatment with sacubitril or the pharmaceutically acceptable salt thereof and valsartan or the pharmaceutically acceptable salt thereof.

**14**. The regimen for treating chronic heart failure according to claim **13**, wherein the low dose of the ACE inhibitor or the low dose of the ARB is equivalent to the dose of <10 mg of enalapril per day.

**15**. The regimen for treating chronic heart failure according to claim **7**, wherein the twice daily starting dose of 50 mg is for use in the human patient taking the low dose of the ACE inhibitor or the low dose of the ARB before initiating the treatment with sacubitril or the pharmaceutically acceptable salt thereof and valsartan or the pharmaceutically acceptable salt thereof.

**16**. The regimen for treating chronic heart failure according to claim **15**, wherein the low dose of the ACE inhibitor or the low dose of the ARB is equivalent to the dose of <10 mg of enalapril per day.

**17**. The regimen for treating chronic heart failure according to claim **7**, wherein a first week of the at least about 6 weeks is 5±2 days.

**18**. The regimen for treating chronic heart failure according to claim **1**, wherein sacubitril or the pharmaceutically acceptable salt thereof together with valsartan or the pharmaceutically acceptable salt thereof are provided to the human patient in a 1:1 molar ratio by administering to the

NPC-VS-667-000037848

US 11,058,667 B2

23      24

human patient a compound trisodium [3-((1S,3R)-1-biphe-nyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propi-onate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)bi-phenyl-4'- ylmethyl}amino)butyrate] hemipentahydrate (LCZ696).

**19**. The regimen for treating chronic heart failure accord-ing to claim **7**, wherein sacubitril or the pharmaceutically acceptable salt thereof together with valsartan or the phar-maceutically acceptable salt thereof are provided to the human patient in a 1:1 molar ratio by administering to the human patient a compound trisodium [3-((1S,3R)-1-biphe-nyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propi-onate-(S)-3'-methyl-2'- (pentanoyl{2''-(tetrazol-5-ylate)bi-phenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696).

\*   \*   \*   \*   \*

NPC-VS-667-000037849

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.       : 11,058,667 B2                                            Page 1 of 1
APPLICATION NO.   : 15/572399
DATED            : July 13, 2021
INVENTOR(S)     : Rizkala et al.

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

On the Title Page

Item [56] REFERENCES CITED:
"WO-2014029848" should read --WO 2014/029848--.

In the Specification

Column 5:
Line 20, "3-blockers" should read --β-blockers--.

Column 15:
Line 67, "sacubitril Pharmaceutical" should read --sacubitril. ¶Pharmaceutical--.

Column 19:
Line 14, "a-blockers)" should read --α-blockers)--.

In the Claims

Column 20:
Line 46, "thereof with" should read --thereof together with--; and
Line 50, "dose 200" should read --dose of 200--.

Column 21:
Line 16, "< 10 mg" should read "$\leq$ 10 mg--; and
Line 62, "twice daily target dose of 100 mg" should read --twice daily dose of 100 mg--.

Column 22:
Line 16, "< 10 mg" should read --$\leq$ 10 mg--.

Signed and Sealed this
Thirty-first Day of August, 2021

Drew Hirshfeld
*Performing the Functions and Duties of the*
*Under Secretary of Commerce for Intellectual Property and*
*Director of the United States Patent and Trademark Office*

# EXHIBIT 2

**Title of the invention**

SACUBITRIL-VALSARTAN DOSAGE REGIMEN FOR TREATING HEART FAILURE

The present invention relates to novel methods and pharmaceutical compositions for the treatment of heart failure in a patient, in particular to a regimen for treating heart failure

5   which comprises administering to a patient in need thereof a twice-daily target dose of an Angiotensin Receptor Neprilysin inhibitor (ARNi) or of a combination of an Angiotensin Receptor Blocker (ARB) with a Neutral Endopeptidase inhibitor (NEPi) or with a NEPi pro-drug, wherein said target dose is reached after a titration with an initial lower twice-daily dose of said ARNI increasing to the twice daily target dose from about 2 to about 8 weeks.

10

**Background of the Invention**

Chronic heart failure (CHF) is a major public health problem characterized by significant mortality, frequent hospitalization, and poor quality of life, with an overall prevalence that is increasing throughout the world. In the United States (US) alone, approximately 5

15   million patients have heart failure (HF) and there are over half a million newly diagnosed cases annually. In Europe, the prevalence of HF is between 2 and 3%, and that in the elderly is estimated between 10 to 20%.

Medical therapies targeted at improving outcomes in HF with a low LVEF have been well studied over the past two decades, leading to an improvement in survival as well as a

20   decrease in morbidity, mostly in the form of decrease in re-hospitalization for HF. These medical therapies include angiotensin converting enzyme (ACE) inhibitors, angiotensin receptor blockers (ARBs), β-blockers and mineralocorticoid antagonists.

However, despite advances in pharmacological (and device therapies), the outlook remains poor. Overall 50% of patients die within 4 years, and 40% of patients admitted to

25   hospital with HF die or are readmitted within 1 year. Thus, HF still represents a major cause of cardiac mortality and morbidity with a clear need for better therapy.

LCZ696 is a first-in-class, angiotensin receptor neprilysin inhibitor (ARNI) being developed for the treatment of CHF. Following ingestion, LCZ696 provides systemic exposure to sacubitril (AHU377; (2R,4S)-5-biphenyl-4-yl-4-(3-carboxy-propionylamino)-2-methyl-

30   pentanoic acid ethyl ester, also named N-(3-carboxy-1-oxopropyl)-(4S)-(p-phenylphenylmethyl)-4-amino-2R-methylbutanoic acid ethyl ester), a neprilysin (neutral endopeptidase 24.11, NEP) inhibitor (NEPi) and valsartan, an ARB, in a 1:1 molar ratio. AHU377 is further metabolized via esterases to the active NEPi, LBQ657. Neprilysin degrades biologically active natriuretic peptides (NPs), including atrial natriuretic peptide

1

NPC-VS-667-000000144

(ANP), B-type natriuretic peptide (BNP) and C-type natriuretic peptide (CNP). The effects of NEP inhibition are attributed to the enhanced effects of biologically active NPs. NPs, acting through the second messenger cyclic guanosine monophosphate, have potent natriuretic and vasodilator properties, inhibit the activity of the renin-angiotensin-aldosterone system (RAAS), lower sympathetic drive and have anti-fibrotic and anti-hypertrophic effects. Angiotensin receptor blockade is specific and competitive at the angiotensin type 1 (AT1) receptor, which mediates the deleterious effects of angiotensin II on the cardiovascular system. LCZ696, through its dual mode of action, potentiates NPs via NEP inhibition while inhibiting the RAS via AT1 receptor blockade. Both of these mechanisms are considered to act in a complementary and additive manner to improve the morbidity and mortality of HF patients.

The clinical efficacy of LCZ696 in reducing the cardiovascular death and hospitalizations due to HF in HF-rEF patients was assessed in the LCZ696B2314 PARADIGM-HF study. The PARADIGM-HF study incorporated a single-blind, active run-in phase that was designed to assure a large proportion of patients will maintain target dose study drug during the long term study. Patients entered a single-blind active run-in in which they received enalapril 10 mg bid, followed by LCZ696 100 mg bid, and then LCZ696 200 mg bid. Patients must tolerate the study target dose of enalapril (10 mg bid) and the study target dose of LCZ696 (200 mg bid) for at least 2 weeks in order to be randomized. However, the active run-in phase included in the PARADIGM-HF study design (the sequential use of enalapril followed by LCZ696) provided limited information on how the physician should initiate the LCZ696 therapy in clinical practice, in particular for those patients who are currently on the low dose of ACEIs or ARBs, or ACEI/ARB-naïve patients.

Accordingly there was a need to provide guidance on dosing and up-titration of LCZ696 (sacubitril and valsartan in a 1:1 molar ratio).

The compounds and pharmaceutical compositions disclosed herein include novel drug candidates potentially useful for the treatment of hypertension and/or heart failure. Such compounds or pharmaceutical compositions have been previously disclosed in WO 2003/059345, WO 2007/056546, WO 2009/061713 as well as WO2014029848, which are herein incorporated by reference.

### Summary of the invention

Surprisingly, it has been shown with a regimen for treating heart failure which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril

2

and valsartan in a 1:1 molar ratio (e.g. LCZ696), wherein said target dose is reached after a titration with an initial twice-daily dose of at least 50 mg of sacubitril and valsartan in a 1:1 molar ratio increasing to the twice daily target dose of 200 mg of from about 2 to about 8 weeks, the target dose can be safely reached in the large majority of the patients.

5    The treatment success rate with sacubitril and valsartan in a 1:1 molar ratio (e.g. LCZ696) was even more improved if patients taking lower doses of ACEIs/ARBs (i.e., the low RAAS stratum) were up-titrated more gradually than patients who were taking higher doses of ACEIs/ARBs. The treatment success rate was 10% higher (85%) for patients in the low RAAS stratum given gradual up-titration over 6 weeks compared to those given
10   condensed up-titration over 3 weeks. This difference was due to hypotension, hyperkalemia and renal dysfunction in most cases. On the other hand, surprisingly, there was no difference in the treatment success rate for high RAAS stratum patients, regardless of the rate of up-titration (3 weeks vs. 6 weeks).

Accordingly, the present invention, in a first embodiment relates to a regimen for treating
15   heart failure which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio, wherein said target dose is reached after a titration with an initial twice-daily dose of at least 50 mg of sacubitril and valsartan in a 1:1 molar ratio increasing to the twice daily target dose of 200 mg of from about 2 to about 8 weeks.

20   In one embodiment thereof, the patient is a human patient.

In another embodiment thereof, the compound of formula (I) is trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696).

25   In another embodiment, the present invention relates to a regimen for treating heart failure which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio, wherein said dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by a twice daily dose of 100 mg of
30   sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter, and wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient not taking an angiotensin-converting enzyme (ACE) inhibitor or an angiotensin II receptor blocker (ARB) before initiating the
35   treatment with sacubitril and valsartan.

3

NPC-VS-667-000000146

In another embodiment, the present invention relates to a regimen for treating heart failure which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio, wherein said dose is reached after a titration with a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter and wherein the twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking higher doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

In another embodiment, the present invention relates to a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio for use in the treatment of heart failure in a patient, wherein said dose is reached after a titration with an initial twice-daily dose of at least 50 mg of sacubitril and valsartan in a 1:1 molar ratio increasing to the twice daily target dose of 200 mg for from about 2 to about 8 weeks.

In another embodiment, the present invention is directed to the use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient, wherein the medicament comprises a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio which is reached after a titration with an initial twice-daily dose of at least 50 mg of sacubitril and valsartan in a 1:1 molar ratio increasing to the twice daily target dose of 200 mg for from about 2 to about 8 weeks.

**Definitions**

Throughout this specification and in the claims that follow, the following terms are defined with the following meanings, unless explicitly stated otherwise.

The term "prevention" refers to prophylactic administration to a healthy subject to prevent the development of the conditions mentioned herein.  Moreover, the term "prevention" means prophylactic administration to patients being in a pre-stage of the conditions to be treated.

The term "treatment" is understood the management and care of a patient for the purpose of combating the disease, condition or disorder.

The term "therapeutically effective amount" refers to an amount of a drug or a therapeutic agent that will elicit the desired biological and/or medical response of a tissue, system or an animal (including man) that is being sought by a researcher or clinician.

4

The terms "patient" include, but are not limited to, humans, dogs, cats, horses, pigs, cows, monkeys, rabbits and mice. The preferred patients are humans.

The terms "administration of" and or "administering a" compound should be understood to mean providing a compound of the invention or a pharmaceutically acceptable salt or ester thereof, or a pro-drug thereof to a subject in need of treatment. The administration of the composition of the present invention in order to practice the present methods of therapy is carried out by administering a therapeutically effective amount of the compounds in the composition to a subject in need of such treatment or prophylaxis. The need for a prophylactic administration according to the methods of the present invention is determined via the use of well-known risk factors. The effective amount of an individual compound is determined, in the final analysis, by the physician in charge of the case, but depends on factors such as the exact disease to be treated, the severity of the disease and other diseases or conditions from which the patient suffers, the chosen route of administration, other drugs and treatments which the patient may concomitantly require, and other factors in the physician's judgment.

The term "prophylactically effective amount" as used herein means the amount of the active compounds in the composition that will elicit the biological or medical response in a tissue, system, subject, or human that is being sought by the researcher, veterinarian, medical doctor or other clinician, to prevent the onset of a disease characterized and / or manifested by atrial enlargement and/or remodeling.

The term "pharmaceutically acceptable", as used herein, refers to those compounds, materials, compositions and/or dosage forms, which are, within the scope of sound medical judgment, suitable for contact with the tissues of mammals, especially humans, without excessive toxicity, irritation, allergic response and other problem complications commensurate with a reasonable benefit/risk ratio.

The New York Heart Association (NYHA) classification grades the severity of heart failure symptoms as one of four functional classes. The NYHA classification is widely used in clinical practice and in research because it provides a standard description of severity that can be used to assess response to treatment and to guide management. The New York Heart Association functional classification based on severity of symptoms and physical activity:

Class I: No limitation of physical activity. Ordinary physical activity does not cause undue breathlessness, fatigue, or palpitations.

Class II: Slight limitation of physical activity. Comfortable at rest, but ordinary physical activity results in undue breathlessness, fatigue, or palpitations.

NPC-VS-667-000000148

Class III: Marked limitation of physical activity. Comfortable at rest, but less than ordinary physical activity results in undue breathlessness, fatigue, or palpitations.

Class IV: Unable to carry on any physical activity without discomfort. Symptoms at rest can be present. If any physical activity is undertaken, discomfort is increased.

5    Choice of endpoints: Cardiovascular death and heart failure hospitalization both reflect disease-specific endpoints related to progressive worsening of the heart failure syndrome, and experienced by patients with systolic heart failure.  These endpoints can be modified by treatments improving this condition, which has generally proved to be the case with drugs such as ACEIs, aldosterone antagonists, and β-blockers as well as devices for

10  cardiac resynchronization therapy.

In the context of the present invention, the term "sacubitril and valsartan in a 1:1 molar ratio" refers to an Angiotensin Receptor Neprilysin inhibitor (ARNi) which is

a)    trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-
15       4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696), or

b)    a combination comprising a therapeutically effective amount of a 1:1 molar ratio of

(i)     valsartan or a pharmaceutically acceptable salt thereof; and

(ii)    sacubitril or a pharmaceutically acceptable salt thereof.


20  **Detailed Description of the Invention**

This invention has shown based on the clinical trial TITRATION (see Example section) that the large majority of patients initiated on a treatment with sacubitril and valsartan in a 1:1 molar ration achieved and maintained the target dose of 200 mg twice daily without any dose interruption or down-titration over 12 weeks. More patients who were naïve to

25  previous ACE inhibitor or ARB therapy or on low-dose therapy (equivalent to <10 mg enalapril/day) were able to achieve and maintain the 200 mg target dose when up-titrated over 6 weeks versus 3 weeks.

Accordingly, the present invention relates to the following:

Methods of treatment

30  Embodiment 1: The invention encompasses a regimen for treating heart failure which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio, wherein said target dose is reached after a titration with an initial twice-daily dose of at least 50 mg of sacubitril and valsartan in a 1:1

NPC-VS-667-000000149

molar ratio increasing to the twice daily target dose of 200 mg of from about 2 to about 8 weeks.

The invention is further described in the following embodiments, numbered 2 to 20:

2. A regimen for treating heart failure according to embodiment 1, wherein said dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

3. A regimen for treating heart failure according to embodiment 2, wherein said dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 3 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 3 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

4. A regimen for treating heart failure according to embodiment 1, wherein said dose is reached after a titration of a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

5. A regimen for treating heart failure according to embodiment 4, wherein said dose is reached after a titration of a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 2 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

6. A regimen for treating heart failure according to embodiment 2 or 3, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient not taking an angiotensin-converting enzyme (ACE) inhibitor or an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

7. A regimen for treating heart failure according to embodiment 2, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking low doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

8. A regimen for treating heart failure according to embodiment 7, wherein the lower dose of an ACEI or ARB is equivalent to < 10 mg of enalapril per day.

7

9. A regimen for treating heart failure according to embodiment 1, wherein said titration mitigates a risk selected from hypotension, hyperkalemia, and renal adverse events.

10. A regimen for treating heart failure according to embodiment 4 or 5, wherein the twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking higher doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

11. A regimen for treating heart failure according to embodiment 10, wherein the higher dose of an ACEI or ARB is equivalent to ≥ 10 mg of enalapril per day.

12. A regimen for treating heart failure according to embodiment 1, wherein the patient suffers from chronic systolic heart failure with reduced ejection fraction.

13. A regimen for treating heart failure according to embodiment 1, wherein the patient is a human patient.

14. A regimen for treating heart failure according to embodiment 1, wherein the patient has at least one of the following characteristics

      i) heart failure of NYHA class II, III or IV,

      ii) an elevated plasma BNP or NT-proBNP level, preferably a plasma BNP ≥100 pg/mL (or NT-proBNP ≥400 pg/mL), more preferably a plasma BNP ≥150 pg/mL or NT-proBNP ≥600 pg/mL, and

      iii) a reduced left ventricular ejection fraction (LVEF) of ≤40%, preferably ≤35%.

15. A regimen for treating heart failure according to embodiment 1, wherein the patient suffers from chronic heart failure classified as NYHA class II, III or IV and has systolic dysfunction, preferably wherein the patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

16. A regimen for treating heart failure according to embodiment 1, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696).

17. A regimen for treating heart failure according to embodiment 1, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of a pharmaceutical composition comprising

      (i)     valsartan or a pharmaceutically acceptable salt thereof; and

8

(ii)      sacubitril or a pharmaceutically acceptable salt thereof,

18. A regimen for treating heart failure according to embodiment 1, wherein the patient receives a base treatment with a stable dose of a beta-blocker, an aldosterone antagonists, and/ or a diuretic.

19. A regimen for treating heart failure according to embodiment 1, wherein the patient has to stop taking the angiotensin receptor blocker (ARB) or the ACE inhibitor at least 36 hours prior to taking the medicament.

20. A regimen for treating heart failure according to embodiment 1, wherein

a) the 50 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 24 mg sacubitril and 26 mg valsartan,

b) the 100 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 49 mg sacubitril and 51 mg valsartan, and

c) the 200 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 97 mg sacubitril and 103 mg valsartan.

In another embodiment of the foregoing, the patient is a human patient.

In another embodiment of the foregoing, the patient suffering from chronic systolic heart failure, in particular the patient with chronic systolic heart failure with reduced ejection fraction, has at least one of the following characteristics:

i) heart failure of NYHA class II, III or IV,

ii) an elevated plasma BNP or NT-proBNP level, preferably a plasma BNP $\geq$100 pg/mL (or NT-proBNP $\geq$400 pg/mL), more preferably a plasma BNP $\geq$150 pg/mL or NT-proBNP $\geq$600 pg/mL, and

iii) a reduced left ventricular ejection fraction (LVEF) of $\leq$40%, preferably $\leq$35%.

In addition, the patient might be characterized by one or more of the following:

iv) prior hospitalization for heart failure within the last 12 months,

v) a stable ACE inhibitor or ARB at dose $\geq$ enalapril 10 mg daily + beta-blocker (unless contraindicated or intolerant) + aldosterone antagonist (as indicated),

vi) systolic blood pressure $\geq$ 95 mm Hg,

vii) eGFR $\geq$ 30 ml/min/1.73 $m^2$ and

viii) serum K $\leq$ 5.4 mEq/L.

In another embodiment of the foregoing,, the patient has heart failure classified as NYHA class II, III or IV and has systolic dysfunction. In another embodiment the patient has heart

9

NPC-VS-667-000000152

failure classified as NYHA class II. In a further embodiment, the patient has heart failure classified as NYHA class II with systolic dysfunction and has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

5    All the aforementioned embodiments for the methods of protection and treatment according to the present invention are equally applicable to

- the use of a compound of formula (I) or of the combination (i)/(ii) as defined herein for the manufacture of a medicament for use according to the present invention,

- the use of a compound of formula (I) or of the combination (i)/(ii) as defined herein
10    according to the present invention,

- a compound of formula (I) or of the combination (i)/(ii) as defined herein for use according to the present invention,

- the pharmaceutical compositions comprising a compound of formula (I) or of the combination (i)/(ii) as defined herein for the use according to the present invention,

15    - the use of the pharmaceutical compositions comprising a compound of formula (I) or of the combination (i)/(ii) as defined herein according to the present invention and

- the use of the pharmaceutical compositions comprising a compound of formula (I) or of the combination (i)/(ii) as defined herein for the manufacture of a medicament
20    for use according to the present invention.

Some of these aspects are further described in more detail below, but this description should not be construed as limiting.

Compound or combination for use

25    In a separate aspect, the present invention is directed to the following embodiment 20:

A twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio for use in the treatment of heart failure in a patient, wherein said dose is reached after a titration with an initial twice-daily dose of at least 50 mg of sacubitril and valsartan in a 1:1 molar ratio increasing to the twice daily target dose of 200 mg for from about 2 to about 8 weeks.

30    The invention is further described in the following embodiments, numbered 22 to 40:

22. The twice-daily target dose of embodiment 21 for use in the treatment of heart failure in a patient, wherein said dose is reached after a titration with a twice daily starting dose

NPC-VS-667-000000153

of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

23. The twice-daily target dose of embodiment 22 for use in the treatment of heart failure in a patient, wherein said dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 3 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 3 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

24. The twice daily target dose of embodiment 21 for use in the treatment of heart failure in a patient, wherein said dose is reached after a titration of a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

25. The twice daily target dose of embodiment 24 for use in the treatment of heart failure in a patient, wherein said dose is reached after a titration of a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 2 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

26. The twice daily target dose of embodiment 22 or 23 for use in the treatment of heart failure in a patient, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient not taking an angiotensin-converting enzyme (ACE) inhibitor or an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

27. The twice daily target dose of embodiment 22 for use in the treatment of heart failure in a patient, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking low doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

28. The twice daily target dose of embodiment 27 for use in the treatment of heart failure in a patient, wherein the lower dose of an ACEI or ARB is equivalent to < 10 mg of enalapril per day.

29. The twice daily target dose of embodiment 21 for use in the treatment of heart failure in a patient, wherein said titration mitigates a risk selected from hypotension, hyperkalemia, and renal adverse events.

11

NPC-VS-667-000000154

30. The twice daily target dose of embodiment 4 or 5 for use in the treatment of heart failure in a patient, wherein the twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking higher doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

31. The twice daily target dose of embodiment 30 for use in the treatment of heart failure in a patient, wherein the higher dose of an ACEI or ARB is equivalent to ≥ 10 mg of enalapril per day.

32. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient suffers from chronic systolic heart failure with reduced ejection fraction.

33. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient is a human patient.

34. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient has at least one of the following characteristics

      i) heart failure of NYHA class II, III or IV,

      ii) an elevated plasma BNP or NT-proBNP level, preferably a plasma BNP ≥100 pg/mL (or NT-proBNP ≥400 pg/mL), more preferably a plasma BNP ≥150 pg/mL or NT-proBNP ≥600 pg/mL, and

      iii) a reduced left ventricular ejection fraction (LVEF) of ≤40%, preferably ≤35%.

35. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient suffers from chronic heart failure classified as NYHA class II, III or IV and has systolic dysfunction, preferably wherein the patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

36. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696).

37. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of a pharmaceutical composition comprising

12

NPC-VS-667-000000155

WO 2016/181284 PCT/IB2016/052633

(i)      valsartan or a pharmaceutically acceptable salt thereof; and

(ii)      sacubitril or a pharmaceutically acceptable salt thereof,

38. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient receives a base treatment with a stable dose of a beta-blocker, an aldosterone antagonists, and/ or a diuretic.

39. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient has to stop taking the angiotensin receptor blocker (ARB) or the ACE inhibitor at least 36 hours prior to taking the medicament.

40. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein

a) the 50 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 24 mg sacubitril and 26 mg valsartan,

b) the 100 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 49 mg sacubitril and 51 mg valsartan, and

c) the 200 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 97 mg sacubitril and 103 mg valsartan.

<u>Use for the manufacture of a medicament</u>

In a separate aspect, the present invention is directed to the following embodiment 41:

41. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient, wherein the medicament comprises a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio which is reached after a titration with an initial twice-daily dose of at least 50 mg of sacubitril and valsartan in a 1:1 molar ratio increasing to the twice daily target dose of 200 mg for from about 2 to about 8 weeks.

The invention is further described in the following embodiments, numbered 42 to 61:

42. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 41, wherein said target dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for

13

from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

43. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 42, wherein said target dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 3 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 3 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

44. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 41, wherein said target dose is reached after a titration of a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

45. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 44, wherein said target dose is reached after a titration of a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 2 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

46. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 42 or 43, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient not taking an angiotensin-converting enzyme (ACE) inhibitor or an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

47. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 42 or 43, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking low doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

48. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 47, wherein the lower dose of an ACEI or ARB is equivalent to < 10 mg of enalapril per day.

14

49. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 41, wherein said titration mitigates a risk selected from hypotension, hyperkalemia, and renal adverse events.

50. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 44 or 45, wherein the twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking higher doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

51. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 50, wherein the higher dose of an ACEI or ARB is equivalent to ≥ 10 mg of enalapril per day.

52. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51, wherein the patient suffers from chronic systolic heart failure with reduced ejection fraction.

53. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding claims 41 to 51, wherein the patient is a human patient.

54. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51, wherein the patient has at least one of the following characteristics

   i) heart failure of NYHA class II, III or IV,

   ii) an elevated plasma BNP or NT-proBNP level, preferably a plasma BNP ≥100 pg/mL (or NT-proBNP ≥400 pg/mL), more preferably a plasma BNP ≥150 pg/mL or NT-proBNP ≥600 pg/mL, and

   iii) a reduced left ventricular ejection fraction (LVEF) of ≤40%, preferably ≤35%.

55. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51, wherein the patient suffers from chronic heart failure classified as NYHA class II, III or IV and has systolic dysfunction, preferably wherein the patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

NPC-VS-667-000000158

56. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696).

57. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of a pharmaceutical composition comprising

  (i)  valsartan or a pharmaceutically acceptable salt thereof; and

  (ii)  sacubitril or a pharmaceutically acceptable salt thereof,

58. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51, wherein the patient receives a base treatment with a stable dose of a beta-blocker, an aldosterone antagonists, and/ or a diuretic.

59. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51, wherein the patient receives base treatment with a stable dose of a beta-blocker and optionally an aldosterone antagonist.

60. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51, wherein the patient has to stop taking the angiotensin receptor blocker (ARB) or the ACE inhibitor at least 36 hours prior to taking the medicament.

61. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51,, wherein

  a) the 50 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 24 mg sacubitril and 26 mg valsartan,

  b) the 100 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 49 mg sacubitril and 51 mg valsartan, and

  c) the 200 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 97 mg sacubitril and 103 mg valsartan.

NPC-VS-667-000000159

WO 2016/181284

PCT/IB2016/052633

<u>Compounds and combinations and pharmaceutical compositions for use according to the invention</u>

The "sacubitril and valsartan in a 1:1 molar ratio" of the invention used in the aforementioned methods is provided in the form of

5    a)    the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696), or

    b)    a pharmaceutical composition comprising a 1:1 molar ratio of

        (i)    valsartan or a pharmaceutically acceptable salt thereof; and

10        (ii)    of sacubitril or a pharmaceutically acceptable salt thereof.

Sacubitril is the INN for N-(3-carboxy-1-oxopropyl)-(4S)-(p-phenylphenylmethyl)-4-amino-2R-methylbutanoic acid ethyl ester. This is a prodrug for (2R,4S)-5-biphenyl-4-yl-4-(3-carboxy-propionyl amino)-2-methyl-pentanoic acid.

In a preferred embodiment, the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-

15 ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate is present in crystalline form.

In another embodiment, the combination comprises a 1:1 molar ratio

        (i)    of valsartan; and

        (ii)    of sacubitril or a pharmaceutically acceptable salt thereof, such as sodium or

20            calcium salt.

In a preferred embodiment, the invention encompasses a pharmaceutical composition for use comprising a therapeutically effective amount of trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (Compound

25 LCZ696).  Such compounds and pharmaceutical compositions have been previously disclosed in WO2007/056546 and WO 2009/061713, whose preparative teachings are incorporated herein by reference.

In a further embodiment of the invention, the pharmaceutical compositions for use according to the present invention comprise trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-

30 3-ethoxycarbonyl-1-butylcarbamoyl) propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696) and deliver upon administration the NEP inhibitor pro-drug sacubitril and the angiotensin receptor blocker valsartan together to the patient.

NPC-VS-667-000000160

In one embodiment of the invention for all of its uses, the pharmaceutical composition comprises the the NEP inhibitor pro-drug sacubitril, namely N-(3-carboxy-1-oxopropyl)-(4S)-p-phenylphenylmethyl)-4-amino-(2R)-methylbutanoic acid ethyl ester or the NEP inhibitor N-(3-carboxy-1-oxopropyl)-(4S)-p-phenylphenylmethyl)-4-amino-(2R)-

5    methylbutanoic acid, or pharmaceutically acceptable salts thereof, and the Angiotensin Receptor Blocker valsartan or a pharmaceutically acceptable salt thereof. Such combinations are for example disclosed within international patent application WO 2003/059345, which is herewith incorporated by reference.

In one embodiment, the pharmaceutical composition comprises the NEP inhibitor pro-drug

10   sacubitril, namely N-(3-carboxy-1-oxopropyl)-(4S)-p-phenylphenylmethyl)-4-amino-(2R)-methylbutanoic acid ethyl ester or the NEP inhibitor N-(3-carboxy-1-oxopropyl)-(4S)-p-phenylphenylmethyl)-4-amino-(2R)-methylbutanoic acid, or pharmaceutically acceptable salts thereof, and the Angiotensin Receptor Blocker valsartan or a pharmaceutically acceptable salt thereof, in a 1:1 molar ratio.

15   (i) Valsartan or (S)-N-valeryl-N-{[2'-(1H-tetrazol-5-yl)-biphenyl-4-yl]-methyl}-valine) or a pharmaceutically acceptable salt thereof that can be purchased from commercial sources or can be prepared according to known methods, such as described in U.S. Patent No. 5,399,578 and EP 0443983, whose preparative teachings are incorporated by reference herein. Valsartan may be used in certain embodiments of the invention in its free acid

20   form, as well as in any suitable salt form. Depending upon the circumstance, esters or other derivatives of the carboxylic grouping may be employed as well as salts and derivatives of the tetrazole grouping.

(ii) sacubitril, namely N-(3-carboxy-1-oxopropyl)-(4S)-(p-phenylphenylmethyl)-4-amino-2R-methylbutanoic acid ethyl ester, or (2R,4S)-5-biphenyl-4-yl-4(3-carboxy-propionyl amino)-

25   2-methyl-pentanoic acid can be prepared by known methods such as described in U.S. Patent No. 5,217,996 which is herein incorporated by reference.

The corresponding active ingredient or a pharmaceutically acceptable salt thereof may also be used in the form of a hydrate or include other solvents used for crystallization.

The pharmaceutical compositions according to the invention can be prepared in a manner

30   known per se and are those suitable for enteral, such as oral or rectal, and parenteral administration to mammals (warm-blooded animals), including man, comprising a therapeutically effective amount of the pharmacologically active compound, alone or in combination with one or more pharmaceutically acceptable carriers, especially suitable for enteral or parenteral application.

18

The pharmaceutical preparations of the invention contain, for example, from about 0.1% to about 100%, e. g. 80% or 90%, or from about 1% to about 60%, of the active ingredient. The term "about" or "approximately", as used herein in each instance, shall have the meaning of within 10%, more preferably within 5%, of a given value or range.

5   Pharmaceutical preparations according to the invention for enteral or parenteral administration are, e.g., those in unit dose forms, such as sugar-coated tablets, tablets, capsules, bars, sachets, granules, syrups, aqueous or oily suspensions or suppositories and furthermore ampoules. These are prepared in a manner known per se, e. g. by means of conventional mixing, granulating, sugar-coating, dissolving or lyophilizing

10   processes. Thus, pharmaceutical preparations for oral use can be obtained by combining the active ingredient with solid carriers, if desired granulating a mixture obtained, and processing the mixture or granules, if desired or necessary, after addition of suitable excipients to give tablets or sugar-coated tablet cores.

Tablets may be formed from the active compound with fillers, for example calcium

15   phosphate; disintegrating agents, for example maize starch, lubricating agents, for example magnesium stearate; binders, for example microcrystalline cellulose or polyvinylpyrrolidone and other optional ingredients known in the art to permit tabletting the mixture by known methods. Similarly, capsules, for example hard or soft gelatin capsules, containing the active compound with or without added excipients, may be prepared by

20   known methods. The contents of the capsule may be formulated using known methods so as to give sustained release of the active compound.

Other dosage forms for oral administration include, for example, aqueous suspensions containing the active compound in an aqueous medium in the presence of a non-toxic suspending agent such as sodium carboxymethylcellulose, and oily suspensions

25   containing the active compounds in a suitable vegetable oil, for example arachis oil.

The active compound may be formulated into granules with or without additional excipients. The granules may be ingested directly by the patient or they may be added to a suitable liquid carrier (e.g. water) before ingestion. The granules may contain disintegrants, e.g. an effervescent pair formed from an acid and a carbonate or

30   bicarbonate salt to facilitate dispersion in the liquid medium.

The dosage of the active ingredient of the composition will, of course, vary with the nature of the severity of the condition to be treated and with the particular compound in the composition and its route of administration. It will also vary according to the age, weight and response of the individual patient.

NPC-VS-667-000000162

Case 1:23-cv-00401-RGA   Document 40-1   Filed 10/20/23   Page 37 of 223 PageID #: 288

In the embodiments where the pharmaceutical composition comprises trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl) propionate-(S)-3'-methyl-2'-(pentanoyl{2"-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696) in the pharmaceutical compositions for use in the context of the present invention, the unit dose of the therapeutic agents sacubitril and valsartan together will be in the range from about 1 to about 1000 mg, such as 40 mg to 400 mg (e.g., 50 mg, 100 mg, 200 mg, 400 mg) per day. Alternatively lower doses may be given, for example doses of 0.5 to 100 mg; 0.5 to 50 mg; or 0.5 to 20 mg per day. As explanatory note, a unit dose of 100 mg LCZ696 delivering 100 mg of the two agents sacubitril and valsartan corresponds to 113.1 mg of trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl) propionate-(S)-3'-methyl-2'-(pentanoyl{2"-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate]hemipentahydrate. Correspondingly, a unit dose of 200 mg requires 226.2 mg, and a unit dose of 400 mg requires 452.4 mg of trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl) propionate-(S)-3'-methyl-2'-(pentanoyl{2"-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate]hemipentahydrate.

Dosages of the sum of the individual compounds (i)/(ii) in the combination of the pharmaceutical composition will be in the range from about 1 to about 1000 mg, such as 40 mg to 400 mg and include but are not limited to 5 mg, 20 mg, 25 mg, 40 mg, 50 mg, 80 mg, 100 mg, 200 mg, 400 mg, 800 mg and 1000 mg.  Such dosages for compounds (i)/(ii) can be considered therapeutically effective amounts or dosage strengths.  Ratios for the amount of each compound in the pharmaceutical composition are preferably in the about 1:1 molar ratio to achieve an optimal renal protection while still providing cardiovascular benefits. In preferred embodiments, the dosages of the individual compounds (i)/(ii) correspond to the same molecular amounts as in a pharmaceutical composition comprising a 50 mg, 100 mg, 200 mg or 400 mg dose of LCZ696. E.g. a 200 mg dose of LCZ696 corresponds approximately to 103 mg valsartan and 97 mg of sacubitril

Pharmaceutical compositions containing a compound of formula(I) (such as compound LCZ696), or compounds (i)/(ii) can be administered any number of times per day, i.e. once a day (q.d.), twice (b.i.d.), three times, four time, etc. in an immediate release formation or less frequently as an extended or sustained release formation.  Preferably the pharmaceutical composition is administered twice daily (b.i.d.). Corresponding doses may be taken, for example, in the morning, at mid-day or in the evening.

The following example is illustrative, but does not serve to limit the scope of the invention described herein.

20

NPC-VS-667-000000163

**Example**

A multicenter, randomized, double-blind, parallel group study to assess the safety and tolerability of initiating LCZ696 in heart failure patients comparing two titration regimens.

5    STUDY DRUG LCZ696:

LCZ696 refers to the supramolecular complex trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl) propionate-(S)-3'-methyl-2'-(pentanoyl{2"-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate]hemipentahydrate. This compound and pharmaceutical compositions thereof have been previously disclosed in

10   WO2007/056546 and WO 2009/061713, whose preparative teachings are incorporated herein by reference.

LCZ696 is a first-in-class angiotensin receptor neprilysin inhibitor that comprises the molecular moieties of the NEP (neutral endopeptidase EC 3.4.24.11) inhibitor pro-drug sacubitril (INN, also known as AHU377 and N-(3-carboxy-1-oxopropyl)-(4S)-p-

15   phenylphenylmethyl)-4-amino-(2R)-methylbutanoic acid ethyl ester) and the angiotensin receptor blocker valsartan as a single compound. Sacubitril is metabolized by enzymatic cleavage to LBQ657 (N-(3-carboxy-1-oxopropyl)-(4S)-p-phenylphenylmethyl)-4-amino-(2R)-methylbutanoic acid), the active inhibitor of neutral endopeptidase, which is the major enzyme responsible for the breakdown of atrial natriuretic peptides.

20   OVERALL STUDY DESIGN

This was a multicenter, randomized, double-blind, parallel group study to assess the safety and tolerability of initiating LCZ696 in heart failure patients (New York Heart Association [NYHA] class II-IV) with reduced ejection fraction defined by a left ventricular ejection fraction (LVEF) $\leq$ 35%. Up-titration regimens of 3-weeks or 6-weeks to the

25   LCZ696 target dose of 200 mg bid were evaluated. The study consisted of two main phases: (1) open-label LCZ696 run-in phase lasting approximately one week, and (2) double-blind randomized phase lasting approximately 11 weeks. Patients enrolled were stratified based on the pre-study level of RAAS inhibition (high/low).

STUDY OBJECTIVES

30   Primary objectives

To characterize the safety and tolerability of initiating LCZ696 in HFrEF patients with 3-week and 6-week up-titration regimens over 12 weeks based on reported adverse events and laboratory assessments.

21

Secondary objectives

The secondary objectives were:

- To evaluate the proportion of patients in the two treatment groups who achieved treatment success, defined as those achieving and maintaining LCZ696 200 mg bid without any dose interruption or down-titration over 12 weeks.

- To evaluate the proportion of patients who tolerate a regimen of LCZ696 200 mg bid for at least 2 weeks leading to study completion, regardless of previous dose interruption or down-titration.

STUDY DESIGN

This was a multi-center, randomized, double-blind, parallel-group study conducted to evaluate the safety and tolerability of LCZ696 comparing two up-titration regimens in both outpatients and hospitalized patients (inpatients) with HFrEF.

Patients were stratified based on the level of RAAS inhibition as follows:

- **High RAAS stratum**: Patients receiving > 160 mg of valsartan or > 10 mg total daily dose of enalapril, or equivalent doses of other ARBs/ACEIs, respectively, at screening

- **Low RAAS stratum**: Patients receiving ≤ 160 mg of valsartan or ≤ 10 mg total daily dose of enalapril, or equivalent doses of other ARBs/ACEIs, respectively, at screening. This stratum also included patients who were not on an ACEI or an ARB 4 weeks prior to screening (i.e., ACEI/ARB-naïve patients)

At least 25% (but not more than 50%) of the randomized patients were planned to be in the low RAAS inhibition stratum. Patients hospitalized for decompensated HF were allowed to enter either the low or high RAAS inhibition stratum, corresponding to the most recent tolerated ACEI or ARB dose they had received during their hospitalization.

This study consisted of three phases: **see Figure 1.**

(1) Screening phase lasting approximately one week;

(2) Open-label LCZ696 run-in phase lasting approximately one week (Day 1 to 5); and

(3) Randomized phase lasting approximately 11 weeks

NPC-VS-667-000000165

Screening phase

At Visit 1, during the screening phase, all patients who had provided their written informed consent were evaluated for eligibility to enter the study. Left ventricular ejection fraction (LVEF) measurements required for eligibility were based on locally obtained echocardiograms, MUGA (multi-gated acquisition) scans, CT (computerized tomography) scans, MRI (magnetic resonance imaging) scans, or ventricular angiographies performed within the prior 12 months, provided no subsequent measurements were > 35%. If a LVEF measurement from the prior 12 months was not available, the patient could enter the trial based on a LVEF ≤ 35% obtained during the screening phase, i.e., before start of study medication intake. If a patient had an implanted cardiac resynchronization therapy (CRT) device, the LVEF value used to qualify for the study had to be obtained by at least three months after device implantation.

Both inpatients and outpatients were eligible for participation in this study. Patients who met all the eligibility criteria at screening were eligible to enter the open-label LCZ696 run-in phase and proceed to Visit 2 to start receiving the study medication. Patients who had been using ACEIs had to stop these medications under the supervision of the study investigator, and enter a 36-hour ACEI-free washout period before they attended their Visit 2.

Open-label LCZ696 run-in phase

Patients who met all the entry criteria and completed the ACEI-free washout period (if required) attended Visit 2 within approximately one week after Visit 1. At Visit 2, patients began taking open-label LCZ696 50 mg bid. Eligible hospitalized patients also took the study medication while they were still in the hospital and before they were discharged. Patients took the study medication in addition to their background HF therapy, except for ACEIs and ARBs, which were replaced by the study medication.

Patients were asked to return after 5 ± 2 days to attend Visit 3/777 (Randomization visit).

Randomized phase

At Visit 3/777, safety and tolerability of LCZ696 50 mg bid was assessed (see table below). Patients, who could not tolerate LCZ696 50 mg bid per the criteria listed in the Table, were to be discontinued from the study and considered as run-in failures.

NPC-VS-667-000000166

*Table: Safety criteria that must be met at Visits 3 to 6 in order to avoid treatment failure*

| Parameter | Requirement |
|---|---|
| Potassium level | ≤ 5.4 mmol/L |
| Kidney function | eGFR ≥ 30 mL/min/1.73m$^2$ |
| | eGFR reduction ≤ 35% compared to Screening value |
| Blood pressure | No symptomatic hypotension and SBP ≥ 95 mmHg |
| Adverse events (AEs) or conditions | No postural symptoms or any AEs that preclude continuation according to the investigator's judgment |

Patients who successfully completed the open-label run-in and tolerated LCZ696 50 mg bid were to be randomized to receive double-blind LCZ696 at one of the two different titration schemes in a 1:1 ratio: they could be up-titrated to 200 mg bid over the following two weeks (Condensed titration) or they could be up-titrated to 200 mg bid over the following five weeks (Conservative titration).

At Visit 3/777, patients randomized to the condensed up-titration arm were up-titrated to LCZ696 100 mg bid, while patients randomized to the conservative up-titration arm continued to receive LCZ696 50 mg bid.

Two weeks after Visit 3/777, at Visit 4, the patients who were judged by the investigator to be tolerant of the study medication per the safety criteria in the Table were up-titrated to the next dose level; those in the condensed up-titration arm received LCZ696 200 mg bid and those in the conservative up-titration arm received LCZ696 100 mg bid.

Patients returned three weeks later to attend Visit 5. Patients who were judged by the investigator to be tolerant of the study medication per the safety criteria in the Table further continued on the titration plan as outlined in above; patients in the condensed up-titration arm continued to receive LCZ696 200 mg bid, while patients in the conservative up-titration arm were up-titrated to LCZ696 200 mg bid.

Patients returned three weeks later to attend Visit 6. Patients who were judged by the investigator to be tolerant of the study medication per the safety criteria in the Table continued to receive LCZ696 200 mg bid and were asked to return three weeks later to attend Visit 778/End of Study (EoS) to undergo the final safety evaluations.

NPC-VS-667-000000167

Patients who were deemed by the investigator to require dose reduction or interruption in study medication dosing at any post-randomization visit (despite modification of concomitant medications) were considered as treatment failures. They were switched to open-label LCZ696 at a dose level at the discretion of the investigator. Treatment failure patients were expected to attend the remaining study visits according to schedule and their doses were modified based on the investigator's judgment with the overall goal of achieving and maintaining the target dose (LCZ696 200 mg bid) for at least two uninterrupted weeks and until Visit 778/EoS.

Throughout the randomized phase, patients took the study medication in addition to their background HF therapy, except for ACEIs and ARBs, which were replaced by the study medication itself. Every attempt was made to maintain patients on the assigned study medication throughout the trial.

At each visit, the patients' medication compliance as well as safety and tolerability of the study medication was assessed, including, but not limited to, signs and symptoms of hypotension, elevated potassium level, and decreased renal function. If, however, in the opinion of the investigator, the patient could not tolerate the assigned study medication, the investigator could consider if the non-disease-modifying medications (e.g., CCBs, diuretics, nitrates, α-blockers) could be reduced to manage tolerability before declaring the patient to be a treatment failure and subsequently switching him/her to open-label study medication. The investigator was also allowed to adjust doses of other disease-modifying medications if they were believed to be the most likely cause of the adverse effects.


PATIENTS

Written informed consent was obtained before any assessment was performed.

Patients eligible for inclusion in this study must have fulfilled all of the following criteria listed below:

1.  Males and/or females of at least 18 years of age, who were either inpatients or outpatients

2.  Diagnosis of chronic heart failure (CHF) NYHA class II-IV.

3.  Left ventricular ejection fraction (LVEF) ≤ 35% at screening (any local measurement made within the past 12 months using echocardiography, MUGA, CT scanning, MRI, or ventricular angiography was acceptable, provided no subsequent measurement was > 35%).

4.  Meeting one of the following criteria:

25

- ACEI/ARB naïve patients, i.e., not on an ACEI or ARB for at least 4 weeks before screening.

- For outpatients who were being treated with ACEI or ARB, dose had to be stable dose for at least 2 weeks before screening.

- For hospitalized patients (inpatients), being on no ACEI/ARB or on a tolerated dose of an ACEI or an ARB at screening.

5.  Patients treated with a β-blocker, unless contraindicated or not tolerated (reason had to be documented in absence of that medication).

6.  An aldosterone antagonist was also to be considered in all patients, taking account of renal function, serum potassium and tolerability. If given, the dose of aldosterone antagonist was to be optimized according to guideline recommendations and patient tolerability. Other evidence-based therapy for HF was also to be considered, e.g., cardiac resynchronization therapy and an implantable cardioverter-defibrillator in selected patients, as recommended by guidelines.

Treatment arms

Patients were assigned to one of the following two treatment arms in a ratio of 1:1 as described below:

- Condensed up-titration: up-titration of LCZ696 from 50 mg bid to 200 mg bid over three weeks (including the run-in phase).

- Conservative up-titration: up-titration of LCZ696 from 50 mg bid to 200 mg bid over six weeks (including the run-in phase).

Reference

The study design and procedures can be found under www.clinicaltrials.gov, study number NCT01922089, which is herewith incorporated by reference.

**RESULTS**

SUMMARY:

Among the randomized patients and excluding those who discontinued due to non-AE related reasons, 81% achieved the target LCZ696 200 mg bid dose without any down-titration or dose interruption over the entire 12-week study period, and 85% were on the LCZ696 200 mg bid target dose for at least 2 weeks before study completion. The most

26

NPC-VS-667-000000169

common reasons for dose adjustment/interruption or permanent discontinuation were AEs related to hypotension, renal dysfunction or hyperkalemia.

During the randomized period, a higher proportion of low RAAS stratum patients achieved the LCZ696 200 mg bid target dose and had no dose adjustment/interruption over 12 weeks if they were up-titrated more gradually. Eight-five percent (85%) of patients who were ACEI/ARB naïve or receiving prior low levels of RAAS therapy and up-titrated over 6 weeks achieved the target dose of LCZ696 200 mg bid and had no dose adjustment/interruption over 12 weeks compared with 74% of patients up-titrated over 3 weeks. This difference was due to fewer AEs related to hypotension, renal dysfunction or hyperkalemia. Eighty-three percent (83%) of patients receiving prior high levels of RAAS therapy achieved the LCZ696 200 mg bid target dose without any dose adjustment/interruption over 12 weeks, with no difference due to the rate of up-titration (3 vs. 6 weeks). There was no major difference between the uptitration regimens in the treatment success rate among the ACEI/ARB-naïve patients.

CONCLUSION

Across both run-in and randomized periods, the proportion of patients who achieved the target dose of LCZ696 200 mg bid without any dose adjustment or interruption over 12 weeks was 76% if discontinuations due to non-AE reasons are excluded and 70% based on the total number of patients receiving at least one dose of study medication.

In the low dose stratum, the rate of treatment success was higher when LCZ696 was uptitrated more gradually.

NPC-VS-667-000000170

**WO 2016/181284**                                          **PCT/IB2016/052633**

**Figure 1:**



NPC-VS-667-000000171

(12) INTERNATIONAL APPLICATION PUBLISHED UNDER THE PATENT COOPERATION TREATY (PCT)

(19) World Intellectual Property Organization
International Bureau



(43) International Publication Date
17 November 2016 (17.11.2016)



**WIPO | PCT**

(10) International Publication Number
**WO 2016/181284 A1**

(51) International Patent Classification:
*A61K 31/225* (2006.01)   *A61P 9/08* (2006.01)
*A61K 31/41* (2006.01)

(21) International Application Number:
PCT/IB2016/052633

(22) International Filing Date:
9 May 2016 (09.05.2016)

(25) Filing Language: English

(26) Publication Language: English

(30) Priority Data:
62/159,703   11 May 2015 (11.05.2015)   US

(71) Applicant *(for all designated States except US)*: NOVARTIS AG [CH/CH]; Lichtstrasse 35, 4002 Basel (CH).

(72) Inventors; and
(71) Applicants *(for US only)*: RIZKALA, Adel Redmond [US/US]; c/o Novartis Pharma AG, Postfach, 4002 Basel (CH). SHI, Victor Chengwei [US/US]; c/o Novartis Pharma AG, Postfach, 4002 Basel (CH). CHEN, Fabian [US/US]; c/o Novartis Pharma AG, Postfach, 4002 Basel (CH).

(74) Agent: KURLANDSKY, David; c/o Novartis Pharmaceuticals Corporation, One Health Plaza, East Hanover, New Jersey 07936 (US).

(81) Designated States *(unless otherwise indicated, for every kind of national protection available)*: AE, AG, AL, AM, AO, AT, AU, AZ, BA, BB, BG, BH, BN, BR, BW, BY, BZ, CA, CH, CL, CN, CO, CR, CU, CZ, DE, DK, DM, DO, DZ, EC, EE, EG, ES, FI, GB, GD, GE, GH, GM, GT, HN, HR, HU, ID, IL, IN, IR, IS, JP, KE, KG, KN, KP, KR, KZ, LA, LC, LK, LR, LS, LU, LY, MA, MD, ME, MG, MK, MN, MW, MX, MY, MZ, NA, NG, NI, NO, NZ, OM, PA, PE, PG, PH, PL, PT, QA, RO, RS, RU, RW, SA, SC, SD, SE, SG, SK, SL, SM, ST, SV, SY, TH, TJ, TM, TN, TR, TT, TZ, UA, UG, US, UZ, VC, VN, ZA, ZM, ZW.

(84) Designated States *(unless otherwise indicated, for every kind of regional protection available)*: ARIPO (BW, GH, GM, KE, LR, LS, MW, MZ, NA, RW, SD, SL, ST, SZ, TZ, UG, ZM, ZW), Eurasian (AM, AZ, BY, KG, KZ, RU, TJ, TM), European (AL, AT, BE, BG, CH, CY, CZ, DE, DK, EE, ES, FI, FR, GB, GR, HR, HU, IE, IS, IT, LT, LU, LV, MC, MK, MT, NL, NO, PL, PT, RO, RS, SE, SI, SK, SM, TR), OAPI (BF, BJ, CF, CG, CI, CM, GA, GN, GQ, GW, KM, ML, MR, NE, SN, TD, TG).

**Declarations under Rule 4.17:**
— *as to applicant's entitlement to apply for and be granted a patent (Rule 4.17(ii))*
— *as to the applicant's entitlement to claim the priority of the earlier application (Rule 4.17(iii))*

**Published:**
— *with international search report (Art. 21(3))*

WO 2016/181284 A1

(54) Title: SACUBITRIL-VALSARTAN DOSAGE REGIMEN FOR TREATING HEART FAILURE

(57) Abstract: The present invention relates to sacubitril-valsartan dosage regimens for the treatment of heart failure in a patient.

NPC-VS-667-000000220

**Claims:**

1. A regimen for treating heart failure which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio, wherein said target dose is reached after a titration with an initial twice-daily dose of at least 50 mg of sacubitril and valsartan in a 1:1 molar ratio increasing to the twice daily target dose of 200 mg of from about 2 to about 8 weeks.

2. A regimen for treating heart failure according to claim 1, wherein said dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

3. A regimen for treating heart failure according to claim 2, wherein said dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 3 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 3 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

4. A regimen for treating heart failure according to claim 1, wherein said dose is reached after a titration of a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

5. A regimen for treating heart failure according to claim 4, wherein said dose is reached after a titration of a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 2 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

6. A regimen for treating heart failure according to claim 2 or 3, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient not taking an angiotensin-converting enzyme (ACE) inhibitor or an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

7. A regimen for treating heart failure according to claim 2, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking low doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

NPC-VS-667-000000221

8. A regimen for treating heart failure according to claim 7, wherein the lower dose of an ACEI or ARB is equivalent to < 10 mg of enalapril per day.

9. A regimen for treating heart failure according to claim 1, wherein said titration mitigates a risk selected from hypotension, hyperkalemia, and renal adverse events.

10. A regimen for treating heart failure according to claim 4 or 5, wherein the twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking higher doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

11. A regimen for treating heart failure according to claim 10, wherein the higher dose of an ACEI or ARB is equivalent to ≥ 10 mg of enalapril per day.

12. A regimen for treating heart failure according to claim 1, wherein the patient suffers from chronic systolic heart failure with reduced ejection fraction.

13. A regimen for treating heart failure according to claim 1, wherein the patient is a human patient.

14. A regimen for treating heart failure according to claim 1, wherein the patient has at least one of the following characteristics

   i) heart failure of NYHA class II, III or IV,

   ii) an elevated plasma BNP or NT-proBNP level, preferably a plasma BNP ≥100 pg/mL (or NT-proBNP ≥400 pg/mL), more preferably a plasma BNP ≥150 pg/mL or NT-proBNP ≥600 pg/mL, and

   iii) a reduced left ventricular ejection fraction (LVEF) of ≤40%, preferably ≤35%.

15. A regimen for treating heart failure according to claim 1, wherein the patient suffers from chronic heart failure classified as NYHA class II, III or IV and has systolic dysfunction, preferably wherein the patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

16. A regimen for treating heart failure according to claim 1, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696).

NPC-VS-667-000000222

17. A regimen for treating heart failure according to claim 1, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of a pharmaceutical composition comprising

      (i)      valsartan or a pharmaceutically acceptable salt thereof; and

5       (ii)      sacubitril or a pharmaceutically acceptable salt thereof,

18. A regimen for treating heart failure according to claim 1, wherein the patient receives a base treatment with a stable dose of a beta-blocker, an aldosterone antagonists, and/ or a diuretic.

19. A regimen for treating heart failure according to claim 1, wherein the patient has to
10 stop taking the angiotensin receptor blocker (ARB) or the ACE inhibitor at least 36 hours prior to taking the medicament.

20. A regimen for treating heart failure according to claim 1, wherein

      a) the 50 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 24 mg sacubitril and 26 mg valsartan,

15       b) the 100 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 49 mg sacubitril and 51 mg valsartan, and

      c) the 200 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 97 mg sacubitril and 103 mg valsartan.

21. A twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio for
20 use in the treatment of heart failure in a patient, wherein said dose is reached after a titration with an initial twice-daily dose of at least 50 mg of sacubitril and valsartan in a 1:1 molar ratio increasing to the twice daily target dose of 200 mg for from about 2 to about 8 weeks.

22. The twice-daily target dose of claim 21 for use in the treatment of heart failure in a
25 patient, wherein said dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

30 23. The twice-daily target dose of claim 22 for use in the treatment of heart failure in a patient, wherein said dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 3 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for

NPC-VS-667-000000223

WO 2016/181284                                          PCT/IB2016/052633

about 3 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

24. The twice daily target dose of claim 21 for use in the treatment of heart failure in a patient, wherein said dose is reached after a titration of a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

25. The twice daily target dose of claim 24 for use in the treatment of heart failure in a patient, wherein said dose is reached after a titration of a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 2 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

26. The twice daily target dose of claim 22 or 23 for use in the treatment of heart failure in a patient, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient not taking an angiotensin-converting enzyme (ACE) inhibitor or an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

27. The twice daily target dose of claim 22 for use in the treatment of heart failure in a patient, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking low doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

28. The twice daily target dose of claim 27 for use in the treatment of heart failure in a patient, wherein the lower dose of an ACEI or ARB is equivalent to < 10 mg of enalapril per day.

29. The twice daily target dose of claim 21 for use in the treatment of heart failure in a patient, wherein said titration mitigates a risk selected from hypotension, hyperkalemia, and renal adverse events.

30. The twice daily target dose of claim 4 or 5 for use in the treatment of heart failure in a patient, wherein the twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking higher doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

NPC-VS-667-000000224

31. The twice daily target dose of claim 30 for use in the treatment of heart failure in a patient, wherein the higher dose of an ACEI or ARB is equivalent to ≥ 10 mg of enalapril per day.

32. The twice-daily target dose of any one of the preceding claims 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient suffers from chronic systolic heart failure with reduced ejection fraction.

33. The twice-daily target dose of any one of the preceding claims 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient is a human patient.

34. The twice-daily target dose of any one of the preceding claims 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient has at least one of the following characteristics

    i) heart failure of NYHA class II, III or IV,

    ii) an elevated plasma BNP or NT-proBNP level, preferably a plasma BNP ≥100 pg/mL (or NT-proBNP ≥400 pg/mL), more preferably a plasma BNP ≥150 pg/mL or NT-proBNP ≥600 pg/mL, and

    iii) a reduced left ventricular ejection fraction (LVEF) of ≤40%, preferably ≤35%.

35. The twice-daily target dose of any one of the preceding claims 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient suffers from chronic heart failure classified as NYHA class II, III or IV and has systolic dysfunction, preferably wherein the patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

36. The twice-daily target dose of any one of the preceding claims 21 to 31 for use in the treatment of heart failure in a patient, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696).

37. The twice-daily target dose of any one of the preceding claims 21 to 31 for use in the treatment of heart failure in a patient, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of a pharmaceutical composition comprising

    (i)    valsartan or a pharmaceutically acceptable salt thereof; and

    (ii)    sacubitril or a pharmaceutically acceptable salt thereof,

38. The twice-daily target dose of any one of the preceding claims 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient receives a base treatment with a stable dose of a beta-blocker, an aldosterone antagonists, and/ or a diuretic.

NPC-VS-667-000000225

39. The twice-daily target dose of any one of the preceding claims 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient has to stop taking the angiotensin receptor blocker (ARB) or the ACE inhibitor at least 36 hours prior to taking the medicament.

40. The twice-daily target dose of any one of the preceding claims 21 to 31 for use in the treatment of heart failure in a patient, wherein

> a) the 50 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 24 mg sacubitril and 26 mg valsartan,

> b) the 100 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 49 mg sacubitril and 51 mg valsartan, and

> c) the 200 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 97 mg sacubitril and 103 mg valsartan.

41. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient, wherein the medicament comprises a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio which is reached after a titration with an initial twice-daily dose of at least 50 mg of sacubitril and valsartan in a 1:1 molar ratio increasing to the twice daily target dose of 200 mg for from about 2 to about 8 weeks.

42. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to claim 41, wherein said target dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

43. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to claim 42, wherein said target dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 3 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 3 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

44. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to claim 41, wherein

NPC-VS-667-000000226

said target dose is reached after a titration of a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

45. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to claim 44, wherein said target dose is reached after a titration of a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 2 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

46. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to claim 42 or 43, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient not taking an angiotensin-converting enzyme (ACE) inhibitor or an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

47. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to claim 42 or 43, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking low doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

48. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to claim 47, wherein the lower dose of an ACEI or ARB is equivalent to < 10 mg of enalapril per day.

49. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to claim 41, wherein said titration mitigates a risk selected from hypotension, hyperkalemia, and renal adverse events.

50. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to claim 44 or 45, wherein the twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking higher doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

NPC-VS-667-000000227

51. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to claim 50, wherein the higher dose of an ACEI or ARB is equivalent to ≥ 10 mg of enalapril per day.

52. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding claims 41 to 51, wherein the patient suffers from chronic systolic heart failure with reduced ejection fraction.

53. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding claims 41 to 51,, wherein the patient is a human patient.

54. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding claims 41 to 51,, wherein the patient has at least one of the following characteristics

    i) heart failure of NYHA class II, III or IV,

    ii) an elevated plasma BNP or NT-proBNP level, preferably a plasma BNP ≥100 pg/mL (or NT-proBNP ≥400 pg/mL), more preferably a plasma BNP ≥150 pg/mL or NT-proBNP ≥600 pg/mL, and

    iii) a reduced left ventricular ejection fraction (LVEF) of ≤40%, preferably ≤35%.

55. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding claims 41 to 51, wherein the patient suffers from chronic heart failure classified as NYHA class II, III or IV and has systolic dysfunction, preferably wherein the patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

56. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding claims 41 to 51, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696).

57. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding claims 41 to 51, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of a pharmaceutical composition comprising

NPC-VS-667-000000228

    (i)      valsartan or a pharmaceutically acceptable salt thereof; and

    (ii)     sacubitril or a pharmaceutically acceptable salt thereof,

58. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding claims 41 to 51,, wherein the patient receives a base treatment with a stable dose of a beta-blocker, an aldosterone antagonists, and/ or a diuretic.

59. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding claims 41 to 51, wherein the patient receives base treatment with a stable dose of a beta-blocker and optionally an aldosterone antagonist.

60. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding claims 41 to 51, wherein the patient has to stop taking the angiotensin receptor blocker (ARB) or the ACE inhibitor at least 36 hours prior to taking the medicament.

61. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding claims 41 to 51, wherein

    a) the 50 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 24 mg sacubitril and 26 mg valsartan,

    b) the 100 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 49 mg sacubitril and 51 mg valsartan, and

    c) the 200 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 97 mg sacubitril and 103 mg valsartan.

NPC-VS-667-000000229

# EXHIBIT 3

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.       : 11,058,667 B2                               Page 1 of 1
APPLICATION NO.   : 15/572399
DATED           : July 13, 2021
INVENTOR(S)     : Rizkala et al.

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

On the Title Page

Item [56] REFERENCES CITED:
"WO-2014029848" should read --WO 2014/029848--.

In the Specification

Column 5:
Line 20, "3-blockers" should read --β-blockers--.

Column 15:
Line 67, "sacubitril Pharmaceutical" should read --sacubitril. ¶Pharmaceutical--.

Column 19:
Line 14, "a-blockers)" should read --α-blockers)--.

In the Claims

Column 20:
Line 46, "thereof with" should read --thereof together with--; and
Line 50, "dose 200" should read --dose of 200--.

Column 21:
Line 16, "< 10 mg" should read "≤ 10 mg--; and
Line 62, "twice daily target dose of 100 mg" should read --twice daily dose of 100 mg--.

Column 22:
Line 16, "< 10 mg" should read --≤ 10 mg--.

Signed and Sealed this
Thirty-first Day of August, 2021

Drew Hirshfeld
*Performing the Functions and Duties of the*
*Under Secretary of Commerce for Intellectual Property and*
*Director of the United States Patent and Trademark Office*

# EXHIBIT 4

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/572,399 | 11/07/2017 | Adel Remond Rizkala | PAT056901-US-PCT | 1063 |

1095        7590        08/17/2021
NOVARTIS PHARMACEUTICAL CORPORATION
INTELLECTUAL PROPERTY DEPARTMENT
700 Main Street
Cambridge, MA 02139

| EXAMINER |
|---|
| DECK, JASON A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1627 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 08/17/2021 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

novartis_pair@firsttofile.com
phip.patents@novartis.com

PTOL-90A (Rev. 04/07)

NPC-VS-667-000000888

| **Response to the Request for Certificate of Correction** | **Patent No.** 11058667 | **Applicant(s)** Rizkala et al. |
|---|---|---|
| | **Issue Date** 07/13/2021 | **Docket No.** PAT056901-US-PCT |

This is in response to the request for a Certificate of Correction filed <u>05 August 2021</u>

☑ **Request Approval- In- Part** - Consideration has been given to your request for the issuance of a Certificate of Correction under the provisions of 37 CFR 1.322 and/or 37 CFR 1.323. The Request is improper and approved in part for the reason(s) below:

☐ **Supersede/Vacate** - The Certificate of Correction issued in error, in that error(s) was made in identifying the patent number and/or keying text/corrections. See Other Comments below:

1. ☐ Assignees' names and addresses (assignment data) printed in a patent, are based solely on information supplied in the appropriate space for identifying the assignment data on the Issue Fee Transmittal Form (PTOL-85b). Any request for a patent to be corrected to state the name of the assignee, must state that the assignment was submitted for recordation as set forth in in 37 CFR 3.11 before issuance of the patent. Petition under 3.81 is to be filed for consideration of correction to assignee. The petition fee set forth in 37 CFR 1.17(i)(1) (currently $140, $70, $35 for large, small and micro entities, respectively.

2. ☐ The alleged error in _____, is in fact an Amendment and/or Change made by the examiner and considered to be in accordance with the permissible amendments enumerated in the Manual of Patent Examining Procedure (MPEP) Section 1302.04. Applicant did not file objection or amendment under 37 CFR 1.312 prior to payment of the issue fee.

3. ☐ A petition under CFR 1.182 is required to correct the alleged errors in spelling or order of inventor's names, since inventor's names are printed solely in accordance with the type-written names, and in the order of the type-written names on the Application Data Sheet (ADS). The required fee currently under rule 1.17(f) (small entity $200, large entity $400, micro entity fee $100).

4. ☐ With respect to the alleged error in changing the inventor name on the patent due to clerical error in ADS/OATH of related patents. The inventors name is printed in accordance with the OATH/ADS submitted at the time of filing the application. However, your attention is directed to C.F.R. 1.324, wherein a request is being made to change, add or delete inventor(s), after issuance of the patent.

5. ☑ With respect to the alleged error in <u>See Continuation Sheet</u>, comparison of the printed patent with the corresponding location in the application file reveals that there is no discrepancy.

6. ☐ With respect to 37 CFR 1.72, the title should be brief but technically accurate and descriptive and should contain fewer than 500 characters. Inasmuch as the words new, improved, improvement of, and improvement in are not considered as part of the title of an invention, these words should not be included at the beginning of the title of the invention and will be deleted when the Office enters the title into the Offices computer records, and when any patent issues.

7. ☐ The fee for correction under 37 CFR 1.323 is set forth in 37 CFR 1.20(a). ☐Partial fee ☐No fee was received with your request. Full fee payment is required before further action is taken on this request.

8. ☐ With respect to the request for corrected Letters Patent (Grant), corrections to the original Letters Patent are made under the provisions of Rule 1.322(b), not Rule1.323, unless a petition is granted.

9. ☑ Other Comments: _____

*Further correspondence concerning this matter should be filed and directed to the Certificates of Correction Branch.*

Legal Instrument Examiner:  <u>/VALERIE JACKSON/</u>          Phone:  <u>(571)272-3423</u>
<u>LIE, ODM</u>

Certificates of Correction Branch email:<u>CustomerServiceCoC@uspto.gov</u>     CoC Central Phone Number: (703)756-1814

*If applicable, information regarding a petition under 37 CFR 1.183 should be directed to the attention of the Commissioner for Patents using the FAX number (571) 273-8300*

NPC-VS-667-000000889

**Continuation Sheet (PTO-999)**

**Patent No.** 11058667

Continuation of 5: item (56) the word "aomparison" can not be found in the printed patent. A certificate of correction will be issued to correct the remaining errors noted in your request.

NPC-VS-667-000000890

# EXHIBIT 5

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/572,399 | 11/07/2017 | Adel Remond Rizkala | PAT056901-US-PCT | 1063 |

1095        7590        06/14/2021
NOVARTIS PHARMACEUTICAL CORPORATION
INTELLECTUAL PROPERTY DEPARTMENT
700 Main Street
Cambridge, MA 02139

| EXAMINER |
|---|
| DECK, JASON A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1627 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 06/14/2021 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

novartis_pair@firsttofile.com
phip.patents@novartis.com

PTOL-90A (Rev. 04/07)

NPC-VS-667-000000865

| ***Corrected***<br>***Notice of Allowability*** | **Application No.**<br>15/572,399 | **Applicant(s)**<br>Rizkala et al. | |
|---|---|---|---|
| | **Examiner**<br>JASON A DECK | **Art Unit**<br>1627 | **AIA (FITF) Status**<br>Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☑ This communication is responsive to 4/27/21.

   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☑ The allowed claim(s) is/are 62-63,73,75-79,83-85,87 and 89-95 . As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

   **Certified copies:**

   a) ☐ All    b) ☐ Some    *c) ☐ None of the:

   1. ☐ Certified copies of the priority documents have been received.
   2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
   3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

   * Certified copies not received: _____ .

   Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS (as "replacement sheets") must be submitted.

   ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____ .

   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)
2. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____ .
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material _____ .
4. ☐ Interview Summary (PTO-413), Paper No./Mail Date. _____ .

5. ☐ Examiner's Amendment/Comment
6. ☑ Examiner's Statement of Reasons for Allowance
7. ☐ Other _____ .

| /Jason Deck/<br>Examiner, Art Unit 1627 | /SARAH PIHONAK/<br>Primary Examiner, Art Unit 1627 |
|---|---|

NPC-VS-667-000000866

Application/Control Number: 15/572,399                                                  Page 2
Art Unit: 1627

### *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined

under the first inventor to file provisions of the AIA.

## DETAILED ACTION

### *Status of the Application*

This Office Action is in response to Applicant's arguments filed on 4/27/21.

Claim(s) 1-61, 64-72, 74, 80-82, 86, and 88 are cancelled.  Claim(s) 62, 63, 73, 75-79,

83-85, 87, and 89-95 are allowed.

The reasons for allowance are the same as in previous Office actions.

### *Conclusion*

Claim(s) 1-61, 64-72, 74, 80-82, 86, and 88 are cancelled.  Claim(s) 62, 63, 73,

75-79, 83-85, 87, and 89-95 are allowed.

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to JASON A DECK whose telephone number is (571)270-

5753.  The examiner can normally be reached on M-F 10-6.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Mark Shibuya can be reached on (571) 272-0806.  The fax phone number

for the organization where this application or proceeding is assigned is 571-273-8300.

NPC-VS-667-000000867

Application/Control Number: 15/572,399                                          Page 3
Art Unit: 1627

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system. Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov.  Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free).  If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/JASON A DECK/
Examiner, Art Unit 1627

/SARAH PIHONAK/
Primary Examiner, Art Unit 1627

# EXHIBIT 6

PAT056901-US-PCT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

IN RE APPLICATION OF

RIZKALA, Adel Remond, et al.

APPLICATION NO: 15/572,399

FILED: 07 November 2017

FOR: SACUBITRIL-VALSARTAN DOSAGE REGIMEN FOR TREATING HEART FAILURE

Art Unit: 1627

Examiner: DECK, Jason A.

Conf. No: 1063

Customer No: 1095

Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

### AMENDMENT AFTER ALLOWANCE UNDER 37 CFR §1.312

This paper is submitted after Notice of Allowance mailed on April 12, 2021, in the above-identified application.

Please amend the above-identified application as follows:

**Amendments to the Claims** begin on page **2**.

**Remarks** begin on page **8**.

NPC-VS-667-000000845

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 42561533 |
| **Application Number:** | 15572399 |
| **International Application Number:** | |
| **Confirmation Number:** | 1063 |
| **Title of Invention:** | SACUBITRIL-VALSARTAN DOSAGE REGIMEN FOR TREATING HEART FAILURE |
| **First Named Inventor/Applicant Name:** | Adel Remond Rizkala |
| **Customer Number:** | 1095 |
| **Filer:** | Meghan S Adams/Maria Johnson |
| **Filer Authorized By:** | Meghan S Adams |
| **Attorney Docket Number:** | PAT056901-US-PCT |
| **Receipt Date:** | 27-APR-2021 |
| **Filing Date:** | 07-NOV-2017 |
| **Time Stamp:** | 16:20:16 |
| **Application Type:** | U.S. National Stage under 35 USC 371 |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | PAT056901-US-PCT-312amdt.pdf | 181652  302a2e7880300ae99d104dfe2d0859a93da5c0a5 | yes | 9 |

NPC-VS-667-000000846

**Multipart Description/PDF files in .zip description**

| Document Description | Start | End |
|---|---|---|
| Applicant Arguments/Remarks Made in an Amendment | 8 | 9 |
| Claims | 2 | 7 |
| Amendment after Notice of Allowance (Rule 312) | 1 | 1 |

| | |
|---|---|
| Warnings: | |
| Information: | |
| **Total Files Size (in bytes):** | 181652 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

NPC-VS-667-000000847

PAT056901-US-PCT
U.S. Application No. 15/572,399

## REMARKS

Claims 62, 63, 66-69, 73, 75-87 and 89-95 were allowed in the Notice of Allowance mailed on April 12, 2021 and are pending in the current application.

Submitted herewith is an amendment under 37 C.F.R § 1.312. Claims 66-69, 80-82, and 86 are cancelled without prejudice or disclaimer. The dependencies of claims 75-77 and 83-85 are amended in view of the cancelled claims. Claims 62, 63, 73, 75-79, 83-85, 87, and 89-95 are amended to provide further clarification and to improve their form. For example, throughout the claims, "patient" is replaced with "<u>human</u> patient" and "heart failure" is replaced with "<u>chronic</u> heart failure", as was recited in, *e.g.*, cancelled claims 66, 67, 80, and 81. Claims 62, 78, 89, and 91 are amended to include the phrase "or the pharmaceutically acceptable salt thereof" as appropriate after recitations of sacubitril and valsartan. Claim 62 is further amended to correct an obvious typographical error. Claim 63 is further amended to specify that the "twice daily dose" is the "twice daily <u>target</u> dose" of claim 62 from which claim 63 depends. Claims 73, 87, 89, and 91 are amended to replace "angiotensin-converting enzyme (ACE)" and/or "angiotensin II receptor blocker (ARB)" with "ACE inhibitor" and "ARB inhibitor", respectively, for consistency with the use of these terms in other dependent claims. Claims 73 and 87 are amended to replace the phrase "prior to taking the medication" with "before initiating the treatment with sacubitril or the pharmaceutically acceptable salt thereof and valsartan or the pharmaceutically acceptable salt thereof" to improve consistency with the language of the independent claims from which claims 73 and 87 depend. Support for these amendments can be found throughout the originally-filed claims and specification.

Upon entry of the amendments, claims 62, 63, 73, 75-79, 83-85, 87, and 89-95 will be pending in this application. No new matter is believed to be introduced. Applicant submits that the claims as amended herewith do not require an additional search or examination and respectfully requests entry of the instant amendments.

If there are any questions regarding these amendments and remarks, the Examiner is encouraged to contact the undersigned.

NPC-VS-667-000000848

PAT056901-US-PCT
U.S. Application No. 15/572,399

No fee is believed to be due with this filing. However, the Commissioner is authorized to charge any fees that may be due in connection with this filing, or credit any overpayment of same, to Deposit Account No. 50-4409, Reference No.: PAT056901-US-PCT.

Dated:  April 27, 2021                                        Respectfully submitted,


Electronic signature:  /Meghan S. Adams/
Meghan S. Adams
Reg. No. 75,685
Attorney for Applicant
Novartis Institutes for Biomedical
    Research, Inc.
700 Main Street
Cambridge, MA 02139
+16179096873

9

NPC-VS-667-000000849

PAT056901-US-PCT
U.S. Application No. 15/572,399

## AMENDMENTS TO THE CLAIMS

This listing of claims will replace all prior versions of the claims and listing of the claims in the application:

**Listing of Claims:**

1-61.   (Cancelled)

62.   (Currently Amended) A regimen for treating <u>chronic</u> heart failure with reduced ejection fraction, which comprises administering to a <u>human</u> patient in need thereof a twice-daily target dose of 200 mg of sacubitril or a pharmaceutically acceptable salt thereof together with valsartan or a pharmaceutically acceptable salt thereof, which are provided to the <u>human</u> patient in a 1:1 molar ratio, wherein the twice daily target dose of 200 mg corresponds to 97 mg of sacubitril and 103 mg of valsartan[[)]];

wherein the twice daily target dose of 200 mg is reached after a titration with a twice daily starting dose of 50 mg of sacubitril or the pharmaceutically acceptable salt thereof together with valsartan or the pharmaceutically acceptable salt thereof, which are provided to the <u>human</u> patient in a 1:1 molar ratio, for from about 3 weeks to about 4 weeks, wherein the twice daily starting dose of 50 mg corresponds to 24 mg of sacubitril and 26 mg of valsartan, followed by a twice daily dose of 100 mg of sacubitril or the pharmaceutically acceptable salt thereof together with valsartan or the pharmaceutically acceptable salt thereof, which are provided to the <u>human</u> patient in a 1:1 molar ratio, for from about 3 weeks to about 4 weeks, wherein the twice daily dose of 100 mg corresponds to 49 mg of sacubitril and 51 mg of valsartan, followed by the twice daily target dose of 200 mg thereafter; and

wherein:

(i) the twice daily starting dose of 50 mg is for use in a <u>human</u> patient neither taking an angiotensin-converting enzyme (ACE) inhibitor nor taking an angiotensin II receptor blocker (ARB) before initiating <s>the</s> treatment with sacubitril <u>or the pharmaceutically acceptable salt thereof</u> and valsartan <u>or the pharmaceutically acceptable salt thereof</u>, or

(ii) the twice daily starting dose of 50 mg is for use in a <u>human</u> patient taking a low dose of an angiotensin-converting enzyme (ACE) inhibitor or a low dose of an angiotensin II

2

NPC-VS-667-000000850

PAT056901-US-PCT
U.S. Application No. 15/572,399

receptor blocker (ARB) before initiating ~~the~~ treatment with sacubitril <u>or the pharmaceutically acceptable salt thereof</u> and valsartan <u>or the pharmaceutically acceptable salt thereof</u>, wherein the low dose of the ACE inhibitor or <u>the low dose of the ARB</u> is equivalent to a dose of ≤ 10 mg of enalapril per day.

63.     (Currently Amended) The regimen for treating <u>chronic</u> heart failure according to claim 62, wherein the twice daily <u>target</u> dose of 200 mg is reached after the titration with the twice daily starting dose of 50 mg for about 3 weeks, followed by the twice daily dose of 100 mg for about 3 weeks, followed by the twice daily target dose of 200 mg thereafter.

64-72.  (Cancelled)

73.     (Currently Amended) The regimen for treating <u>chronic</u> heart failure according to claim 62, wherein the <u>human</u> patient has to stop taking the ~~angiotensin receptor blocker (ARB)~~ <u>ARB</u> or the ACE inhibitor at least 36 hours <u>before initiating the treatment with sacubitril or the pharmaceutically acceptable salt thereof and valsartan or the pharmaceutically acceptable salt thereof</u>~~prior to taking the medicament~~.

74.     (Cancelled)

75.     (Currently Amended) The regimen for treating <u>chronic</u> heart failure according to claim [[68]] <u>62</u>, wherein the <u>human</u> patient has an elevated plasma BNP of ≥100 pg/mL or NT-proBNP of ≥400 pg/mL.

76.     (Currently Amended) The regimen for treating <u>chronic</u> heart failure according to claim [[68]] <u>62</u>, wherein the <u>human</u> patient has an elevated plasma BNP of ≥150 pg/mL or NT-proBNP of ≥600 pg/mL.

77.     (Currently Amended) The regimen for treating <u>chronic</u> heart failure according to claim [[68]] <u>62</u>, wherein the <u>human</u> patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

3

PAT056901-US-PCT
U.S. Application No. 15/572,399

78.    (Currently Amended)  A regimen for treating <u>chronic</u> heart failure with reduced ejection fraction, which comprises administering to a <u>human</u> patient in need thereof a twice-daily target dose of 200 mg of sacubitril or a pharmaceutically acceptable salt thereof together with valsartan or a pharmaceutically acceptable salt thereof, which are provided to the <u>human</u> patient in a 1:1 molar ratio, wherein the twice daily target dose of 200 mg corresponds to 97 mg of sacubitril and 103 mg of valsartan;

wherein the twice daily target dose of 200 mg is reached after a titration with a twice daily starting dose of 50 mg of sacubitril or the pharmaceutically acceptable salt thereof together with valsartan or the pharmaceutically acceptable salt thereof, which are provided to the <u>human</u> patient in a 1:1 molar ratio, for from about 2 weeks to about 4 weeks, wherein the twice daily starting dose of 50 mg corresponds to 24 mg of sacubitril and 26 mg of valsartan, followed by a twice daily dose of 100 mg of sacubitril or the pharmaceutically acceptable salt thereof together with valsartan or the pharmaceutically acceptable salt thereof, which are provided to the <u>human</u> patient in a 1:1 molar ratio, for from about 2 weeks to about 4 weeks, wherein the twice daily dose of 100 mg corresponds to 49 mg of sacubitril and 51 mg of valsartan, followed by the twice daily target dose of 200 mg thereafter, and wherein said titration to the target dose occurs over a period of at least about 6 weeks; and

wherein:

(i) the twice daily starting dose of 50 mg is for use in a <u>human</u> patient neither taking an angiotensin-converting enzyme (ACE) inhibitor nor taking an angiotensin II receptor blocker (ARB) before initiating ~~the~~ treatment with sacubitril <u>or the pharmaceutically acceptable salt thereof</u> and valsartan <u>or the pharmaceutically acceptable salt thereof</u>, or

(ii) the twice daily starting dose of 50 mg is for use in a <u>human</u> patient taking a low dose of an angiotensin-converting enzyme (ACE) inhibitor or a low dose of an angiotensin II receptor blocker (ARB) before initiating ~~the~~ treatment with sacubitril <u>or the pharmaceutically acceptable salt thereof</u> and valsartan <u>or the pharmaceutically acceptable salt thereof</u>, wherein the low dose of the ACE inhibitor or <u>the low dose of the ARB</u> is equivalent to a dose of ≤ 10 mg of enalapril per day.

NPC-VS-667-000000852

79.    (Currently Amended) The regimen for treating <u>chronic</u> heart failure according to claim 78, wherein the twice daily target dose is reached after <u>the</u> [[a]] titration with the twice daily starting dose of 50 mg for about 3 weeks, followed by the twice daily dose of 100 mg for about 3 weeks, followed by the twice daily target dose of 200 mg thereafter.

80-82. (Cancelled)

83.    (Currently Amended) The regimen for treating <u>chronic</u> heart failure according to claim [[82]] <u>78</u>, wherein the <u>human</u> patient has an elevated plasma BNP of ≥100 pg/mL or NT-proBNP of ≥400 pg/mL.

84.    (Currently Amended) The regimen for treating <u>chronic</u> heart failure according to claim [[82]] <u>78</u>, wherein the <u>human</u> patient has an elevated plasma BNP of ≥150 pg/mL or NT-proBNP of ≥600 pg/mL.

85.    (Currently Amended) The regimen for treating <u>chronic</u> heart failure according to claim [[82]] <u>78</u>, wherein the <u>human</u> patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

86.    (Cancelled)

87.    (Currently Amended) The regimen for treating <u>chronic</u> heart failure according to claim 78, wherein the <u>human</u> patient has to stop taking the ~~angiotensin receptor blocker (ARB)~~ <u>ARB</u> or the ACE inhibitor at least 36 hours <u>before initiating the treatment with sacubitril or the pharmaceutically acceptable salt thereof and valsartan or the pharmaceutically acceptable salt thereof</u>~~prior to taking the medicament~~.

88.    (Cancelled)

89.    (Currently Amended) The regimen for treating <u>chronic</u> heart failure according to claim 62, wherein the twice daily starting dose of 50 mg is for use in the <u>human</u> patient taking the low

5

PAT056901-US-PCT
U.S. Application No. 15/572,399

dose of the ~~angiotensin-converting enzyme (ACE)~~ ACE inhibitor or the low dose of ~~an angiotensin II receptor blocker (ARB)~~ the ARB before initiating the treatment with sacubitril or the pharmaceutically acceptable salt thereof and valsartan or the pharmaceutically acceptable salt thereof~~, and wherein the patient is a human patient~~.

90.    (Currently Amended) The regimen for treating chronic heart failure according to claim 89, wherein the low dose of the ACE inhibitor or the low dose of the ARB is equivalent to the dose of < 10 mg of enalapril per day.

91.    (Currently Amended) The regimen for treating chronic heart failure according to claim 78, wherein the twice daily starting dose of 50 mg is for use in the human patient taking the low dose of the ~~angiotensin-converting enzyme (ACE)~~ ACE inhibitor or the low dose of ~~an angiotensin II receptor blocker (ARB)~~ the ARB before initiating the treatment with sacubitril or the pharmaceutically acceptable salt thereof and valsartan or the pharmaceutically acceptable salt thereof~~, and wherein the patient is a human patient~~.

92.    (Currently Amended) The regimen for treating chronic heart failure according to claim 91, wherein the low dose of the ACE inhibitor or the low dose of the ARB is equivalent to the dose of < 10 mg of enalapril per day.

93.    (Currently Amended) The regimen for treating chronic heart failure according to claim 78, wherein a first week of the at least about 6 weeks is 5±2 days.

94.    (Currently Amended) The regimen for treating chronic heart failure according to claim 62, wherein sacubitril or the pharmaceutically acceptable salt thereof together with valsartan or the pharmaceutically acceptable salt thereof are provided to the human patient in a 1:1 molar ratio by administering to the human patient a compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696).

6

NPC-VS-667-000000854

95.     (Currently Amended) The regimen for treating <u>chronic</u> heart failure according to claim 78, wherein sacubitril or the pharmaceutically acceptable salt thereof together with valsartan or the pharmaceutically acceptable salt thereof are provided to the <u>human</u> patient in a 1:1 molar ratio by administering to the <u>human</u> patient a compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696).

NPC-VS-667-000000855

# EXHIBIT 7

# UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address:  COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/572,399 | 11/07/2017 | Adel Remond Rizkala | PAT056901-US-PCT | 1063 |

1095          7590          09/28/2020
NOVARTIS PHARMACEUTICAL CORPORATION
INTELLECTUAL PROPERTY DEPARTMENT
ONE HEALTH PLAZA 433/2
EAST HANOVER, NJ 07936-1080

| EXAMINER |
|---|
| DECK, JASON A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1627 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 09/28/2020 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

phip.patents@novartis.com

PTOL-90A (Rev. 04/07)

NPC-VS-667-000000782

| *Corrected*<br>*Notice of Allowability* | Application No.<br>15/572,399 | Applicant(s)<br>Rizkala et al. | |
|---|---|---|---|
| | Examiner<br>JASON A DECK | Art Unit<br>1627 | AIA (FITF) Status<br>Yes |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☑ This communication is responsive to <u>9/11/20</u>.

   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☑ The allowed claim(s) is/are <u>See Continuation Sheet</u>. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see **http://www.uspto.gov/patents/init_events/pph/index.jsp** or send an inquiry to **PPHfeedback@uspto.gov**.

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

   **Certified copies:**

   a) ☐ All     b) ☐ Some     *c) ☐ None of the:

   1. ☐ Certified copies of the priority documents have been received.

   2. ☐ Certified copies of the priority documents have been received in Application No. _____.

   3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

   * Certified copies not received: _____.

   Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS (as "replacement sheets") must be submitted.

   ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.

   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)
2. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____.
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material _____.
4. ☐ Interview Summary (PTO-413), Paper No./Mail Date. _____.
5. ☐ Examiner's Amendment/Comment
6. ☑ Examiner's Statement of Reasons for Allowance
7. ☑ Other <u>PTO-271</u>.

| /Jason Deck/<br>Examiner, Art Unit 1627 | /SARAH PIHONAK/<br>Primary Examiner, Art Unit 1627 |
|---|---|

NPC-VS-667-000000783

Continuation of 3. The allowed claim(s) is/are: 62-63,66-69,73,75-87 and 89-95

NPC-VS-667-000000784

Application/Control Number: 15/572,399                                          Page 2
Art Unit: 1627

### Notice of Pre-AIA or AIA Status

The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

## DETAILED ACTION

### Status of the Application

This Office Action is in response to Applicant's arguments filed on 9/11/20. Claim(s) 1-61, 64, 65, 70-72, 74, and 88 are cancelled.  Claim(s) 89-95 are new. Claim(s) 62, 63, 66-69, 73, 75-87, and 89-95 are pending.

The amendment filed on 9/11/20 under 37 CFR 1.312 has been entered.  The amendment clarifies the claims, adds narrower dependencies that are proper, and only minimally expands the scope of the claims.

The reasons for allowance are the same as in the prior Office action.

### Conclusion

Claim(s) 1-61, 64, 65, 70-72, 74, and 88 are cancelled.  Claim(s) 62, 63, 66-69, 73, 75-87, and 89-95 are allowed.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to JASON A DECK whose telephone number is (571)270-5753.  The examiner can normally be reached on M-F 10-6.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, SREENIVASAN (PADDY) PADMANABHAN can be reached on (571)272-

Application/Control Number: 15/572,399                                              Page 3
Art Unit: 1627

0629.  The fax phone number for the organization where this application or proceeding

is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov.  Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free).  If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/JASON A DECK/
Examiner, Art Unit 1627

/SARAH PIHONAK/
Primary Examiner, Art Unit 1627

NPC-VS-667-000000786

# EXHIBIT 8

Docket No.: PAT056901-US-PCT
(PATENT)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of:
Adel Remond RIZKALA

Application No.: 15/572,399        Confirmation No.: 1063

Filed:  November 7, 2017        Art Unit: 1627

For:  SACUBITRIL-VALSARTAN DOSAGE     Examiner: Jason A. Deck
      REGIMEN FOR TREATING HEART FAILURE

*VIA EFS*
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## STATEMENT OF THE SUBSTANCE OF THE APPLICANT-INITIATED INTERVIEW

This communication is submitted in response to the Examiner's Summary of the Applicant-Initiated Interview ("Interview Summary") mailed on September 16, 2020. Without extension, this response is due on or before October 16, 2020. Applicant believes no fee is due. However, the Commissioner is hereby authorized to charge any additional fees that may be due or credit any overpayment of same to Deposit Account No. 50-4409, Attorney Reference No. PAT056901-US-PCT.

Applicant would like to thank Examiner Jason Deck ("Examiner") for the Applicant-Initiated interview on September 11, 2020. Examiner and Applicant's Representative Judith D. Kuntz ("Applicant's Representative") discussed potential amendments to the allowed claims for the above-referenced application to be submitted via a 37 C.F.R. 1.312 amendment based on the draft that was provided to the Examiner before the interview and is appended to the aforementioned Interview Summary. During the interview, Applicant's Representative explained that the proposed amendments were intended to clarify the claims but since they were fairly extensive it was easiest to discuss with the Examiner prior to submission. Applicant's Representative did not mention that the proposed amendments would be "without broadening the claims". The Examiner stated that he had briefly perused the proposed claim amendments and commented that while they would require in depth analysis when ultimately submitted, the claim amendments appeared to be fine and would likely be entered.

NPC-VS-667-000000752

Application No.: 15/572,399                 2                 Docket No.: PAT056901-US-PCT

Should any questions or issues arise concerning this application, the Examiner is encouraged to contact the undersigned at the telephone number provided below.

Dated: September 22, 2020                     Respectfully submitted,

Electronic signature: /Judith D. Kuntz/
Judith D. Kuntz, J.D., Ph.D.
Registration No.: 71,649

Novartis Institutes for Biomedical Research, Inc.
700 Main Street
Cambridge, Massachusetts  02139
(617) 871-8034
Attorney For Applicant

NPC-VS-667-000000753

# EXHIBIT 9

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/572,399 | 11/07/2017 | Adel Remond Rizkala | PAT056901-US-PCT | 1063 |

1095        7590        09/16/2020
NOVARTIS PHARMACEUTICAL CORPORATION
INTELLECTUAL PROPERTY DEPARTMENT
ONE HEALTH PLAZA 433/2
EAST HANOVER, NJ 07936-1080

| EXAMINER |
|---|
| DECK, JASON A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1627 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 09/16/2020 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

phip.patents@novartis.com

PTOL-90A (Rev. 04/07)

NPC-VS-667-000000635

| *Applicant-Initiated Interview Summary* | Application No. 15/572,399 | Applicant(s) Rizkala et al. | | |
|---|---|---|---|---|
| | Examiner JASON A DECK | Art Unit 1627 | AIA (First Inventor to File) Status Yes | Page **1 of** 2 |

All participants (applicant, applicants representative, PTO personnel):

1. JASON A DECK (Examiner); Telephonic          2. Judith D. Kuntz (Attorney); Telephonic

**Date of Interview:** <u>11 September 2020</u>

**Claims Discussed:**  Judith Kuntz wanted to discuss potential amendments to the claims.

**Amendment proposed:**  Judith Kuntz wanted to discuss potential amendments to the claims.

---

### Issues Discussed:

**Proposed Amendments:**
Judith Kuntz wanted to discuss potential amendments to the claims to be submitted via 1.312 amendment.

The amendments were intended to clarify the claims and claimed scope without broadening the claims, but were fairly extensive. Because of this, Judy Kuntz wanted to discuss them prior to submission.

Jason Deck briefly perused the claims and commented that, while they would require in depth analysis when ultimately submitted, they appeared to be fine and would likely be entered.

**Attachment(s):**  Proposed Amendments,

NPC-VS-667-000000636

| /Jason Deck/<br>Examiner, Art Unit 1627 | |

**Applicant is reminded that a complete written statement as to the substance of the interview must be made of record in the application file. It is the applicants responsibility to provide the written statement, unless the interview was initiated by the Examiner and the Examiner has indicated that a written summary will be provided. See MPEP 713.04**
Please further see:
MPEP 713.04
Title 37 Code of Federal Regulations (CFR) § 1.133 Interviews, paragraph (b)
37 CFR § 1.2 Business to be transacted in writing

U.S. Patent and Trademark Office
PTOL-413/413b (Rev. 01/01/2015)                    **Interview Summary**                    Paper No. 20200911

**Applicant recordation instructions:** The formal written reply to the last Office action must include the substance of the interview. (See MPEP section 713.04). If a reply to the last Office action has already been filed, applicant is given a non-extendable period of the longer of one month or thirty days from this interview date, or the mailing date of this interview summary form, whichever is later, to file a statement of the substance of the interview.

**Examiner recordation instructions:** Examiners must summarize the substance of any interview of record. A complete and proper recordation of the substance of an interview should include the items listed in MPEP 713.04 for complete and proper recordation including the identification of the general thrust of each argument or issue discussed, a general indication of any other pertinent matters discussed regarding patentability and the general results or outcome of the interview, to include an indication as to whether or not agreement was reached on the issues raised.

NPC-VS-667-000000637

# EXHIBIT 10

Docket No.: PAT056901-US-PCT
(PATENT)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of:
Adel Remond RIZKALA

Application No.: 15/572,399                    Confirmation No.: 1063

Filed: November 7, 2017                        Art Unit: 1627

For: SACUBITRIL-VALSARTAN DOSAGE            Examiner: Jason A. Deck
     REGIMEN FOR TREATING HEART FAILURE

**VIA EFS**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## AMENDMENT UNDER 37 C.F.R § 1.312

This paper is submitted in response to the Notice of Allowance mailed on June 22, 2020, in the above-identified application. Applicant submits the following amendments and remarks in connection with the above-identified application.

Applicant believes that no fee is due. However, the Commissioner is authorized to charge any fees that may be due in connection with this filing, or credit any overpayment of same, to Deposit Account No. 50-4409, Reference No.: PAT056901-US-PCT.

Please amend the above-identified application as follows:

**Amendments to the Claims** begin on page 2 of this document.
**Remarks/Arguments** begin on page 9 of this document.

NPC-VS-667-000000626

Application No.: 15/572,399                2                Docket No.: PAT056901-US-PCT

## AMENDMENTS TO THE CLAIMS

This listing of claims will replace all prior versions of the claims and listing of the claims in the application:

**Listing of Claims:**

1-61.    (Cancelled)


62.    (Currently Amended) A regimen for treating heart failure with reduced ejection fraction, which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril <u>or a pharmaceutically acceptable salt thereof together with</u> ~~and~~ valsartan <u>or a pharmaceutically acceptable salt thereof, which are provided to the patient</u> in a 1:1 molar ratio, wherein <u>the twice daily target dose of 200 mg corresponds to 97 mg of</u> sacubitril and <u>103 mg of</u> valsartan ~~in a 1:1 molar ratio are delivered in the form of the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696)~~;

wherein <u>the twice daily</u> ~~said~~ target dose <u>of 200 mg</u> is reached after a titration with a twice daily starting dose of 50 mg of sacubitril <u>or the pharmaceutically acceptable salt thereof</u> ~~and~~ <u>together with</u> valsartan <u>or the pharmaceutically acceptable salt thereof, which are provided to the patient</u> in a 1:1 molar ratio<u>,</u> for from about 3 weeks to about 4 weeks, <u>wherein the twice daily starting dose of 50 mg corresponds to 24 mg of sacubitril and 26 mg of valsartan,</u> followed by a twice daily dose of 100 mg of sacubitril <u>or the pharmaceutically acceptable salt thereof</u> ~~and~~ <u>together with</u> valsartan <u>or the pharmaceutically acceptable salt thereof, which are provided to the patient</u> in a 1:1 molar ratio<u>,</u> for from about 3 weeks to about 4 weeks<u>, wherein the twice daily dose of 100 mg corresponds to 49 mg of sacubitril and 51 mg of valsartan,</u> followed by the twice daily target dose of 200 mg ~~of sacubitril and valsartan in a 1:1 molar ratio~~ thereafter; and

wherein:

(i) the twice daily starting dose of 50 mg ~~of sacubitril and valsartan in a 1:1 molar ratio~~ is for use in a patient neither taking an angiotensin-converting enzyme (ACE) inhibitor nor taking an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan, or

(ii) the twice daily starting dose of 50 mg ~~of sacubitril and valsartan in a 1:1 molar ratio~~ is for use in a patient taking a low dose of an angiotensin-converting enzyme (ACE) inhibitor or a low dose of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan, wherein the low dose of the ACE inhibitor or ARB is equivalent to a dose of $\leq$[[<]] 10 mg of enalapril per day.

63.     (Currently Amended) The regimen for treating heart failure according to claim 62, wherein the twice daily ~~said~~ dose of 200 mg is reached after the ~~a~~ titration with the ~~a~~ twice daily starting dose of 50 mg ~~of  sacubitril and valsartan in a 1:1 molar ratio~~ for about 3 weeks, followed by ~~a~~ the twice daily dose of 100 mg ~~of sacubitril and valsartan in a 1:1 molar ratio~~ for about 3 weeks, followed by the twice daily target dose of 200 mg ~~of sacubitril and valsartan in a 1:1 molar ratio~~ thereafter.

64-65.  (Cancelled)

66.     (Previously Presented) The regimen for treating heart failure according to claim 62, wherein the patient suffers from chronic systolic heart failure with reduced ejection fraction.

67.     (Previously Presented) The regimen for treating heart failure according to claim 62, wherein the patient is a human patient.

68.     (Previously Presented) The regimen for treating heart failure according to claim 62, wherein the patient has at least one of:

Application No.: 15/572,399                4                Docket No.: PAT056901-US-PCT

      i)        heart failure of NYHA class II, III or IV,

      ii)       an elevated plasma BNP or NT-proBNP level, and

      iii)     a reduced left ventricular ejection fraction (LVEF) of $\leq$40%.

69.     (Previously Presented) The regimen for treating heart failure according to claim 62, wherein the patient suffers from chronic heart failure classified as NYHA class II, III or IV and has systolic dysfunction.

70-72. (Cancelled)

73.     (Previously Presented) The regimen for treating heart failure according to claim 62, wherein the patient has to stop taking the angiotensin receptor blocker (ARB) or the ACE inhibitor at least 36 hours prior to taking the medicament.

74.     (Cancelled)

75.     (Previously Presented) The regimen for treating heart failure according to claim 68, wherein the patient has an elevated plasma BNP of $\geq$100 pg/mL or NT-proBNP of $\geq$400 pg/mL.

76.     (Previously Presented) The regimen for treating heart failure according to claim 68, wherein the patient has an elevated plasma BNP of $\geq$150 pg/mL or NT-proBNP of $\geq$600 pg/mL.

77.     (Previously Presented) The regimen for treating heart failure according to claim 68, wherein the patient has a reduced left ventricular ejection fraction (LVEF) of $\leq$35%.

NPC-VS-667-000000629

Application No.: 15/572,399                5                Docket No.: PAT056901-US-PCT

78.      (Currently Amended)  A regimen for treating heart failure with reduced ejection fraction, which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril <u>or a pharmaceutically acceptable salt thereof together with</u> ~~and~~ valsartan <u>or a pharmaceutically acceptable salt thereof, which are provided to the patient</u> in a 1:1 molar ratio, wherein <u>the twice daily target dose of 200 mg corresponds to 97 mg of</u> sacubitril and <u>103 mg of</u> valsartan ~~in a 1:1 molar ratio are delivered in the form of the compound trisodium [3 ((1S,3R) 1 biphenyl 4 ylmethyl 3 ethoxycarbonyl 1 butylcarbamoyl)propionate (S) 3' methyl 2' (pentanoyl{2'' (tetrazol 5 ylate)biphenyl 4' ylmethyl}amino)butyrate] hemipentahydrate (LCZ696)~~;

wherein <u>the twice daily</u> ~~said~~ target dose <u>of 200 mg</u> is reached after a titration with a twice daily starting dose of 50 mg of sacubitril <u>or the pharmaceutically acceptable salt thereof together with</u> ~~and~~ valsartan <u>or the pharmaceutically acceptable salt thereof, which are provided to the patient</u> in a 1:1 molar ratio<u>,</u> for from about 2 weeks to about 4 weeks, <u>wherein the twice daily starting dose of 50 mg corresponds to 24 mg of sacubitril and 26 mg of valsartan,</u> followed by a twice daily dose of 100 mg of sacubitril <u>or the pharmaceutically acceptable salt thereof together with</u> ~~and~~ valsartan <u>or the pharmaceutically acceptable salt thereof, which are provided to the patient</u> in a 1:1 molar ratio<u>,</u> for from about 2 weeks to about 4 weeks, <u>wherein the twice daily dose of 100 mg corresponds to 49 mg of sacubitril and 51 mg of valsartan,</u> followed by the twice daily target dose of 200 mg ~~of sacubitril and valsartan in a 1:1 molar ratio~~ thereafter, <u>and</u> wherein said titration to the target dose occurs over a period of at least <u>about</u> 6 weeks; and

wherein:

(i) the twice daily starting dose of 50 mg ~~of sacubitril and valsartan in a 1:1 molar ratio~~ is for use in a patient neither taking an angiotensin-converting enzyme (ACE) inhibitor nor taking an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan, or

(ii) the twice daily starting dose of 50 mg ~~of sacubitril and valsartan in a 1:1 molar ratio~~ is for use in a patient taking a low dose of an angiotensin-converting enzyme (ACE) inhibitor or a low

NPC-VS-667-000000630

Application No.: 15/572,399                6                Docket No.: PAT056901-US-PCT

dose of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan, wherein the low dose of the ACE inhibitor or ARB is equivalent to a dose of ≤[[<]] 10 mg of enalapril per day.

79.    (Currently Amended) The regimen for treating heart failure according to claim 78, wherein the twice daily target said dose is reached after a titration with the a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for about 3 weeks, followed by the a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 3 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

80.    (Previously Presented) The regimen for treating heart failure according to claim 78, wherein the patient suffers from chronic systolic heart failure with reduced ejection fraction.

81.    (Previously Presented) The regimen for treating heart failure according to claim 78, wherein the patient is a human patient.

82.    (Previously Presented) The regimen for treating heart failure according to claim 78, wherein the patient has at least one of:

     i)          heart failure of NYHA class II, III or IV,

     ii)         an elevated plasma BNP or NT-proBNP level, and

     iii)        a reduced left ventricular ejection fraction (LVEF) of ≤40%.

83.    (Previously Presented) The regimen for treating heart failure according to claim 82, wherein the patient has an elevated plasma BNP of ≥100 pg/mL or NT-proBNP of ≥400 pg/mL.

NPC-VS-VS-667-000000631

Application No.: 15/572,399                7                Docket No.: PAT056901-US-PCT

84.     (Previously Presented) The regimen for treating heart failure according to claim 82, wherein the patient has an elevated plasma BNP of ≥150 pg/mL or NT-proBNP of ≥600 pg/mL.

85.     (Previously Presented) The regimen for treating heart failure according to claim 82, wherein the patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

86.     (Previously Presented) The regimen for treating heart failure according to claim 78, wherein the patient suffers from chronic heart failure classified as NYHA class II, III or IV and has systolic dysfunction.

87.     (Previously Presented) The regimen for treating heart failure according to claim 78, wherein the patient has to stop taking the angiotensin receptor blocker (ARB) or the ACE inhibitor at least 36 hours prior to taking the medicament.

88.     (Cancelled)

89.     (New) The regimen for treating heart failure according to claim 62, wherein the twice daily starting dose of 50 mg is for use in the patient taking the low dose of the angiotensin-converting enzyme (ACE) inhibitor or the low dose of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan, and wherein the patient is a human patient.

90.     (New) The regimen for treating heart failure according to claim 89, wherein the low dose of the ACE inhibitor or ARB is equivalent to the dose of < 10 mg of enalapril per day.

91.     (New) The regimen for treating heart failure according to claim 78, wherein the twice daily starting dose of 50 mg is for use in the patient taking the low dose of the angiotensin-converting enzyme

NPC-VS-667-000000632

Application No.: 15/572,399                8                Docket No.: PAT056901-US-PCT

(ACE) inhibitor or the low dose of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan, and wherein the patient is a human patient.

92.      (New) The regimen for treating heart failure according to claim 91, wherein the low dose of the ACE inhibitor or ARB is equivalent to the dose of < 10 mg of enalapril per day.

93.      (New) The regimen for treating heart failure according to claim 78, wherein a first week of the at least about 6 weeks is 5±2 days.

94.      (New) The regimen for treating heart failure according to claim 62, wherein sacubitril or the pharmaceutically acceptable salt thereof together with valsartan or the pharmaceutically acceptable salt thereof are provided to the patient in a 1:1 molar ratio by administering to the patient a compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696).

95.      (New) The regimen for treating heart failure according to claim 78, wherein sacubitril or the pharmaceutically acceptable salt thereof together with valsartan or the pharmaceutically acceptable salt thereof are provided to the patient in a 1:1 molar ratio by administering to the patient a compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696).

Application No.: 15/572,399              9              Docket No.: PAT056901-US-PCT

## REMARKS

Claims 62, 63, 66-69, and 73-88 were allowed in the Notice of Allowance mailed on June 22, 2020 ("NOA") and are thus pending in the current application.

Applicant herewith submits an amendment under 37 C.F.R § 1.312 to amend the allowed claims 62, 63, 78, and 79 for further clarification, and/or to improve their form.

Upon entry of the amendments presented herein, claims 62, 63, 66-69, 73, 75-87, and 89-95 are pending. Claims 74 and 88 are cancelled herein and new claims 89-95 are added. Claims 1-61, 64, 65, and 70-72 were previously cancelled. Support for the new claims and amendments can may be found throughout the specification as filed.  No new matter is added.  Applicant submits that as amended the claims do not require an additional search or examination and respectfully requests reconsideration and entry of this amendment.

On the basis of the foregoing amendments and remarks, Applicant respectfully submits that the pending claims are in condition for allowance.  Such action is respectfully requested.  If there are any questions regarding these amendments and remarks, the Examiner is encouraged to contact the undersigned at the telephone number provided.

Dated:  September 11, 2020          Respectfully submitted,


Electronic signature:  /Judith D. Kuntz/
Judith D. Kuntz, J.D., Ph.D.
Registration No.: 71,649

Novartis Institutes for Biomedical Research, Inc.
700 Main Street
Cambridge, Massachusetts  02139
(617) 871-8034
Attorney For Applicant

NPC-VS-667-000000634

# EXHIBIT 11

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

1095        7590        06/22/2020

NOVARTIS PHARMACEUTICAL CORPORATION
INTELLECTUAL PROPERTY DEPARTMENT
ONE HEALTH PLAZA 433/2
EAST HANOVER, NJ 07936-1080

| EXAMINER |
| --- |
| DECK, JASON A |

| ART UNIT | PAPER NUMBER |
| --- | --- |
| 1627 | |

DATE MAILED: 06/22/2020

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
| --- | --- | --- | --- | --- |
| 15/572,399 | 11/07/2017 | Adel Remond Rizkala | PAT056901-US-PCT | 1063 |

TITLE OF INVENTION: SACUBITRIL-VALSARTAN DOSAGE REGIMEN FOR TREATING HEART FAILURE

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
| --- | --- | --- | --- | --- | --- | --- |
| nonprovisional | UNDISCOUNTED | $1000 | $0.00 | $0.00 | $1000 | 09/22/2020 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN <u>THREE MONTHS</u> FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. <u>THIS STATUTORY PERIOD CANNOT BE EXTENDED.</u> SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Maintenance fees are due in utility patents issuing on applications filed on or after Dec. 12, 1980. It is patentee's responsibility to ensure timely payment of maintenance fees when due. More information is available at www.uspto.gov/PatentMaintenanceFees.**

Page 1 of 3

PTOL-85 (Rev. 02/11)

NPC-VS-667-000000500

**PART B - FEE(S) TRANSMITTAL**

Complete and send this form, together with applicable fee(s), by mail or fax, or via EFS-Web.

| By mail, send to: | Mail Stop ISSUE FEE<br>Commissioner for Patents<br>P.O. Box 1450<br>Alexandria, Virginia 22313-1450 | By fax, send to: | (571)-273-2885 |

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

| 1095 | 7590 | 06/22/2020 |

NOVARTIS PHARMACEUTICAL CORPORATION
INTELLECTUAL PROPERTY DEPARTMENT
ONE HEALTH PLAZA 433/2
EAST HANOVER, NJ 07936-1080

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**

I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being transmitted to the USPTO via EFS-Web or by facsimile to (571) 273-2885, on the date below.

_____ (Typed or printed name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/572,399 | 11/07/2017 | Adel Remond Rizkala | PAT056901-US-PCT | 1063 |

TITLE OF INVENTION: SACUBITRIL-VALSARTAN DOSAGE REGIMEN FOR TREATING HEART FAILURE

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $1000 | $0.00 | $0.00 | $1000 | 09/22/2020 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| DECK, JASON A | 1627 | 514-381000 |

| 1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).<br><br>☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.<br><br>☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-09 or more recent) attached. **Use of a Customer Number is required.** | 2. For printing on the patent front page, list<br>(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,<br>(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed. | 1 _____<br><br>2 _____<br><br>3 _____ |

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document must have been previously recorded, or filed for recordation, as set forth in 37 CFR 3.11 and 37 CFR 3.81(a). Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE         (B) RESIDENCE: (CITY and STATE or COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☐ Corporation or other private group entity ☐ Government

4a. Fees submitted: ☐Issue Fee ☐Publication Fee (if required) ☐Advance Order - # of Copies _____
4b. Method of Payment: *(Please first reapply any previously paid fee shown above)*

☐ Electronic Payment via EFS-Web   ☐ Enclosed check   ☐ Non-electronic payment by credit card (Attach form PTO-2038)

☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment to Deposit Account No. _____

5. **Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.
NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.
NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

| Authorized Signature _____ | Date _____ |
| Typed or printed name _____ | Registration No. _____ |

PTOL-85 Part B (08-18) Approved for use through 01/31/2020    OMB 0651-0033    U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

NPC-VS-667-000000501

U̲NITED S̲TATES P̲ATENT AND T̲RADEMARK O̲FFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/572,399 | 11/07/2017 | Adel Remond Rizkala | PAT056901-US-PCT | 1063 |

1095          7590          06/22/2020

NOVARTIS PHARMACEUTICAL CORPORATION
INTELLECTUAL PROPERTY DEPARTMENT
ONE HEALTH PLAZA 433/2
EAST HANOVER, NJ 07936-1080

| EXAMINER |
|---|
| DECK, JASON A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1627 | |

DATE MAILED: 06/22/2020

---

**Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)**
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

NPC-VS-667-000000502

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b) (2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:
1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Notice of Allowability* | Application No. 15/572,399 | Applicant(s) Rizkala et al. | |
|---|---|---|---|
| | Examiner JASON A DECK | Art Unit 1627 | AIA (FITF) Status Yes |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☑ This communication is responsive to <u>10/30/19</u>.

   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☑ The allowed claim(s) is/are <u>See Continuation Sheet</u> . As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see **http://www.uspto.gov/patents/init_events/pph/index.jsp** or send an inquiry to **PPHfeedback@uspto.gov.**

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

   **Certified copies:**

   a) ☐ All    b) ☐ Some    *c) ☐ None of the:

       1. ☐ Certified copies of the priority documents have been received.

       2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

       3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

   * Certified copies not received: _____ .

   Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS (as "replacement sheets") must be submitted.

   ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____ .

   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____ .

3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material _____ .

4. ☑ Interview Summary (PTO-413), Paper No./Mail Date. _____ .

5. ☐ Examiner's Amendment/Comment

6. ☑ Examiner's Statement of Reasons for Allowance

7. ☐ Other _____ .

| /Jason Deck/ Examiner, Art Unit 1627 | /SARAH PIHONAK/ Primary Examiner, Art Unit 1627 |
|---|---|

NPC-VS-667-000000504

**Continuation Sheet (PTOL-37)**                                        Application No. **15/572,399**

Continuation of 3. The allowed claim(s) is/are: 62-63,66-69 and 73-88

NPC-VS-667-000000505

Application/Control Number: 15/572,399                                          Page 2
Art Unit: 1627

### Notice of Pre-AIA or AIA Status

The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

## DETAILED ACTION

### Status of the Application

This Office Action is in response to Applicant's arguments filed on 10/30/19. Claim(s) 1-61, 64, 65, and 70-72 are cancelled.  Claim(s) 62, 63, 66-69, and 73-88 are pending.

Applicant's amendments to the claims, arguments, and showing of unexpected results has rendered the 103 rejections of the last Office action moot, therefore hereby withdrawn.

Applicant's amendments to the claims, arguments, and showing of unexpected results has rendered the double patenting rejections of the last Office action moot, therefore hereby withdrawn.

## EXAMINER'S STATEMENT OF REASONS FOR ALLOWANCE

The following is an examiner's statement of reasons for allowance: while the prior art recognized that the instant composition was useful to treat heart failure with reduced ejection fraction in an up-titration scheme, the prior art does not specifically disclose all of the particular details of the instantly claimed method.  The Applicant has argued that "It has been unexpectedly found that the above-mentioned titration mitigates a risk from hypotension, hyperkalemia, and/or renal adverse events as compared to titration over a

NPC-VS-667-000000506

shorter time period" and shown in the instant disclosure that the treatment success rate was even more improved if patients taking lower doses of ACEIs/ARBs (i.e., the low RAAS stratum) were up-titrated more gradually than patients who were taking higher doses of ACEIs/ARBs.  For example, "The treatment success rate was 10% higher (85%) for patients in the low RAAS stratum given gradual up-titration over 6 weeks compared to those given condensed up-titration over 3 weeks. This difference was due to hypotension, hyperkalemia and renal dysfunction in most cases. On the other hand, surprisingly, there was no difference in the treatment success rate for high RAAS stratum patients, regardless of the rate of up-titration (3 weeks vs. 6 weeks)" (see, for example, the instant specification at pg. 3 lines 5-13).

This improvement, specifically the combination resulting in the 10% higher success rate due to hypotension, hyperkalemia and renal dysfunction adverse events, which the instant inventors discovered via experimentation, would not have been readily predictable and thus are not obvious over the prior art.

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee.  Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

### *Conclusion*

Claim(s) 1-61, 64, 65, and 70-72 are cancelled.  Claim(s) 62, 63, 66-69, and 73-88 are allowed.

Application/Control Number: 15/572,399                                      Page 4
Art Unit: 1627

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to JASON A DECK whose telephone number is (571)270-

5753.  The examiner can normally be reached on M-F 10-6.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, SREENIVASAN (PADDY) PADMANABHAN can be reached on (571)272-

0629.  The fax phone number for the organization where this application or proceeding

is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system. Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov.  Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free).  If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/JASON A DECK/
Examiner, Art Unit 1627

/SARAH PIHONAK/
Primary Examiner, Art Unit 1627

NPC-VS-667-000000508

# EXHIBIT 12

Docket No.: PAT056901-US-PCT
(PATENT)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of:
Adel Remond ROZKALA

Application No.: 15/572,399                    Confirmation No.: 1063

Filed: November 7, 2017                        Art Unit: 1627

For:  SACUBITRIL-VALSARTAN DOSAGE           Examiner: Jason A. Deck
      REGIMEN FOR TREATING HEART FAILURE

*Via EFS*
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

## RESPONSE TO FINAL OFFICE ACTION AND CONCURRENT REQUEST FOR CONTINUED EXAMINATION

This paper is in response to the Final Office Action mailed on May 1, 2019 ("Office Action") in the above-identified application.  With the payment of the requisite fees for a three-month extension of time, a response is due on or before November 1, 2019.

Applicant submits this paper in conjunction with a Request for Continued Examination under 37 CFR § 1.114, together with the fees required under 37 CFR § 1.17(e)(1). This paper constitutes a proper submission in accordance with 37 CFR § 1.114(c).

Applicants believe that no further fees are due in connection with this filing.  However, the Commissioner is authorized to charge any fees that may be due, or credit any overpayment to Deposit Account No. 50-4409, Reference No.: PAT056901-US-PCT.

**Amendments to the Claims** are reflected in the listing of claims, which begins on page 2 of this paper.

**Remarks/Arguments** begin on page 7 of this paper.

NPC-VS-667-000000486

Application No.15/572,399                                    2                          Docket No.: PAT056901-US-PCT
Amendment dated October 30, 2019
After Final Office Action of March 25, 2013

## AMENDMENTS TO THE CLAIMS

This listing of claims will replace all prior versions, and listings, of claims in the application:

**Listing of Claims:**

1.- 61.  (Cancelled)

62.     (Currently Amended) A regimen for treating heart failure with reduced ejection fraction, which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3`-methyl-2`-(pentanoyl{2``-(tetrazol-5-ylate)biphenyl-4`-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696);

wherein said target dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 3 weeks to about 4 weeks, followed by a twice daily dose of 100 mg of sacubitril[[,]] and valsartan in a 1:1 molar ratio for from about 3 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter~~, wherein said titration mitigates a risk selected from hypotension, hyperkalemia, and renal adverse events as compared to titration over a shorter time period~~; and

wherein:

(i) the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient neither taking an angiotensin-converting enzyme (ACE) inhibitor nor taking an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan, or

(ii) the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking a low dose of an angiotensin-converting enzyme (ACE) inhibitor or a low dose of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan, wherein the low dose of the ACE inhibitor or ARB is equivalent to a dose of < 10 mg of enalapril per day.

NPC-VS-667-000000487

Application No.15/572,399                                   3                        Docket No.: PAT056901-US-PCT
Amendment dated October 30, 2019
After Final Office Action of March 25, 2013

63.     (Previously Presented) The regimen for treating heart failure according to claim 62, wherein said dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for about 3 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 3 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

64-65.  (Cancelled)

66.     (Previously Presented) The regimen for treating heart failure according to claim 62, wherein the patient suffers from chronic systolic heart failure with reduced ejection fraction.

67.     (Previously Presented) The regimen for treating heart failure according to claim 62, wherein the patient is a human patient.

68.     (Currently Amended) The regimen for treating heart failure according to claim 62, wherein the patient has at least one of: the following characteristics

        i) heart failure of NYHA class II, III or IV,

        ii) an elevated plasma BNP or NT-proBNP level, and

        iii) a reduced left ventricular ejection fraction (LVEF) of ≤40%.

69.     (Previously Presented) The regimen for treating heart failure according to claim 62, wherein the patient suffers from chronic heart failure classified as NYHA class II, III or IV and has systolic dysfunction.

70-72.  (Cancelled)

73.     (Previously Presented) The regimen for treating heart failure according to claim 62, wherein the patient has to stop taking the angiotensin receptor blocker (ARB) or the ACE inhibitor at least 36 hours prior to taking the medicament.

74.     (Previously Presented) The regimen for treating heart failure according to claim 62, wherein:

        a) the 50 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 24 mg sacubitril and 26 mg valsartan,

NPC-VS-667-000000488

b) the 100 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 49 mg sacubitril and 51 mg valsartan, and

c) the 200 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 97 mg sacubitril and 103 mg valsartan.

75.    (Previously Presented) The regimen for treating heart failure according to claim 68, wherein the patient has an elevated plasma BNP of ≥100 pg/mL or NT-proBNP of ≥400 pg/mL.

76.    (Previously Presented) The regimen for treating heart failure according to claim 68, wherein the patient has an elevated plasma BNP of ≥150 pg/mL or NT-proBNP of ≥600 pg/mL.

77.    (Previously Presented) The regimen for treating heart failure according to claim 68, wherein the patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

78.    (Currently Amended)  A regimen for treating heart failure with reduced ejection fraction, which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3`-methyl-2`-(pentanoyl{2``-(tetrazol-5-ylate)biphenyl-4`-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696);

wherein said target dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by a twice daily dose of 100 mg of sacubitril[[,]] and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter, wherein said titration to the target dose occurs over a period of at least 6 weeks and said titration mitigates a risk selected from hypotension, hyperkalemia, and renal adverse events as compared to titration over a shorter time period; and

wherein:

(i) the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient neither taking an angiotensin-converting enzyme (ACE) inhibitor nor

NPC-VS-667-000000489

taking an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan, or

(ii) the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking a low dose of an angiotensin-converting enzyme (ACE) inhibitor or a low dose of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan, wherein the low dose of the ACE inhibitor or ARB is equivalent to a dose of < 10 mg of enalapril per day.

79.      (Previously Presented) The regimen for treating heart failure according to claim 78, wherein said dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for about 3 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 3 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

80.      (Previously Presented) The regimen for treating heart failure according to claim 78, wherein the patient suffers from chronic systolic heart failure with reduced ejection fraction.

81.      (Previously Presented) The regimen for treating heart failure according to claim 78, wherein the patient is a human patient.

82.      (Currently Amended) The regimen for treating heart failure according to claim 78, wherein the patient has at least one of: ~~the following characteristics~~

i) heart failure of NYHA class II, III or IV,

ii) an elevated plasma BNP or NT-proBNP level, and

iii) a reduced left ventricular ejection fraction (LVEF) of ≤40%.

83.      (Previously Presented) The regimen for treating heart failure according to claim 82, wherein the patient has an elevated plasma BNP of ≥100 pg/mL or NT-proBNP of ≥400 pg/mL.

84.      (Previously Presented) The regimen for treating heart failure according to claim 82, wherein the patient has an elevated plasma BNP of ≥150 pg/mL or NT-proBNP of ≥600 pg/mL.

NPC-VS-667-000000490

Application No.15/572,399                    6                    Docket No.: PAT056901-US-PCT
Amendment dated October 30, 2019
After Final Office Action of March 25, 2013

85.      (Previously Presented) The regimen for treating heart failure according to claim 82, wherein the patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

86.      (Previously Presented) The regimen for treating heart failure according to claim 78, wherein the patient suffers from chronic heart failure classified as NYHA class II, III or IV and has systolic dysfunction.

87.      (Previously Presented) The regimen for treating heart failure according to claim 78, wherein the patient has to stop taking the angiotensin receptor blocker (ARB) or the ACE inhibitor at least 36 hours prior to taking the medicament.

88.      (Previously Presented) The regimen for treating heart failure according to claim 78, wherein:

a) the 50 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 24 mg sacubitril and 26 mg valsartan,

b) the 100 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 49 mg sacubitril and 51 mg valsartan, and

c) the 200 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 97 mg sacubitril and 103 mg valsartan.

**REMARKS**

Claims 62, 63, 66-69, and 73-88 are presented for examination, with claims 62 and 78 being in independent form.  The independent claims have been amended for further clarification.  Support for the amendment may be found, *inter alia*, in the specification at page 2, as well as in claims 66 and 80.  Claims 68 and 82 have been amended as to form.

No new matter has been added.  Favorable reconsideration of the claims is respectfully requested.

**Claim Rejection-35 U.S.C. § 103**

Claims 62, 63, 66-69, and 73-88 are rejected under 35 U.S.C. § 103 as being allegedly unpatentable over McMurray, J. J. V., et al., ("Dual Angiotensin Receptor and Neprilysin Inhibition as an Alternative to Angiotensin Converting Enzyme Inhibition in Patients with Chronic Systolic Heart Failure: Rationale for and Design of the Prospective Comparison of ARNI with ACEI to Determine Impact on Global Mortality and Morbidity in Heart Failure Trial (PARADIGM-HF)", Eur. J. Heart Fail., Vol. 15, No. 9, 2013, p 1062-1073, "McMurray") in view of NCT01922089 (clinical trial, November 20, 2013 (v3), "NCT01922089") and WO 2014/029848 A1 ("Schumacher").  The grounds of rejection are respectfully traversed.

Prior to addressing the merits of the rejection, Applicant would like to review briefly certain features and advantages of the presently claimed invention.  That invention, in pertinent part, is related to a regimen for treating heart failure with reduced ejection fraction (HF-rEF) in which a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio (i.e., LCZ696) is administered to a patient in need of the treatment.

Specifically, the target dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2-3 weeks to about 4 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2-3 weeks to about 4 weeks, followed thereafter by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio.  Moreover, the patient undergoing this regimen is (i) neither taking an angiotensin-converting enzyme (ACE) inhibitor nor taking an angiotensin II receptor blocker (ARB) or (ii) taking a low dose of an angiotensin-converting enzyme (ACE) inhibitor or an angiotensin II receptor blocker (ARB) (i.e., a dose equivalent to a dose of < 10 mg of enalapril per day) before initiating the treatment with sacubitril and valsartan.

NPC-VS-667-000000492

It has been unexpectedly found that the above-mentioned titration mitigates a risk from hypotension, hyperkalemia, and/or renal adverse events as compared to titration over a shorter time period (see, e.g., specification, p. 3, lines 5-13). This, clearly, is a significant advantage in a real-world treatment situation, where a patient suffering from potentially fatal condition can begin the treatment with LCZ696 without the need for pretreatment with an ACE inhibitor or an ARB and be subjected to a reduced risk of adverse events. Previously disclosed clinical trials related to the effectiveness of LCZ696 for the treatment of heart failure did not indicate that their subjects were dosed with less than 10 mg/day of enalapril before commencing administration of LCZ696 and are, therefore, not indicative or even reasonably predictive of the up-titration for the claimed patients.

McMurray discloses one such clinical trial in which LCZ696 was administered to a patient population that was taking a stable dose of an ACEI or an ARB equivalent to 10 mg b.i.d. (20 mg/day) of enalapril. Specifically, McMurray reports on the PARADIGM-HF study, which is discussed in the present application.

As mentioned in the specification:

> The PARADIGM-HF study incorporated a single-blind, active run-in phase that was designed to assure a large proportion of patients will maintain target dose study drug during the long term study. Patients entered a single-blind active run-in in which they received enalapril 10 mg bid, followed by LCZ696 100 mg bid, and then LCZ696 200 mg bid. Patients must tolerate the study target dose of enalapril (10 mg bid) and the study target dose of LCZ696 (200 mg bid) for at least 2 weeks in order to be randomized. However, the active run-in phase included in the PARADIGM-HF study design (the sequential use of enalapril followed by LCZ696) provided limited information on how the physician should initiate the LCZ696 therapy in clinical practice, in particular for those patients who are currently on the low dose of ACEIs or ARBs, or ACEI/ARB-naïve patients.
>
> Specification, p. 2, lines 14-24.

The same study is also referenced in Example 2 of Schumacher.

Thus, McMurray differs from the claimed invention in at least two important aspects:

(i)      the patient population to which the LCZ696 was administered; and

(ii)     the actual up-titration regimen (as already acknowledged in the Office Action).

NPC-VS-667-000000493

Application No.15/572,399                9                Docket No.: PAT056901-US-PCT
Amendment dated October 30, 2019
After Final Office Action of March 25, 2013

With respect to the patient population, the Office Action alludes to McMurray mentioning "lower amounts including a discussion of titrating up to 10 mg" of enalapril. However, that "lower" amount is 5 mg b.i.d., which is 10 mg/day.  Moreover, the potential use of the 5 mg b.i.d. amount of enalapril is "for patients currently treated with an ARB and for those taking a low dose of ACE inhibitor ... <u>if the investigator was concerned that switching directly to enalapril 10 mg b.i.d. might not be tolerated</u> (e.g. because of hypotension, renal dysfunction, and/or hyperkalaemia). <u>These patients were up-titrated to enalapril 10 mg b.i.d. after 1–2 weeks</u>" (McMurray, p. 1064) (emphasis added).  This is also evident in the PARADIGM-HF study schema shown in Fig. 1 of McMurray:



Figure 1  PARADIGM-HF study schema.

Thus, LCZ696 in the PARADIGM-HF study reported in McMurray was administered <u>only</u> to those patients who had taken more than 10 mg/day of enalapril – it is that some of those patients required an enalapril run-in to reach 10 mg b.i.d. (20 mg/day), whereas others were already on that type of enalapril regimen or could directly start with 10 mg b.i.d. (20 mg/day) of enalapril.

With respect to the up-titration regimen, as already acknowledged in the Office Action, McMurray does not disclose starting with 50 mg b.i.d. of LCZ696, much less continuing with it for 2-4 weeks before switching to 100 mg b.i.d. of LCZ696 for 2-4 weeks, followed by 200 mg b.i.d. of LCZ696.  McMurray shows a maximum of 2 weeks on LCZ696 before reaching the 200 mg b.i.d. dose.

NPC-VS-667-000000494

NCT01922089 generally describes a study that was to be conducted for evaluating safety and tolerability of a 200 mg b.i.d. dose LCZ696 in heart failure patients. NCT01922089 did not limit its subjects to those who were taking neither an ACE inhibitor nor an ARB, or were taking a low dose thereof as claimed. Moreover, NCT01922089 does not indicate the duration of each stage of its up-titration schedule. Instead, only individual doses and the total up-titration period are listed.

Moreover, as noted above, NCT01922089 refers to the evaluation of safety and tolerability of LCZ696, which is not tantamount to a disclosure of a treatment of a medical condition. That said, NCT01922089 does not even indicate that safety and tolerability was shown, much less in the claimed patient population group.

As such, it is clear that NCT01922089 provides no guidance with respect to heart failure treatment, much less effectiveness thereof, that can be achieved by following its up-titration protocols. Stated differently, there is no disclosure or suggestion that the regimen of the study described in NCT01922089 would be suitable for treating heart failure with reduced ejection fraction with a reasonable expectation of success, much less for the claimed patient population. Moreover, as mentioned above, NCT01922089 does not teach the periods during which 50 mg b.i.d. and 100 mg b.i.d. doses of LCZ696 are administered before switching to 200 mg b.i.d.

The Office Action appears to have relied on Schumacher to fill in the apparent gaps in McMurray and NCT01922089. Applicant, however, respectfully submits that not only does Schumacher fail to do so, the manner in which Schumacher is referenced is not consistent with what this publication discloses and how it would have been understood by those skilled in the art.

The Office Action refers to Example 1 in Schumacher for a teaching of a three-week up-titration step at a 50 mg b.i.d. dose of LCZ696 followed by a three-week up-titration step at 100 b.i.d. mg:

> Schumacher et al. discloses the treatment of heart failure with reduced ejection fraction (see, for example, claim 3 and the whole document) including with a left ventricular ejection fraction of ≤35% (see, for example, pg. 36 lines 9-19), comprising the administration of LCZ696 (see, for example, claim 22) and further discloses that the LCZ696 is administered in a run in period of 2-8 weeks (see, for example, pg. 31 lines 16-27, and Methods pg. 37) with doses of 50, 100, and 200 mg twice a day (see, for example, pg. 31 lines 16-27, and claim 24) in a time

NPC-VS-667-000000495

period of one or two weeks per step <u>with an additional week if needed (i.e. 3 weeks per step; see, for example, pg. 31 lines 16-27)</u>.

Office Action, p. 8 (emphasis added).

However, the "an additional week" that "patients are allowed to stay on each titration dose" at the investigator's discretion does not refer to a hypothetical modification of the 2-4 week up-titration period mentioned by Schumacher at page 31, line 18. Instead, it refers to the potential extension of the 1 week period at the 50 mg b.i.d. starting dose and of the 1 week period at the uptitrated 100 mg b.i.d. dose, i.e., this is a description of how the 2-4 week period mentioned at page 31, line 18, is calculated:

> Patients are on their starting dose for 1 week and titrated up to either LCZ696 100 mg twice daily or valsartan 80 mg twice daily for 1 week. The maximum LCZ696 dose achieves exposures similar to a dose of valsartan that provides comparable AT1 blockade. At the investigator's discretion, patients are allowed to stay on each titration dose for an additional week. All patients are then titrated to their final doses of LCZ696 200 mg twice daily or valsartan 160 mg twice daily, in addition to standard background therapy.

Moreover, the study in Example 1 in Schumacher is said to have "a 2-week, single-blind placebo run-in period, during which time they continue their background medications". There is no indication that the subjects in that study did not take an ACEI or an ARB, or took the equivalent dose of less than 10 mg of enalapril per day of an ACEI inhibitor or an ARB before initiating the treatment with LCZ696.

The Office Action also alleges that Schumacher teaches that "those of skill in the art understand that slowing the rate of titration can reduce adverse effects and improve patient compliance" (Office Action, p. 12). Applicant respectfully disagrees and submits that Schumacher makes no such statement and does not lead to this general "conclusion".

The Office Action refers to the statement in Example 3 of Schumacher at page 37, lines 29-30, that the Active Run-in Period is "longer for patients with no prior exposure or on low doses of ACEIs or ARBs" as an apparent reason for having a longer run-in period at each of the up-titration doses of the LCZ696 mentioned in Example 1 of Schumacher in the claimed patient population. Notwithstanding the fact that Examples 1 and 3 pertain to entirely different clinical studies with different patient populations and purposes, the clinical study in Example 3 does not teach lengthening any part of the LCZ696 up-titration period even in its own clinical study.

NPC-VS-667-000000496

Specifically, Example 3 in Schumacher pertains to the PARAGON-HF study
(Schumacher, p. 37, line 25).  Schumacher states that "[d]etailed study design and procedures" in
connection with this study "can be found under www.clinicaltrials.gov, study number
NCT0192071 1" (Schumacher, p. 38, lines 15-16).

The disclosure in NCT01920711 (at clinicaltrials.gov)[1] indicates that the Run-in Period
in PARAGON-HF involved starting with valsartan at 80 mg b.i.d. for 1-2 weeks, followed by
LCZ696 at 100 mg b.i.d. for 2-4 weeks, before going up to LCZ696 at 200 mg b.i.d.  That is, the
Run-in Period in Example 3 of Schumacher includes pre-treatment with 80 mg b.i.d. of
valsartan, and there is no teaching of a modification of the LCZ696 up-titration period.
Moreover, PARAGON-HF did not involve administration of LCZ696 at 50 mg b.i.d.

Applicant respectfully submits that the clinical studies referenced in McMurray,
NCT01922089, and Schumacher do not provide information from which a discernable
relationship maybe drawn between the up-titration doses of LCZ696 and their relative duration
in connection with the treatment of heart failure with reduced ejection fraction.  This is even less
so when comes to the patient population as claimed.  Given that each one of these clinical
studies had a distinctly different purpose[2] and involved different patient populations, it is not
appropriate to mix and match their various components in an attempt to reconstruct the claimed
regimen.

The Office Action alludes to "routine optimization of the method disclosed in the prior
art" when it comes to treating heart failure by administering LCZ696 in an escalating dose of 50
mg/100 mg/200 mg b.i.d. (Office Action, p. 10).  Applicant believes that it is abundantly clear
from the above discussion that this is not the case.  To the contrary, there is nothing "routine"[3]
about the changes in dosing and up-titration stages of LCZ696 when it comes to heart failure
treatment.  McMurray, NCT01922089, and Schumacher do not provide any indication of how
such changes could or would be reasonably expected to affect patients who suffer from this

---

[1] Copy provided for the Examiner's convenience as Appendix A.
[2] McMurray (PARADIGM-HF) – comparing the long-term efficacy and safety of enalapril and LCZ696 in patients
with chronic symptomatic heart failure and reduced ejection fraction (HF-rEF).
NCT01922089 – assess the safety and tolerability of initiating LCZ696 in heart failure patients with reduced
ejection fraction (HF-rEF) using conservative (reaching target dose over 6 weeks) and condensed (reaching target
dose over 3 weeks) up-titration regimens.
Schumacher (Example 3 – PARAGON-HF) – evaluate the effect of LCZ696 compared to valsartan in the reduction
of cardiovascular death and heart failure(HF) hospitalizations in patients with HF with preserved ejection fraction.
[3] In the context of M.P.E.P. 2144.05(II)(A).

NPC-VS-667-000000497

condition, which is associated with the risk of cardiovascular death.  Simply put, the doses and the schedules used in up-titrating LCZ696 are not the "general conditions" of the type to which M.P.E.P. 2144.05(II)(A) refers when relying on the holding in *In re Aller*, 220 F.2d 454, 456, 105 USPQ 233, 235 (CCPA 1955) to apply the routine optimization theory.

Accordingly, Applicant respectfully submits that McMurray, NCT01922089, and Schumacher, whether they are considered separately or in any permissible combination, do not disclose or suggest the instant invention.  Thus, these references do not render unpatentable the present claims.

**Claim Rejections-Double Patenting**

Claims 62, 63, 66-69, and 73-88 are provisionally rejected on the ground of nonstatutory double patenting as being allegedly unpatentable over claims 46-49 and 52-59 of copending U.S. Patent Application No. 14/914,005 ("the '005 application") or over claims 1-20 of copending U.S. Patent Application No. 16/074,589 ("the '589 application").

Applicant respectfully requests that these rejections be held in abeyance until an indication of allowable subject matter. Upon such indication, Applicant will consider filing a Terminal Disclaimer over the above applications, if appropriate.

NPC-VS-667-000000498

Application No.15/572,399                    14                    Docket No.: PAT056901-US-PCT
Amendment dated October 30, 2019
After Final Office Action of March 25, 2013

## **CONCLUSION**

On the basis of the foregoing amendments and remarks, Applicant respectfully submits
that the pending claims are in condition for allowance.  Such action is respectfully requested.  If
there are any questions regarding these amendments and remarks, the Examiner is encouraged to
contact the undersigned at the telephone number provided below.

Dated:  October 30, 2019                    Respectfully submitted,

 

                                         Electronic signature:  /Judith D. Kuntz/
                                         Judith D. Kuntz, J.D., Ph.D.
                                         Registration No.: 71,649

                                         Novartis Institutes for Biomedical Research, Inc.
                                         700 Main Street
                                         Cambridge, Massachusetts  02139
                                         (617) 871-8034
                                         Attorney For Applicant

NPC-VS-667-000000499

# EXHIBIT 13

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address:  COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/572,399 | 11/07/2017 | Adel Remond Rizkala | PAT056901-US-PCT | 1063 |

1095          7590          05/01/2019
NOVARTIS PHARMACEUTICAL CORPORATION
INTELLECTUAL PROPERTY DEPARTMENT
ONE HEALTH PLAZA 433/2
EAST HANOVER, NJ 07936-1080

| EXAMINER |
|---|
| DECK, JASON A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1627 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 05/01/2019 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

phip.patents@novartis.com

PTOL-90A (Rev. 04/07)

NPC-VS-667-000000323

| *Office Action Summary* | **Application No.** 15/572,399 | **Applicant(s)** Rizkala et al. | |
|---|---|---|---|
| | **Examiner** JASON A DECK | **Art Unit** 1627 | **AIA (FITF) Status** Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☑ Responsive to communication(s) filed on <u>1/25/19</u>.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a) ☑ This action is **FINAL.**     2b) ☐ This action is non-final.

3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☑ Claim(s) <u>62-63,66-69 and 73-88</u> is/are pending in the application.
   5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6) ☐ Claim(s) _____ is/are allowed.

7) ☑ Claim(s) <u>62-63,66-69 and 73-88</u> is/are rejected.

8) ☐ Claim(s) _____ is/are objected to.

9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10) ☐ The specification is objected to by the Examiner.

11) ☐ The drawing(s) filed on _____ is/are: a) ☐ accepted or b) ☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    **Certified copies:**
    a) ☐ All   b) ☐ Some**   c) ☐ None of the:
    1. ☐ Certified copies of the priority documents have been received.
    2. ☐ Certified copies of the priority documents have been received in Application No. _____.
    3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☑ Notice of References Cited (PTO-892)

2) ☑ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)
   Paper No(s)/Mail Date _____.

3) ☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date _____.

4) ☐ Other: _____.

NPC-VS-667-000000324

Application/Control Number: 15/572,399                                        Page 2
Art Unit: 1627

### Notice of Pre-AIA or AIA Status

The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

## DETAILED ACTION

### Status of the Application

This Office Action is in response to Applicant's arguments filed on 1/25/19. Claim(s) 1-61, 64, 65, and 70-72 are cancelled.  Claim(s) 75-88 are new. Claim(s) 62, 63, 66-69, and 73-88 are pending.  Claim(s) 62, 63, 66-69, and 73-88 are examined herein.

Applicant's amendments to the claims have rendered the 112 rejections of the last Office action moot, therefore hereby withdrawn.

Applicant's amendments to the claims have rendered the 103 rejections of the last Office action moot, therefore hereby withdrawn.

Applicant's desire to hold the double patenting rejection over copending application 14/914,005 in abeyance is acknowledged. The rejection(s) of the last Office Action are maintained for reasons of record and repeated below for Applicant's convenience.

An updated search has been performed, the following new rejections will now apply.

### Double Patenting

The nonstatutory double patenting rejection is based on a judicially created doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the

NPC-VS-667-000000325

unjustified or improper timewise extension of the "right to exclude" granted by a patent

and to prevent possible harassment by multiple assignees. A nonstatutory double

patenting rejection is appropriate where the conflicting claims are not identical, but at

least one examined application claim is not patentably distinct from the reference

claim(s) because the examined application claim is either anticipated by, or would have

been obvious over, the reference claim(s). See, e.g., *In re Berg*, 140 F.3d 1428, 46

USPQ2d 1226 (Fed. Cir. 1998); *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed.

Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*,

686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619

(CCPA 1970); *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).

A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) or 1.321(d)

may be used to overcome an actual or provisional rejection based on nonstatutory

double patenting provided the reference application or patent either is shown to be

commonly owned with the examined application, or claims an invention made as a

result of activities undertaken within the scope of a joint research agreement. See

MPEP § 717.02 for applications subject to examination under the first inventor to file

provisions of the AIA as explained in MPEP § 2159.  See MPEP §§ 706.02(l)(1) -

706.02(l)(3) for applications not subject to examination under the first inventor to file

provisions of the AIA. A terminal disclaimer must be signed in compliance with 37 CFR

1.321(b).

The USPTO Internet website contains terminal disclaimer forms which may be

used. Please visit www.uspto.gov/patent/patents-forms. The filing date of the application

in which the form is filed determines what form (e.g., PTO/SB/25, PTO/SB/26,

Application/Control Number: 15/572,399                                          Page 4
Art Unit: 1627

PTO/AIA/25, or PTO/AIA/26) should be used. A web-based eTerminal Disclaimer may

be filled out completely online using web-screens. An eTerminal Disclaimer that meets

all requirements is auto-processed and approved immediately upon submission. For

more information about eTerminal Disclaimers, refer to

www.uspto.gov/patents/process/file/efs/guidance/eTD-info-I.jsp.

Claims 62, 63, 66-69, and 73-88 are provisionally rejected on the ground of

nonstatutory double patenting as being unpatentable over claims 46-49 and 52-59 of

copending Application No. 14/914,005. Although the claims at issue are not identical,

they are not patentably distinct from each other.  Both the instant and the copending

claims are generally drawn to the treatment of patients with heart failure via the

administration of LCZ696.  The subtle differences, e.g. the dosing, are result

determinate variables that those of skill in the art know to adjust, therefore the claims

are obvious variants of each other.

This is a provisional nonstatutory double patenting rejection because the

patentably indistinct claims have not in fact been patented.


### Response to Arguments

The Applicant wishes to hold this rejection in abeyance.


### New Rejections

### Claim Rejections - 35 USC § 103

In the event the determination of the status of the application as subject to AIA 35

U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any

correction of the statutory basis for the rejection will not be considered a new ground of

rejection if the prior art relied upon, and the rationale supporting the rejection, would be

the same under either status.

The following is a quotation of 35 U.S.C. 103 which forms the basis for all

obviousness rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed
> invention is not identically disclosed as set forth in section 102, if the differences between the
> claimed invention and the prior art are such that the claimed invention as a whole would have
> been obvious before the effective filing date of the claimed invention to a person having
> ordinary skill in the art to which the claimed invention pertains. Patentability shall not be
> negated by the manner in which the invention was made.

The factual inquiries set forth in *Graham v. John Deere Co.*, 383 U.S. 1, 148

USPQ 459 (1966), that are applied for establishing a background for determining

obviousness under 35 U.S.C. 103 are summarized as follows:

1. Determining the scope and contents of the prior art.

2. Ascertaining the differences between the prior art and the claims at issue.

3. Resolving the level of ordinary skill in the pertinent art.

4. Considering objective evidence present in the application indicating

obviousness or nonobviousness.

Claims 62, 63, 66-69, and 73-88 are rejected under 35 U.S.C. 103 as being

unpatentable over McMurray et al. (John J. V. McMurray et al., Dual angiotensin

receptor and neprilysin inhibition as an alternative to angiotensin converting enzyme

inhibition in patients with chronic systolic heart failure: rationale for and design of the

Prospective comparison of ARNI with ACEI to Determine Impact on Global Mortality and

morbidity in Heart Failure trial (PARADIGM-HF), European Journal of Heart Failure

(2013) 15, 1062–1073; of record), in view of the NCT01922089 clinical trial

(NCT01922089 – version from November 20, 2013 (v3) retrieved 7/16/18; hereinafter

the 'clinical trial'; of record), and further in view of Schumacher et al. (WO 2014/029848

A1).

The instant claims are generally drawn to a method of treating heart failure

comprising administering a twice daily dose of 50 mg of sacubitril and valsartan, e.g.

LCZ696 in a 1:1 molar ratio twice-dally for about 3 weeks (related to claims 63 and 78-

88), a twice daily dose of 100 mg for about 3 weeks, and then a twice daily dose of 200

mg, wherein the starting dose of 50 mg is for a patient not taking any, or taking doses

below, the equivalent dose of 10 mg of enalapril per day of an angiotensin-converting

enzyme (ACE) inhibitor or an angiotensin II receptor blocker (ARB) before initiating the

treatment with sacubitril and valsartan, wherein the lower dose of an ACEI or ARB is

equivalent to < 10 mg of enalapril per day (related to claim 64), wherein said titration

mitigates a risk selected from hypotension, hyperkalemia, and renal adverse events

(related to claims 62 and 78), wherein the patient suffers from chronic systolic heart

failure with reduced ejection fraction (related to claims 66 and 80)), in a human (related

to claims 67 and 81), wherein the patient has at least one of the following

characteristics: i) heart failure of NYHA class II, III, or IV, ii) an elevated plasma BNP or

NT-proBNP level (related to claims 68, 69, and 82), and iii) a reduced left ventricular

ejection fraction (LVEF) of ≤40% (related to claims 68 and 82), wherein the patient has

an elevated plasma BNP ≥ 100 pg/ml or NT-proBNP ≥ 400 pg/mL (related to claims 75

and 83), wherein the patient has an elevated plasma BNP ≥ 150 pg/ml or NT-proBNP ≥

600 pg/mL (related to claims 76 and 84), wherein the patient suffers from chronic heart

failure classified as NYHA class II, III, or IV and has systolic dysfunction (related to

NPC-VS-667-000000329

claims 69 and 86), wherein the patient has a reduced left ventricular ejection fraction

(LVEF) of ≤35% (related to claims 77 and 85), wherein the patient has to stop taking the

angiotensin receptor blocker (ARB) or the ACE inhibitor at least 36 hours prior to taking

the medicament (related to claims 73 and 87), and wherein a) the 50 mg dose of

sacubitril and valsartan in a 1:1 molar ratio corresponds to 24 mg sacubitril and 26 mg

valsartan, b) the 100 mg dose of sacubitril and valsartan in a 1:1 molar ratio

corresponds to 49 mg sacubitril and 51 mg valsartan, and c) the 200 mg dose of

sacubitril and valsartan in a 1:1 molar ratio corresponds to 97 mg sacubitril and 103 mg

valsartan (related to claim 74 and 88).

　　　McMurray et al. discloses the treatment of heart failure (see, for example, the title

and the whole document) in humans with reduced ejection fraction (see, for example,

Trial design and methods, pg. 1063), NYHA class II–IV symptoms (see, for example,

the methods), plasma BNP ≥150 pg/mL or NT-proBNP ≥600 pg/mL (see, for example,

Patients, pg. 1063), a LVEF ≤ 35% (see, for example, Patients, pg. 1063), and/or

systolic heart failure (i.e. systolic dysfunction; see, for example, Perspectives, pg. 1063)

comprising administering LCZ696 (see, for example, the methods) in an escalation

titration from 100 to 200 mg b.i.d. (i.e. 100-200 mg twice a day; see, for example, the

Methods) in patients that were taking 10 mg enalapril (i.e. a low dose of the claimed

ACE inhibitor; see, for example, the Methods) but had stopped a day prior (see

particularly Randomization to double-blind treatment, pg. 1064).  McMurray et al.

discloses that the LCZ696 was titrated from 100 mg b.i.d. for 1–2 weeks and then the

dose was up-titrated to 200 mg b.i.d. (see, for example, LCZ696 active run-in period,

pg. 1064).  McMurray et al. further discloses that the patients were monitored for

NPC-VS-667-000000330

adverse events such as hyperkalemia, symptomatic hypotension, etc., and that the

titration of the drug can be adjusted to improve patient outcome (see particularly

Monitoring of safety and tolerability during double-blind period, pg. 1064), that the

patients can be treated with beta-blockers (see, for example, Patients, pg. 1063), and

that aldosterone antagonists should be considered (see, for example, Patients, pg.

1063).

McMurray et al. does not specifically disclose the titration of LCZ696 beginning

from 50 mg.

Schumacher et al. discloses the treatment of heart failure with reduced ejection

fraction (see, for example, claim 3 and the whole document) including with a left

ventricular ejection fraction of ≤35% (see, for example, pg. 36 lines 9-19), comprising

the administration of LCZ696 (see, for example, claim 22) and further discloses that the

LCZ696 is administered in a run in period of 2-8 weeks (see, for example, pg. 31 lines

16-27, and Methods pg. 37) with doses of 50, 100, and 200 mg twice a day (see, for

example, pg. 31 lines 16-27, and claim 24) in a time period of one or two weeks per

step with an additional week if needed (i.e. 3 weeks per step; see, for example, pg. 31

lines 16-27).  Schumacher et al. additionally teaches that the run in times can potentially

be longer for patients with no prior exposure or patients on low doses of ACEIs or ARBs

(i.e. patients on the equivalent to < 10 mg of enalapril per day or none; see, for

example, Methods pg. 37), that the treatment is useful for the treatment of patients with

heart failure of NYHA class II, III, or IV, elevated plasma BNP, or NT-proBNP level ≥

400 pg/mL (see, for example, pg. 36 lines 9-19, and pg. 30 lines 30-34), in patients with

systolic heart failure (i.e. systolic dysfunction; see, for example, pg. 36 lines 21-27),

Application/Control Number: 15/572,399                                    Page 9
Art Unit: 1627

wherein the patient stops taking the ARB or the ACEI hours prior to taking the

medicament, and that the number of patients with hypotension, renal dysfunction, or

hyperkalaemia did not differ between the groups tested (see, for example, pg. 35 lines

9-11).

The clinical trial discloses titration of LCZ696 in heart failure patients with

reduced ejection fraction escalating 50 mg/100 mg/200 mg bid over 3-6 weeks (i.e. 50

mg for about 3 weeks and 100 mg for about 3 weeks; see, for example, Arms and

Interventions and the whole document).

It would have been obvious to one of ordinary skill in the art to titrate LCZ696

escalating 50 mg/100 mg/200 mg bid for about 2-3 and 3 weeks, respectively, in

conjunction with the claimed timings, limitations, and patient requirements.

at the time of the instant filing.

One of ordinary skill would have been motivated to start at 50 mg in the method

of McMurray et al. and to treat in the myriad claimed schedules, patient populations, etc.

because the prior art teaches that all of the claimed indications, sub-indications, and

additional patient population details are treatable with the claimed amount of the

claimed active agent, and further teach that the active agent should be administered in

a titration scheme that encompasses that instantly claimed in the same amount as

instantly claimed.  Those of skill in the art know that up-titrating some medications

improves patient compliance and patient outcome, and the prior art teaches that the it

was known that the instantly claimed drug was one of those.  Further, the prior art

teaches preferred up-titration amounts and schedules, including the instantly claimed

up-titration scheme, and teaches that it can, and should, be adjusted as the skilled

NPC-VS-667-000000332

practitioner sees fit.  One of ordinary skill in the art would have treated heart failure by

administering LCZ696 in an escalating dose of 50 mg/100 mg/200 mg b.i.d. for about 2-

3 and 3 weeks, respectively, during the routine optimization of the method disclosed in

the prior art, and would have done so with a reasonable expectation of success in

making an improved method for the treatment of heart failure and all of the claimed sub-

populations.  Further, where the general conditions of a claim are disclosed in the prior

art, it is not inventive to discover the optimum or workable ranges by routine

experimentation; *In re Aller,* 220 F.2d 454, 456, 105 USPQ 233, 235 (CCPA 1955).  The

normal desire of scientists or artisans to improve upon what is already generally known

provides the motivation to determine where in a disclosed set of percentage ranges is

the optimum combination of percentages; *Peterson,* 315 F.3d at 1330, 65 USPQ2d at

1382.


### Response to Arguments

The rejection of record has been replaced herein with a new/modified rejection,

however for the sake of compact prosecution the Examiner will address the arguments

inasmuch as they might apply to the current rejection.

The Applicant argues "McMurray teaches treatment of heart failure comprising

administering LCZ696 to patients taking a stable dose of an ACEI or an ARB, said

stable dose equivalent to a minimum of 10 mg/day of enalapril".

This is not found persuasive.  While McMurray does disclose the use of enalapril,

the disclosure is not drawn to a "minimum" of 10 mg, and in fact has several discussions

of lower amounts including a discussion of titrating up to 10 mg.  Moreover, the point is

NPC-VS-667-000000333

moot, as the amended rejection incorporates Schumacher et al. which teaches that the treatment can be utilized for patients on low doses or no enalapril, or equivalent, and that the timing should be adjusted accordingly.

The Applicant argues "Nor does McMurray teach or suggest the titration of LCZ696 to the target dose over a period of about 6 weeks to about 8 weeks (i.e., a twice daily dose of 50 mg for from about 3 weeks to about 4 weeks and a twice daily dose of 100 mg for from about 3 weeks to about 4 weeks = about 6 weeks to about 8 weeks over the entire titration period) starting from a dose of 50 mg b.i.d. or that said titration mitigates a risk selected from hypotension, hyperkalemia, and renal adverse events as compared to titration over a shorter time period".

This is not found persuasive.  The disclosure of McMurray et al. was used in conjunction with the clinical trial, and it is inappropriate to attack the references individually when used together.  As stated in the prior Office action, the combined disclosures teach that the administration of LCZ696 was known to work well in an up titration scheme in two to three steps, taking as much as 6 weeks.  Those of skill in the art would have recognized that the time and steps were result determinate variables that the prior art taught to adjust as necessary, and would have done so.  Further, the modified rejection included Schumacher et al. which specifically disclose that the time of the steps can be extended by the skilled artisan.

The Applicant argues "[the prior art does not teach] that said titration mitigates the risk of hypotension, hyperkalemia, and/or renal adverse events as compared to titration to the target dose over a shorter time period."

NPC-VS-667-000000334

Application/Control Number: 15/572,399                                       Page 12
Art Unit: 1627

This is not found persuasive.  As stated in the prior Office action, the prior art

recognized that these were potential issues and monitored for them; further, those of

skill in the art understand that slowing the rate of titration can reduce adverse effects

and improve patient compliance, as was stated in Schumacher et al.

Moreover, as claimed, the claimed mitigation is a resultant of the method of

administration, which is obvious in light of the teachings of the prior art.  Where the

claimed and prior art products are identical or substantially identical in structure or

composition, or are produced by identical or substantially identical processes, a prima

facie case of either anticipation or obviousness has been established. Thus, the

claiming of a new use, new function or unknown property which is inherently present in

the prior art does not necessarily make the claim patentable. *In re Best*, 562 F.2d 1252,

1254, 195 USPQ 430, 433 (CCPA 1977).


### Double Patenting

The nonstatutory double patenting rejection is based on a judicially created

doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the

unjustified or improper timewise extension of the "right to exclude" granted by a patent

and to prevent possible harassment by multiple assignees. A nonstatutory double

patenting rejection is appropriate where the conflicting claims are not identical, but at

least one examined application claim is not patentably distinct from the reference

claim(s) because the examined application claim is either anticipated by, or would have

been obvious over, the reference claim(s). See, e.g., *In re Berg*, 140 F.3d 1428, 46

USPQ2d 1226 (Fed. Cir. 1998); *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed.

NPC-VS-667-000000335

Application/Control Number: 15/572,399                                    Page 13
Art Unit: 1627

Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*,

686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619

(CCPA 1970); *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).

A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) or 1.321(d)

may be used to overcome an actual or provisional rejection based on nonstatutory

double patenting provided the reference application or patent either is shown to be

commonly owned with the examined application, or claims an invention made as a

result of activities undertaken within the scope of a joint research agreement. See

MPEP § 717.02 for applications subject to examination under the first inventor to file

provisions of the AIA as explained in MPEP § 2159.  See MPEP §§ 706.02(l)(1) -

706.02(l)(3) for applications not subject to examination under the first inventor to file

provisions of the AIA. A terminal disclaimer must be signed in compliance with 37 CFR

1.321(b).

The USPTO Internet website contains terminal disclaimer forms which may be

used. Please visit www.uspto.gov/patent/patents-forms. The filing date of the application

in which the form is filed determines what form (e.g., PTO/SB/25, PTO/SB/26,

PTO/AIA/25, or PTO/AIA/26) should be used. A web-based eTerminal Disclaimer may

be filled out completely online using web-screens. An eTerminal Disclaimer that meets

all requirements is auto-processed and approved immediately upon submission. For

more information about eTerminal Disclaimers, refer to

www.uspto.gov/patents/process/file/efs/guidance/eTD-info-I.jsp.

Claims 62, 63, 66-69, and 73-88 are provisionally rejected on the ground of

nonstatutory double patenting as being unpatentable over claims 1-20 of copending

Application No. 16/074,589. Although the claims at issue are not identical, they are not

patentably distinct from each other.  Both the instant and the copending claims are

generally drawn to the treatment of patients with heart failure via the administration of

LCZ696.  The copending application appears to be drawn to the treatment of a patient

sub-population of the instant claims, and is therefore an obvious variant.

This is a provisional nonstatutory double patenting rejection because the

patentably indistinct claims have not in fact been patented.


### Conclusion

Claim(s) 1-61, 64, 65, and 70-72 are cancelled.  Claim(s) 62, 63, 66-69, and 73-

88 are rejected.  No claim is allowed.

Applicant's amendment necessitated the new ground(s) of rejection presented in

this Office action.  Accordingly, **THIS ACTION IS MADE FINAL**.  See MPEP

§ 706.07(a).  Applicant is reminded of the extension of time policy as set forth in 37

CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action.  In the event a first reply is filed within

TWO MONTHS of the mailing date of this final action and the advisory action is not

mailed until after the end of the THREE-MONTH shortened statutory period, then the

shortened statutory period will expire on the date the advisory action is mailed, and any

extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of

the advisory action.  In no event, however, will the statutory period for reply expire later

than SIX MONTHS from the mailing date of this final action.

Application/Control Number: 15/572,399                                    Page 15
Art Unit: 1627

Any inquiry concerning this communication or earlier communications from the examiner should be directed to JASON A DECK whose telephone number is (571)270-5753.  The examiner can normally be reached on M-F 10-6.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, SREENIVASAN (PADDY) PADMANABHAN can be reached on (571)272-0629.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system.  Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/JASON A DECK/
Examiner, Art Unit 1627

/SARAH PIHONAK/
Primary Examiner, Art Unit 1627

NPC-VS-667-000000338

# EXHIBIT 14

Docket No.: PAT056901-US-PCT
(PATENT)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of:
Adel Remond RIZKALA et al.

Application No.: 15/572,399                    Confirmation No.: 1063

Filed: November 7, 2017                        Art Unit: 1627

For:  SACUBITRIL-VALSARTAN DOSAGE              Examiner: Jason A. Deck
      REGIMEN FOR TREATING HEART FAILURE

*Via EFS*
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

## AMENDMENT IN RESPONSE TO NON-FINAL OFFICE ACTION

This paper is in response to the Non-Final Office Action mailed on July 25, 2018 ("Office Action") in the above-identified application.  With the payment of the requisite fees for a three-month extension of time, a response is due on or before January 25, 2019.

Applicant also submits herewith an Information Disclosure Statement for the Examiner's consideration.

Applicants believe that no further fees are due in connection with this filing.  However, the Commissioner is authorized to charge any fees that may be due, or credit any overpayment to Deposit Account No. 50-4409, Reference No.: PAT056901-US-PCT.

**Amendments to the Claims** are reflected in the listing of claims, which begins on page 2 of this paper.

**Remarks/Arguments** begin on page 7 of this paper.

Application No.15/572,399                    2                    Docket No.: PAT056901-US-PCT
Amendment dated January 25, 2019

## AMENDMENTS TO THE CLAIMS

This listing of claims will replace all prior versions, and listings, of claims in the application:

## Listing of Claims:

1.- 61.  (Cancelled)

62.      (Currently Amended) A regimen for treating heart failure which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696):

wherein said target dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about [[2]]3 weeks to about 4 weeks, followed by a twice daily dose of 100 mg of sacubitril, and valsartan in a 1:1 molar ratio for from about [[2]]3 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter, wherein said titration mitigates a risk selected from hypotension, hyperkalemia, and renal adverse events as compared to titration over a shorter time period;[[,]] and

wherein:

(i) the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient [[not]]neither taking an angiotensin-converting enzyme (ACE) inhibitor nor taking an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan, or

(ii) the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking a low dose[[s]] of an angiotensin-converting enzyme (ACE) inhibitor or a low dose of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan, wherein the low dose of the ACE inhibitor or ARB is equivalent to a dose of < 10 mg of enalapril per day.

63.      (Currently Amended) [[A]]The regimen for treating heart failure according to claim 62, wherein said dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for ~~from about 2 weeks to~~ about 3 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 3 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

64-65. (Cancelled)

66.      (Currently Amended) [[A]]The regimen for treating heart failure according to claim 62, wherein the patient suffers from chronic systolic heart failure with reduced ejection fraction.

67.      (Currently Amended) [[A]]The regimen for treating heart failure according to claim 62, wherein the patient is a human patient.

68.      (Currently Amended) [[A]]The regimen for treating heart failure according to claim 62, wherein the patient has at least one of the following characteristics

   i) heart failure of NYHA class II, III or IV,

   ii) an elevated plasma BNP or NT-proBNP level, ~~preferably a plasma BNP ≥100 pg/mL (or NT-proBNP ≥400 pg/mL), more preferably a plasma BNP ≥150 pg/mL or NT-proBNP ≥600 pg/mL,~~ and

   iii) a reduced left ventricular ejection fraction (LVEF) of ≤40%~~, preferably ≤35%.~~

69.      (Currently Amended) [[A]]The regimen for treating heart failure according to claim 62, wherein the patient suffers from chronic heart failure classified as NYHA class II, III or IV and has systolic dysfunction~~, preferably wherein the patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%.~~

70-72. (Cancelled)

73.      (Currently Amended) [[A]]The regimen for treating heart failure according to claim 62, wherein the patient has to stop taking the angiotensin receptor blocker (ARB) or the ACE inhibitor at least 36 hours prior to taking the medicament.

NPC-VS-667-000000297

74.     (Currently Amended) [[A]]The regimen for treating heart failure according to claim 62, wherein:

    a) the 50 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 24 mg sacubitril and 26 mg valsartan,

    b) the 100 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 49 mg sacubitril and 51 mg valsartan, and

    c) the 200 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 97 mg sacubitril and 103 mg valsartan.

75.     (New) The regimen for treating heart failure according to claim 68, wherein the patient has an elevated plasma BNP of $\geq 100$ pg/mL or NT-proBNP of $\geq 400$ pg/mL.

76.     (New) The regimen for treating heart failure according to claim 68, wherein the patient has an elevated plasma BNP of $\geq 150$ pg/mL or NT-proBNP of $\geq 600$ pg/mL.

77.     (New) The regimen for treating heart failure according to claim 68, wherein the patient has a reduced left ventricular ejection fraction (LVEF) of $\leq 35\%$.

78.     (New)  A regimen for treating heart failure which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696);

    wherein said target dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by a twice daily dose of 100 mg of sacubitril, and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter, wherein said titration to the target dose occurs over a period of at least 6 weeks and said titration mitigates a risk selected from hypotension, hyperkalemia, and renal adverse events as compared to titration over a shorter time period; and

NPC-VS-667-000000298

wherein:

(i) the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient neither taking an angiotensin-converting enzyme (ACE) inhibitor nor taking an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan, or

(ii) the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking a low dose of an angiotensin-converting enzyme (ACE) inhibitor or a low dose of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan, wherein the low dose of the ACE inhibitor or ARB is equivalent to a dose of < 10 mg of enalapril per day.

79.      (New) The regimen for treating heart failure according to claim 78, wherein said dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for about 3 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 3 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

80.      (New) The regimen for treating heart failure according to claim 78, wherein the patient suffers from chronic systolic heart failure with reduced ejection fraction.

81.      (New) The regimen for treating heart failure according to claim 78, wherein the patient is a human patient.

82.      (New) The regimen for treating heart failure according to claim 78, wherein the patient has at least one of the following characteristics

i) heart failure of NYHA class II, III or IV,

ii) an elevated plasma BNP or NT-proBNP level, and

iii) a reduced left ventricular ejection fraction (LVEF) of ≤40%.

83.      (New) The regimen for treating heart failure according to claim 82, wherein the patient has an elevated plasma BNP of ≥100 pg/mL or NT-proBNP of ≥400 pg/mL.

NPC-VS-667-000000299

84.     (New) The regimen for treating heart failure according to claim 82, wherein the patient has an elevated plasma BNP of ≥150 pg/mL or NT-proBNP of ≥600 pg/mL.

85.     (New) The regimen for treating heart failure according to claim 82, wherein the patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

86.     (New) The regimen for treating heart failure according to claim 78, wherein the patient suffers from chronic heart failure classified as NYHA class II, III or IV and has systolic dysfunction.

87.     (New) The regimen for treating heart failure according to claim 78, wherein the patient has to stop taking the angiotensin receptor blocker (ARB) or the ACE inhibitor at least 36 hours prior to taking the medicament.

88.     (New) The regimen for treating heart failure according to claim 78, wherein:

    a) the 50 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 24 mg sacubitril and 26 mg valsartan,

    b) the 100 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 49 mg sacubitril and 51 mg valsartan, and

    c) the 200 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 97 mg sacubitril and 103 mg valsartan.

NPC-VS-667-000000300

## REMARKS

Upon entry of the current amendments, claims 62, 63, 66-69, and 73-88 are pending in this application.  Claims 75-88 are added. Claims 64, 65, and 70-72, are cancelled and claims 1-61 were previously cancelled. Support for the new claims and amendments can throughout the application as filed. No new matter has been added.  Applicants reserve the right to pursue the canceled subject matter in one or more continuing applications.

## Rejection under 35 USC § 112, First Paragraph

Claims 62-74 are rejected under 35 U.S.C. § 112(b) or 35 U.S.C. § 112 (pre-AIA), second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which the inventor or a joint inventor, or for pre-AIA the applicant regards as the invention. *See* Office Action at pages 2-3. Specifically, the Examiner alleges that the term "low doses of an angiotensin-converting enzyme (ACE) inhibitor" in claim 62 is a relative term which renders the claim indefinite because the term "low doses" is not defined by the claim, the specification does not provide a standard for ascertaining the requisite degree, and one of ordinary skill in the art would not be reasonably apprised of the scope of the invention. *See id.* Applicant respectfully disagrees. Claims 64, 65, and 70-72 have been cancelled rendering the rejection as to them moot. Without acquiescence and for the sole purpose of expediting prosecution, Applicant has amended claim 62 to recite "wherein the lower dose of an ACE inhibitor or ARB is equivalent to < 10 mg of enalapril per day". Applicant submits that as amended, claim 62, as well as claims 63, 66-69, and 73-74, which depend directly or indirectly from claim 62, are definite and respectfully requests withdrawal of the rejection.

Claim 68 is rejected under 35 U.S.C. § 112(b) or 35 U.S.C. § 112 (preAIA), second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which the inventor or a joint inventor, or for pre-AIA the applicant regards as the invention. *See* Office Action at pages 3-4. Specifically, the Examiner alleges that broad range or limitation together with a narrow range or limitation that falls within the broad range or limitation (in the same claim) is considered indefinite, since the resulting claim does not clearly set forth the metes and bounds of the patent protection desired. *See id.* According to the Examiner, claim 68 recites both the broad recitation "elevated plasma BNP", and the narrower recitations "preferably a plasma BNP $\geq$100 pg/ml" and "more preferably a plasma BNP $\geq$150

NPC-VS-667-000000301

pg/ml" which are the narrower statements of the range/limitation. *See id.* Applicant respectfully disagrees. Without conceding that the Examiner's position is correct, and for the sole purpose of expediting prosecution, Applicant has deleted the narrower recitations "preferably a plasma BNP $\geq$100 pg/mL (or NT-proBNP $\geq$400 pg/mL), more preferably a plasma BNP $\geq$150 pg/mL or NT-proBNP $\geq$600 pg/mL" from claim 68. Thus, the rejection is rendered moot. Withdrawal of the rejection is respectfully requested.

Claim 68 is rejected under 35 U.S.C. § 112(b) or 35 U.S.C. § 112 (preAIA), second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which the inventor or a joint inventor, or for pre-AIA the applicant regards as the invention. *See* Office Action at pages 3-4. Specifically, the Examiner alleges that broad range or limitation together with a narrow range or limitation that falls within the broad range or limitation (in the same claim) is considered indefinite, since the resulting claim does not clearly set forth the metes and bounds of the patent protection desired. *See id.* According to the Examiner, claim 68 recites both the broad recitation "ejection fraction (LVEF) of $\leq$40%", and the narrower recitation "preferably $\leq$35" which is the narrower statement of the range/limitation. *See id.* Without conceding that the Examiner's position is correct, and for the sole purpose of expediting prosecution, Applicant has deleted the narrower recitation "preferably $\leq$35%" from claim 68. Thus, the rejection is rendered moot. Withdrawal of the rejection is respectfully requested.

Claim 69 is rejected under 35 U.S.C. § 112(b) or 35 U.S.C. § 112 (preAIA), second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which the inventor or a joint inventor, or for pre-AIA the applicant regards as the invention. *See* Office Action at pages 3-4. Specifically, the Examiner alleges that broad range or limitation together with a narrow range or limitation that falls within the broad range or limitation (in the same claim) is considered indefinite, since the resulting claim does not clearly set forth the metes and bounds of the patent protection desired. *See id.* According to the Examiner, claim 69 recites both the broad recitation "chronic heart failure classified as NYHA class II, Ill, or IV and has systolic dysfunction" and the narrower recitation "preferably wherein the patient has a reduced left ventricular ejection fraction (LVEF) of $\leq$35%" which is the narrower statement of the range/limitation. *See id.* Without conceding that the Examiner's position is correct, and for the sole purpose of expediting prosecution, Applicant has deleted the narrower recitation "preferably wherein the patient has a reduced left ventricular ejection

NPC-VS-667-000000302

fraction (LVEF) of ≤35%" from claim 69. Thus, the rejection is rendered moot. Withdrawal of the rejection is respectfully requested.

Claim 70 is rejected under 35 U.S.C. § 112(b) or 35 U.S.C. § 112 (preAIA), second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which the inventor or a joint inventor, or for pre-AIA the applicant regards as the invention. *See* Office Action at pages 3-4. Specifically, the Examiner asserts that claim 70 recites the limitation trisodium and hemipentahydrate and there is insufficient antecedent basis for these limitations in the claim. *See id.* For the sole purpose of expediting prosecution, claim 70 has been cancelled rendering the rejection as to it moot. Accordingly, Applicant respectfully requests withdrawal of this rejection.

Claim 71 is rejected under 35 U.S.C. § 112(b) or 35 U.S.C. § 112 (preAIA), second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which the inventor or a joint inventor, or for pre-AIA the applicant regards as the invention. *See* Office Action at pages 3-4. Specifically, the Examiner alleges that claim 71 recites the limitation "or a pharmaceutically acceptable salt thereof" and that there is insufficient antecedent basis for this limitation in the claim. *See id.* For the sole purpose of expediting prosecution, claim 71 has been cancelled rendering the rejection as to it moot. Accordingly, Applicant respectfully requests withdrawal of this rejection.

**Claim Rejections-35 U.S.C. § 103**

Claims 62-74 are rejected under 35 U.S.C. § 103 as being unpatentable over McMurray, J. J. V., et al., ("Dual angiotensin receptor and neprilysin inhibition as an alternative to angiotensin converting enzyme inhibition in patients with chronic systolic heart failure: rationale for and design of the Prospective comparison of ARNI with ACEI to Determine Impact on Global Mortality and morbidity in Heart Failure trial (PARADIGM-HF) ", Eur. J. Heart Fail., Vol. 15, No. 9, 2013, p 1062-1073, "McMurray") in view of NCT01922089 (clinical trial, November 20, 2013 (v3), "NCT01922089"). *See* Office Action at pages 5-6. Specifically, the Examiner asserts that McMurray discloses the treatment of heart failure in humans with reduced ejection fraction, NYHA class II-IV symptoms, plasma BNP ≥150 pg/ml or NT-proBNP ≥600 pg/ml, a LVEF ≤ 35%, and/or systolic heart failure comprising administering lCZ696 in an escalation titration from 100 to 200 mg b.i.d. in patients that were taking 10 mg enalapril but had stopped a day prior. The Examiner further asserts that McMurray discloses that LCZ696 was

titrated from 100 mg b.i.d. for 1-2 weeks and then the dose was up-titrated to 200 mg b.i.d., that the patients were monitored for adverse events (i.e., hyperkalemia, symptomatic hypotension, etc., that the titration of the drug can be adjusted to improve patient outcome, that the patients can be treated with beta-blockers, and that aldosterone antagonists should be considered.

The Examiner admits that McMurray does not specifically disclose the titration of LCZ696 beginning from 50 mg but that the NCT01922089 discloses titration of LCZ696 in heart failure patients with reduced ejection fraction escalating 50 mg/100 mg/200 mg bid over 3-6 weeks. Thus, according to the Examiner, it would have been obvious to one of ordinary skill in the art to treat heart failure by administering LCZ696 in an escalating dose of 50 mg/100 mg/200 mg b.i.d. for about 2-3 and 3 weeks, respectively, by using routine optimization of the method of McMurray and would have done so with a reasonable expectation of success in making an improved method for the treatment of heart failure. *See id.* at pages 7-9. Applicant respectfully disagrees.

Claims 64, 65, and 70-72 have been cancelled rendering the rejection as to them moot.

Amended claim 1 is directed to a regimen for treating heart failure which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio (i.e., LCZ696), wherein said target dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 3 weeks to about 4 weeks, followed by a twice daily dose of 100 mg of sacubitril, and valsartan in a 1:1 molar ratio for from about 3 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter, wherein said titration mitigates a risk selected from hypotension, hyperkalemia, and renal adverse events as compared to titration over a shorter time period in a patient neither taking an angiotensin-converting enzyme (ACE) inhibitor nor taking an angiotensin II receptor blocker (ARB) or patient taking a low dose of an angiotensin-converting enzyme (ACE) inhibitor or an angiotensin II receptor blocker (ARB) (i.e., a dose equivalent to a dose of < 10 mg of enalapril per day) before initiating the treatment with sacubitril and valsartan.

McMurray teaches treatment of heart failure comprising administering LCZ696 to patients taking a stable dose of an ACEI or an ARB, said stable dose equivalent to a *minimum* of 10 mg/day of enalapril, where the target dose of 200 mg b.i.d of LCZ696 is reached after

NPC-VS-667-000000304

titration of LCZ696 starting at a dose of 100 mg b.i.d. for 1-2 weeks and then up-titrating to the target dose of 200 mg b.i.d.  McMurray does not teach or suggest treatment of heart failure in patients *not taking* an ACEI or an ARB or taking a *low dose* of an ACEI or an ARB (i.e., a dose equivalent to a dose of < 10 mg of enalapril per day). Nor does McMurray teach or suggest the titration of LCZ696 to the target dose over a period of about 6 weeks to about 8 weeks (i.e., a twice daily dose of 50 mg for from about 3 weeks to about 4 weeks and a twice daily dose of 100 mg for from about 3 weeks to about 4 weeks = about 6 weeks to about 8 weeks over the entire titration period) starting from a dose of 50 mg b.i.d. or that said titration mitigates a risk selected from hypotension, hyperkalemia, and renal adverse events as compared to titration over a shorter time period. As pointed out above, claim 1, as amended, is directed to the treatment of heart failure comprising administering a target dose of 200 mg b.i.d. of LCZ696 in patients not taking an ACEI or an ARB or taking a low dose of an ACEI or an ARB after titration of LCZ696 to the target dose over a period of about 6 weeks to about 8 weeks starting at a dose of 50 mg of LCZ696, wherein said titration mitigates the risk of hypotension, hyperkalemia, and/or renal adverse events as compared to titration to the target dose over a shorter time period.  Thus, McMurray fails to teach or suggest the claimed invention to a skilled artisan.

Nor does NCT01922089 cure the deficiencies of McMurray. NCT01922089 teaches a study to evaluate the safety and tolerability of LCZ696 in heart failure patients comprising administering 200 mg b.i.d. of LCZ696 to *any* patient (i.e., including patients not taking an ACEI or an ARB and patients taking any dose (i.e., low and high dose) of an ACEI or an ARB), wherein the target dose of LCZ696 is reached after titration of LCZ696 to the target dose over a period of either 3 weeks (condensed = reaching target dose over 3 weeks) or 6 weeks (conservative = reaching target dose over 6 weeks) starting at a dose of 50 mg b.i.d. NCT01922089 does not teach or suggest a specific treatment regimen for starting the treatment of heart failure in patients who are *not taking* an ACEI or an ARB or taking a *low dose* of an ACEI or an ARB. Nor does NCT01922089 teach or suggest the titration of LCZ696 to the target dose over an extended period of about 6 weeks to about 8 weeks starting at a dose of 50 mg of LCZ696 or that said titration mitigates the risk of hypotension, hyperkalemia, and/or renal adverse events as compared to titration to the target dose over a shorter time period.

Notably, Applicants have discovered that the treatment success rate with sacubitril and valsartan in a 1:1 molar ratio was higher in patients not taking an ACEI/ARB or taking a low

NPC-VS-667-000000305

dose of an ACEI/ARB (i.e., the low RAAS stratum) when the dose was up-titrated more gradually (i.e., over 6-8 weeks) than in patients who were taking higher doses (i.e., doses equivalent to a dose of $\geq 10$ mg of enalapril per day) of ACEIs/ARBs (i.e., high RAAS stratum patients). In fact, the treatment success rate was 10% higher (85%) for patients in the low RAAS stratum given gradual up-titration over 6 weeks compared to those given condensed up-titration over 3 weeks. This success rate being due to a 10% reduction in hypotension, hyperkalemia, and renal dysfunction. On the other hand, surprisingly, there was no difference in the treatment success rate for high RAAS stratum patients, regardless of the rate of up-titration (3 weeks vs. 6 or more weeks).

Neither McMurray nor NCT01922089 teach or suggest titration over a minimum of 6 weeks to mitigate the risk of hypotension, hyperkalemia, and/or renal adverse events in a patient neither taking an ACEI nor taking an ARB or patient taking the equivalent dose of < 10 mg of enalapril per day of an ACEI inhibitor or an ARB before initiating the treatment with sacubitril and valsartan. Thus, the instantly claimed invention is not obvious over the McMurray and/or NCT01922089, and the rejection should be withdrawn.

**New claims 75-88**

New claims 75-77 each depend directly or indirectly from claim 62. Thus, for at least the same foregoing reasons, these new claims are also patentable over the cited references.

For at least the same foregoing reasons, new claim 78 as well as claims 79-88, which depend directly or indirectly from claim 78, are also patentable over the cited references.

It is submitted that claims 75-88 are also in condition for allowance.

**Claim Rejections-Double Patenting**

Claims 62-74 are provisionally rejected on the ground of nonstatutory obviousness-type double patenting as being unpatentable over claims over claims 46-49 and 52-59 of copending U.S. Application No. 14/914,005. *See* Office Action at pages 9-11.

Claims 64, 65, and 70-72 have been cancelled rendering the rejection as to them moot.

Applicant respectfully requests that this rejection as applied to claims 62, 63, 66-69, and 73-74, be held in abeyance until an indication of allowable subject matter forth. Upon such indication, Applicants will consider filing a Terminal Disclaimer over the above application, if appropriate.

NPC-VS-667-000000306

Application No.15/572,399                     13                     Docket No.: PAT056901-US-PCT
Amendment dated January 25, 2019

NPC-VS-667-000000307

Application No.15/572,399                    14                    Docket No.: PAT056901-US-PCT
Amendment dated January 25, 2019

## <u>CONCLUSION</u>

In view of the above amendment, Applicants believe that the pending application is in condition for allowance.  Should any questions or issues arise concerning this application, the Examiner is encouraged to contact the undersigned at the telephone number provided below.

Dated:  <u>January 25, 2019</u>                    Respectfully submitted,

Electronic signature:  <u>/Judith D. Kuntz/</u>
 Judith D. Kuntz, J.D., Ph.D.
Registration No.: 71,649

Novartis Institutes for Biomedical Research, Inc.
700 Main Street
Cambridge, Massachusetts  02139
(617) 871-8034
Attorney For Applicant

NPC-VS-667-000000308

# EXHIBIT 15

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/572,399 | 11/07/2017 | Adel Remond Rizkala | PAT056901-US-PCT | 1063 |

1095        7590        07/25/2018
NOVARTIS PHARMACEUTICAL CORPORATION
INTELLECTUAL PROPERTY DEPARTMENT
ONE HEALTH PLAZA 433/2
EAST HANOVER, NEW JERSEY 07936-1080
UNITED STATES OF AMERICA

| EXAMINER |
|---|
| DECK, JASON A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1627 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 07/25/2018 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

phip.patents@novartis.com

PTOL-90A (Rev. 04/07)

NPC-VS-667-000000255

| *Office Action Summary* | Application No. 15/572,399 | Applicant(s) Rizkala et al. | |
|---|---|---|---|
| | Examiner JASON A DECK | Art Unit 1627 | AIA Status Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

  A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☑ Responsive to communication(s) filed on <u>11/7/17</u>.
  ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a)☐ This action is **FINAL.**      2b)☑ This action is non-final.
3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5)☑ Claim(s) <u>62-74</u> is/are pending in the application.
  5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6)☐ Claim(s) _____ is/are allowed.
7)☑ Claim(s) <u>62-74</u> is/are rejected.
8)☐ Claim(s) _____ is/are objected to.
9)☐ Claim(s) _____ are subject to restriction and/or election requirement
* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10)☐ The specification is objected to by the Examiner.
11)☑ The drawing(s) filed on <u>11/7/17</u> is/are:  a)☑ accepted or  b)☐ objected to by the Examiner.
  Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
  Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12)☑ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
  **Certified copies:**
    a)☑ All  b)☐ Some**  c)☐ None of the:
    1.☐ Certified copies of the priority documents have been received.
    2.☐ Certified copies of the priority documents have been received in Application No. _____.
    3.☑ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☑ Notice of References Cited (PTO-892)
2) ☑ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)
  Paper No(s)/Mail Date _____.
3) ☐ Interview Summary (PTO-413)
  Paper No(s)/Mail Date _____.
4) ☐ Other: _____.

U.S. Patent and Trademark Office
PTOL-326 (Rev. 11-13)          **Office Action Summary**          Part of Paper No./Mail Date 20180717

NPC-VS-667-000000256

Application/Control Number: 15/572,399                                         Page 2
Art Unit: 1627

### *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined

under the first inventor to file provisions of the AIA.

## DETAILED ACTION

Claims 1-61 are cancelled.  Claims 62-74 are pending.


### *Priority*

This application is a 371 of PCT/IB2016/052633 05/09/2016,

PCT/IB2016/052633 has PRO 62/159,703 05/11/2015.


### *Claim Rejections - 35 USC § 112*

The following is a quotation of 35 U.S.C. 112(b):
(b)  CONCLUSION.—The specification shall conclude with one or more claims particularly
pointing out and distinctly claiming the subject matter which the inventor or a joint inventor
regards as the invention.

The following is a quotation of 35 U.S.C. 112 (pre-AIA), second paragraph:
The specification shall conclude with one or more claims particularly pointing out and distinctly
claiming the subject matter which the applicant regards as his invention.

Claims 62-74 are rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA),

second paragraph, as being indefinite for failing to particularly point out and distinctly

claim the subject matter which the inventor or a joint inventor, or for pre-AIA the

applicant regards as the invention.

The term "low doses of an angiotensin-converting enzyme (ACE) inhibitor" in

claim 62 is a relative term which renders the claim indefinite.  The term "low doses" is

not defined by the claim, the specification does not provide a standard for ascertaining

the requisite degree, and one of ordinary skill in the art would not be reasonably

NPC-VS-667-000000257

apprised of the scope of the invention.  While the specification defines what a low dose

would be for enalapril, it does not give any guidance as to what would be considered a

low dose for any other ACE inhibitor, thus making the metes and bounds of the claim

unclear.

Claims 63-74 are rejected for depending from a rejected base claim.


Claims 68 and 69 are rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-

AIA), second paragraph, as being indefinite for failing to particularly point out and

distinctly claim the subject matter which the inventor or a joint inventor, or for pre-AIA

the applicant regards as the invention.

A broad range or limitation together with a narrow range or limitation that falls

within the broad range or limitation (in the same claim) is considered indefinite, since

the resulting claim does not clearly set forth the metes and bounds of the patent

protection desired.  See MPEP § 2173.05(c).  Note the explanation given by the Board

of Patent Appeals and Interferences in *Ex parte Wu*, 10 USPQ2d 2031, 2033 (Bd. Pat.

App. & Inter. 1989), as to where broad language is followed by "such as" and then

narrow language.  The Board stated that this can render a claim indefinite by raising a

question or doubt as to whether the feature introduced by such language is (a) merely

exemplary of the remainder of the claim, and therefore not required, or (b) a required

feature of the claims.  Note also, for example, the decisions of *Ex parte Steigewald*, 131

USPQ 74 (Bd. App. 1961); *Ex parte Hall*, 83 USPQ 38 (Bd. App. 1948); and *Ex parte

Hasche*, 86 USPQ 481 (Bd. App. 1949).

In the present instance, claim 68 recites the broad recitation "elevated plasma BNP", and the claim also recites "preferably a plasma BNP ≥ 100 pg/ml" and "more preferably a plasma BNP ≥ 150 pg/ml" which are the narrower statements of the range/limitation.

In the present instance, claim 68 further recites the broad recitation "ejection fraction (LVEF) of ≥40%", and the claim also recites "preferably ≥35" which is the narrower statement of the range/limitation.

In the present instance, claim 69 recites the broad recitation "chronic heart failure classified as NYHA class II, III, or IV and has systolic dysfunction" and the claim also recites "preferably wherein the patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%" which is the narrower statement of the range/limitation.


Claims 70 and 71 are rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA), second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which the inventor or a joint inventor, or for pre-AIA the applicant regards as the invention.

Claim 70 recites the limitation trisodium and hemipentahydrate.  There is insufficient antecedent basis for these limitations in the claim.

Claim 71 recites the limitation "or a pharmaceutically acceptable salt thereof". There is insufficient antecedent basis for this limitation in the claim.

Application/Control Number: 15/572,399                                          Page 5
Art Unit: 1627

### *Claim Rejections - 35 USC § 103*

In the event the determination of the status of the application as subject to AIA 35

U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any

correction of the statutory basis for the rejection will not be considered a new ground of

rejection if the prior art relied upon, and the rationale supporting the rejection, would be

the same under either status.

The following is a quotation of 35 U.S.C. 103 which forms the basis for all

obviousness rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed
> invention is not identically disclosed as set forth in section 102, if the differences between the
> claimed invention and the prior art are such that the claimed invention as a whole would have
> been obvious before the effective filing date of the claimed invention to a person having
> ordinary skill in the art to which the claimed invention pertains. Patentability shall not be
> negated by the manner in which the invention was made.

The factual inquiries set forth in *Graham v. John Deere Co.*, 383 U.S. 1, 148

USPQ 459 (1966), that are applied for establishing a background for determining

obviousness under 35 U.S.C. 103 are summarized as follows:

1. Determining the scope and contents of the prior art.

2. Ascertaining the differences between the prior art and the claims at issue.

3. Resolving the level of ordinary skill in the pertinent art.

4. Considering objective evidence present in the application indicating

obviousness or nonobviousness.

Claims 62-74 are rejected under 35 U.S.C. 103 as being unpatentable over

McMurray et al. (John J. V. McMurray et al., Dual angiotensin receptor and neprilysin

inhibition as an alternative to angiotensin converting enzyme inhibition in patients with

chronic systolic heart failure: rationale for and design of the Prospective comparison of

NPC-VS-667-000000260

ARNI with ACEI to Determine Impact on Global Mortality and morbidity in Heart Failure

trial (PARADIGM-HF), European Journal of Heart Failure (2013) 15, 1062–1073; of

record) in view of the NCT01922089 clinical trial (NCT01922089 – version from

November 20, 2013 (v3) retrieved 7/16/18; hereinafter the 'clinical trial').

The instant claims are generally drawn to a method of treating heart failure

comprising administering a twice daily dose of 50 mg of sacubitril and valsartan, e.g.

LCZ696 (related to claims 70 and 71) in a 1:1 molar ratio twice-daily for about 2-3

weeks, a twice daily dose of 100 mg for about 3 weeks, and then a twice daily dose of

200 mg (related to claim 63), wherein the starting dose of 50 mg is for a patient not

taking or taking low doses of an angiotensin-converting enzyme (ACE) inhibitor or an

angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and

valsartan, wherein the lower dose of an ACEI or ARB is equivalent to < 10 mg of

enalapril per day (related to claim 64), wherein said titration mitigates a risk selected

from hypotension, hyperkalemia, and renal adverse events (related to claim 65),

wherein the patient suffers from chronic systolic heart failure with reduced ejection

fraction (related to claim 66), in a human (related to claim 67), wherein the patient has

at least one of the following characteristics: i) heart failure of NYHA class II, III, or IV, ii)

an elevated plasma BNP or NT-proBNP level, preferably a plasma BNP ≥ 100 pg/ml (or

NT-proBNP ≥ 400 pg/mL), more preferably a plasma BNP ≥ 150 pg/ml or NT-proBNP ≥

600 pg/rnL, and iii) a reduced left ventricular ejection fraction (LVEF) of ≤40%,

preferably ≤35% (related to claim 68), wherein the patient suffers from chronic heart

failure classified as NYHA class II, III, or IV and has systolic dysfunction, preferably

wherein the patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%

NPC-VS-667-000000261

(related to claim 69), wherein the patient receives a base treatment with a stable dose

of a beta-blocker and/or an aldosterone antagonist (related to claim 72), wherein the

patient has to stop taking the angiotensin receptor blocker (ARB) or the ACE inhibitor at

least 36 hours prior to taking the medicament (related to claim 73), and wherein a) the

50 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 24 mg

sacubitril and 26 mg valsartan, b) the 100 mg dose of sacubitril and valsartan in a 1:1

molar ratio corresponds to 49 mg sacubitril and 51 mg valsartan, and c) the 200 mg

dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 9 7 mg sacubitril and

103 mg valsartan (related to claim 74).

McMurray et al. discloses the treatment of heart failure (see, for example, the title

and the whole document) in humans with reduced ejection fraction (see, for example,

Trial design and methods, pg. 1063), NYHA class II–IV symptoms (see, for example,

the methods), plasma BNP ≥150 pg/mL or NT-proBNP ≥600 pg/mL (see, for example,

Patients, pg. 1063), a LVEF ≤ 35% (see, for example, Patients, pg. 1063), and/or

systolic heart failure (i.e. systolic dysfunction; see, for example, Perspectives, pg. 1063)

comprising administering LCZ696 (see, for example, the methods) in an escalation

titration from 100 to 200 mg b.i.d. (i.e. 100-200 mg twice a day; see, for example, the

Methods) in patients that were taking 10 mg enalapril (i.e. a low dose of the claimed

ACE inhibitor; see, for example, the Methods) but had stopped a day prior (see

particularly Randomization to double-blind treatment, pg. 1064).  McMurray et al.

discloses that the LCZ696 was titrated from 100 mg b.i.d. for 1–2 weeks and then the

dose was up-titrated to 200 mg b.i.d. (see, for example, LCZ696 active run-in period,

pg. 1064).  McMurray et al. further discloses that the patients were monitored for

NPC-VS-667-000000262

adverse events such as hyperkalemia, symptomatic hypotension, etc., and that the

titration of the drug can be adjusted to improve patient outcome (see particularly

Monitoring of safety and tolerability during double-blind period, pg. 1064), that the

patients can be treated with beta-blockers (see, for example, Patients, pg. 1063), and

that aldosterone antagonists should be considered (see, for example, Patients, pg.

1063).

McMurray et al. does not specifically disclose the titration of LCZ696 beginning

from 50 mg.

The clinical trial discloses titration of LCZ696 in heart failure patients with

reduced ejection fraction escalating 50 mg/100 mg/200 mg bid over 3-6 weeks (i.e. 50

mg for about 3 weeks and 100 mg for about 3 weeks; see, for example, Arms and

Interventions).

It would have been obvious to one of ordinary skill in the art to titrate LCZ696

escalating 50 mg/100 mg/200 mg bid for about 2-3 and 3 weeks, respectively, at the

time of the instant filing.

One of ordinary skill would have been motivated to start at 50 mg in the method

of McMurray et al. because those of skill in the art know that up-titrating some

medications improves patient compliance and patient outcome, and the prior art

teaches that the drug used by McMurray et al. was one of those drugs.  Further, the

prior art teaches preferred up-titration amounts and schedules, including the instantly

claimed up-titration scheme.  One of ordinary skill in the art would have treated heart

failure by administering LCZ696 in an escalating dose of 50 mg/100 mg/200 mg b.i.d.

for about 2-3 and 3 weeks, respectively, during the routine optimization of the method of

NPC-VS-667-000000263

McMurray et al., and would have done so with a reasonable expectation of success in

making an improved method for the treatment of heart failure.  Further, where the

general conditions of a claim are disclosed in the prior art, it is not inventive to discover

the optimum or workable ranges by routine experimentation; *In re Aller,* 220 F.2d 454,

456, 105 USPQ 233, 235 (CCPA 1955).  The normal desire of scientists or artisans to

improve upon what is already generally known provides the motivation to determine

where in a disclosed set of percentage ranges is the optimum combination of

percentages; *Peterson,* 315 F.3d at 1330, 65 USPQ2d at 1382.


### *Double Patenting*

The nonstatutory double patenting rejection is based on a judicially created

doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the

unjustified or improper timewise extension of the "right to exclude" granted by a patent

and to prevent possible harassment by multiple assignees. A nonstatutory double

patenting rejection is appropriate where the conflicting claims are not identical, but at

least one examined application claim is not patentably distinct from the reference

claim(s) because the examined application claim is either anticipated by, or would have

been obvious over, the reference claim(s). See, e.g., *In re Berg*, 140 F.3d 1428, 46

USPQ2d 1226 (Fed. Cir. 1998); *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed.

Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*,

686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619

(CCPA 1970); *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).

A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) or 1.321(d) may be used to overcome an actual or provisional rejection based on nonstatutory double patenting provided the reference application or patent either is shown to be commonly owned with the examined application, or claims an invention made as a result of activities undertaken within the scope of a joint research agreement. See MPEP § 717.02 for applications subject to examination under the first inventor to file provisions of the AIA as explained in MPEP § 2159.  See MPEP §§ 706.02(l)(1) - 706.02(l)(3) for applications not subject to examination under the first inventor to file provisions of the AIA. A terminal disclaimer must be signed in compliance with 37 CFR 1.321(b).

The USPTO Internet website contains terminal disclaimer forms which may be used. Please visit www.uspto.gov/patent/patents-forms. The filing date of the application in which the form is filed determines what form (e.g., PTO/SB/25, PTO/SB/26, PTO/AIA/25, or PTO/AIA/26) should be used. A web-based eTerminal Disclaimer may be filled out completely online using web-screens. An eTerminal Disclaimer that meets all requirements is auto-processed and approved immediately upon submission. For more information about eTerminal Disclaimers, refer to www.uspto.gov/patents/process/file/efs/guidance/eTD-info-I.jsp.

Claims 62-74 are provisionally rejected on the ground of nonstatutory double patenting as being unpatentable over claims 46-49 and 52-59 of copending Application No. 14/914,005 (reference application). Although the claims at issue are not identical, they are not patentably distinct from each other.  Both the instant and the copending claims are generally drawn to the treatment of patients with heart failure via the

NPC-VS-667-000000265

Application/Control Number: 15/572,399                                          Page 11
Art Unit: 1627

administration of LCZ696.  The subtle differences, e.g. the dosing, are result

determinate variables that those of skill in the art know to adjust, therefore the claims

are obvious variants of each other.

This is a provisional nonstatutory double patenting rejection because the

patentably indistinct claims have not in fact been patented.

### Conclusion

Claims 1-61 are cancelled.  Claims 62-74 are rejected.  No claim is allowed.

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to whose telephone number is (571)270-5753.  The

examiner can normally be reached on M-F 10-6.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, SREENIVASAN (PADDY) PADMANABHAN can be reached on (571)272-

0629.  The fax phone number for the organization where this application or proceeding

is assigned is 571-273-8300.

NPC-VS-667-000000266

Application/Control Number: 15/572,399                                    Page 12
Art Unit: 1627

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/JASON A DECK/
Examiner, Art Unit 1627

/SARAH PIHONAK/
Primary Examiner, Art Unit 1627

NPC-VS-667-000000267

# EXHIBIT 16

CASE PAT056901-US-PCT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

IN RE PCT NATIONAL STAGE APPLICATION OF

Rizkala, Adel Remond et al.

INTERNATIONAL APPLICATION NO: PCT/IB2016/052633

FILED: May 09, 2016

U.S. APPLICATION NO: Not Yet Known

35 USC §371 DATE: Herewith

FOR: SACUBITRIL-VALSARTAN DOSAGE REGIMEN FOR TREATING
      HEART FAILURE

Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

<u>PRELIMINARY AMENDMENT</u>

Sir:

Prior to the examination of the above-referenced patent application, please enter the following preliminary amendments.

**Amendments to the Specification** begin on page 2 of this paper.

**Amendments to the Claims** are reflected in the listing of the claims which begins on page 4 of this paper.

**Remarks/Arguments** begin on page 7 of this paper.

NPC-VS-667-000000125

<u>Amendments to the Specification:</u>

A copy of the abstract is herein provided on the following separate sheet.

NPC-VS-667-000000124

**Abstract:**

The present invention relates to sacubitril-valsartan dosage regimens for the treatment of heart failure in a patient.

NPC-VS-667-000000123

<u>Amendments to the Claims:</u>

This listing of claims will replace all prior versions, and listings, of claims in the application:

<u>Listing of Claims:</u>

Claim 1 – 61: (canceled)

62. A regimen for treating heart failure which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio, wherein said target dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter, and wherein

(i) the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient not taking an angiotensin-converting enzyme (ACE) inhibitor or an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan, or

(ii) the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking low doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

63. A regimen for treating heart failure according to claim 62, wherein said dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 3 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 3 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

64. A regimen for treating heart failure according to claim 62, wherein the lower dose of an ACEI or ARB is equivalent to < 10 mg of enalapril per day.

65. A regimen for treating heart failure according to claim 62, wherein said titration mitigates a risk selected from hypotension, hyperkalemia, and renal adverse events.

66. A regimen for treating heart failure according to claim 62, wherein the patient suffers from chronic systolic heart failure with reduced ejection fraction.

- 4 -

NPC-VS-667-000000120

67. A regimen for treating heart failure according to claim 62, wherein the patient is a human patient.

68. A regimen for treating heart failure according to claim 62, wherein the patient has at least one of the following characteristics

i) heart failure of NYHA class II, III or IV,

ii) an elevated plasma BNP or NT-proBNP level, preferably a plasma BNP ≥100 pg/mL (or NT-proBNP ≥400 pg/mL), more preferably a plasma BNP ≥150 pg/mL or NT-proBNP ≥600 pg/mL, and

iii) a reduced left ventricular ejection fraction (LVEF) of ≤40%, preferably ≤35%.

69. A regimen for treating heart failure according to claim 62, wherein the patient suffers from chronic heart failure classified as NYHA class II, III or IV and has systolic dysfunction, preferably wherein the patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

70. A regimen for treating heart failure according to claim 62, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696).

71. A regimen for treating heart failure according to claim 62, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of a pharmaceutical composition comprising

(i)     valsartan or a pharmaceutically acceptable salt thereof; and

(ii)    sacubitril or a pharmaceutically acceptable salt thereof.

72. A regimen for treating heart failure according to claim 62, wherein the patient receives a base treatment with a stable dose of a beta-blocker, an aldosterone antagonists, and/ or a diuretic.

73. A regimen for treating heart failure according to claim 62, wherein the patient has to stop taking the angiotensin receptor blocker (ARB) or the ACE inhibitor at least 36 hours prior to taking the medicament.

NPC-VS-667-000000121

74. A regimen for treating heart failure according to claim 62, wherein

a) the 50 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 24 mg sacubitril and 26 mg valsartan,

b) the 100 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 49 mg sacubitril and 51 mg valsartan, and

c) the 200 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 97 mg sacubitril and 103 mg valsartan.

NPC-VS-667-000000122

## REMARKS/ARGUMENTS

The foregoing amendments to the specification is to place the abstract on a separate sheet. The amendments to the claims are to place the claims in better form and remove multiple dependencies. No new matter has been added. Should the Examiner have any questions, please contact the undersigned attorney.

Respectfully submitted,

/David Kurlandsky/

Novartis Pharmaceuticals Corporation
One Health Plaza, Bldg. 101
East Hanover, NJ 07936
+18627785806

David Kurlandsky
Attorney for Applicant
Reg. No. 41,505

Date: November 6, 2017

~ 7 ~

NPC-VS-667-000000119

# EXHIBIT 17

www.medscape.com

# TITRATION: Two LCZ696 Dosing Regimens Appear Safe, Tolerable for Range of HFrEF Patients

Deborah Brauser

May 25, 2015

SEVILLE, SPAIN – Initiation and uptitration of the angiotensin-receptor/neprilysin inhibitor (ARNI) LCZ696 (Novartis) is safe and tolerable in a broad range of individuals with reduced-LVEF heart failure (HFrEF), including both in- and outpatients and those taking ACE inhibitor or angiotensin-receptor blocker (ARB), suggests new research[1].

TITRATION, which was created to provide additional and complementary data to the seminal PARADIGM-HF trial, showed that more than 76% of its nearly 500 participants were able to achieve and maintain the study drug at a target dose of 200 mg twice daily for 12 weeks.

"And they were able to do this regardless of uptitration regimen or [renin-angiotensin system inhibitor] RASi stratum," Dr Michele Senni (Papa Giovanni Hospital, Bergamo, Italy) told attendees at the Heart Failure Congress 2015 of the European Society of Cardiology Heart Failure Association. "Also, the target dose was achieved even in patients requiring dose interruptions," he said, adding that rates of serious adverse events were even lower for participants in the current study than those in PARADIGM.

Senni noted to heartwire from Medscape that TITRATION was not an event-driven trial, but one designed to provide information for everyday clinical practice.

"I think this study had an important role to perform, as we included additional patient groups," he said. "It let us look at expanding the use of this drug beyond the data that we had."

**Real-World Assessments**



Dr Michele Senni

PARADIGM-HF showed that, compared with enalapril, LCZ696 significantly reduced the risks of CV death and hospitalization due to heart failure. Senni noted that, based on these results, he and his team became interested in testing different uptitration regimens for the study drug.

A total of 498 patients "seen in practice" with an LVEF of 35% or lower were included in the analysis. At screening, inpatients who were taking an ACE inhibitor or ARB needed to be on a tolerated dose. Outpatients needed to be naive for these drugs at least 4 weeks prior to screening or on a stable dose at least 2 weeks prior to screening.

After a 5-day open-label run-in at 50 mg twice daily, all participants entered an 11-week randomization period and received LCZ696 titrated up to 200 mg twice daily over 3 weeks (condensed group, n=247) or 6 weeks (conservative group, n=251).

Randomized patients were also stratified based on RASi use at screening, with the high-stratum group using >10 mg total daily dose of enalapril, >160 mg of valsartan, or equivalent doses of other ARBs/ACE inhibitors.

Primary end points included the following prespecified adverse events in the condensed or conservative groups, respectively: symptomatic hypotension (9.7% vs 8.4%), hyperkalemia (7.7% vs 4.4%), renal dysfunction (7.3% vs 7.6%), and angioedema (0% vs 0.8%). None of these between-group differences were statistically significant.

The other primary end points were lab assessments of systolic blood pressure <95 mm Hg (8.9% vs 5.2%), serum potassium >5.5 mmol/L (7.3% vs 4%) and $\geq$6.0 mmol/L (1.2% vs 0.4%), and serum creatinine >3.0 mg/dL (0.4% vs 0%) and doubling from baseline levels (0.8% vs 0.4%).

NPC-VS-667-000000654

**Several Study Limitations**

Secondary end points included treatment success, defined as maintaining 200 mg of the study drug "without any dose interruption or downtitration over 12 weeks" and tolerating the target dose for at least 2 weeks "leading to study completion, regardless of previous dose interruption or downtitration." A total of 75.9% of randomized patients achieved treatment success and 79.7% achieved tolerability.

When examining these two outcomes in the stratified subgroups, the only significant difference the researchers found was treatment success in those with low RASi use (achieved by 73.6% of the condensed group and 84.9% of the conservative group, $P$=0.03). High RASi use was associated with similar treatment success in both groups (82.6% vs 83.8%, respectively). There was no difference between the groups for tolerability based on high or low RASi use, with percentages ranging between 80% and 88%.

"I think the take-home message is that this is a safe drug that can be titrated if you can adjust based on low or high RASi strata. If low RASi, then you should probably go less quickly to uptitration," said Senni.

Study limitations he cited included the open-label design of the run-in period, the limited number of inpatients (around 11%) and those naive to ACE inhibitor/ARB at baseline (around 7%), and the absence of an active comparator arm.

Assigned discussant Dr Giuseppe MC Rosano (Center for Clinical and Basic Research, Rome, Italy) also noted concern that patients in the condensed group had a trend toward a higher incidence of hyperkalemia and that there were no data on cause of discontinuations, "which should be taken into account."

On the plus side, Rosano said that the high RAS results support the rationale for starting LCZ696 "as per PARADIGM protocol" and showed a good handling of the drug in clinical practice. However, "safety of fast uptitration has to be evaluated long term and in a larger patient population," he said, adding that not enough data were provided to support use of the medication in ACE inhibitor/ARB-naive patients and that tolerability was overestimated because nonadverse-event discontinuations were excluded.

"I think [while] waiting to have LCZ696 on the market, we will see more testing. But for the time being, I think we should use it [in patients with CHF] according to PARADIGM unless there's a compelling reason for a faster uptitration," he concluded.

*Senni reported receiving compensation for serving as a consultant or speaker for and/or his institution has received research support from Novartis and Abbott Vascular. Rosano reported no relevant financial disclosures.*

References

1. Senni M, Reyes A, Majercak, I, et al. Results of the TITRATION study: A 12-week, multicentre, randomized, double-blind, safety evaluation of a 3- versus 6-week up-titration regimen of LCZ696 in patients with HFrEF. Heart Failure Congress; May 23, 2015; Seville, Spain. Presentation 44.

Heartwire from Medscape © 2015  Medscape, LLC

Cite this: TITRATION: Two LCZ696 Dosing Regimens Appear Safe, Tolerable for Range of HFrEF Patients - *Medscape* - May 25, 2015.

NPC-VS-667-000000655

# EXHIBIT 18

ORIGINAL PAPER

# LCZ696, a First-in-Class Angiotensin Receptor-Neprilysin Inhibitor: The First Clinical Experience in Patients With Severe Hypertension

Kazuomi Kario, MD, PhD;[1] Yuko Tamaki;[2] Naoko Okino;[2] Hiromi Gotou;[2] Min Zhu, MD;[3] Jack Zhang, MD, PhD[4]

From the Jichi Medical University School of Medicine, Tochigi, Japan;[1] Clinical Development, Novartis Pharma KK, Tokyo, Japan;[2] Beijing Novartis Pharma Co. Ltd, Beijing, China;[3] and Novartis Pharmaceuticals Corporation, East Hanover, NJ[4]

The safety of LCZ696, a novel angiotensin receptor-neprilysin inhibitor, was evaluated for the first time in patients with severe hypertension in this 8-week, multicenter, open-label study. Thirty-five Japanese patients with either office systolic blood pressure (SBP) ≥180 mm Hg or diastolic blood pressure (DBP) ≥110 mm Hg received LCZ696 200 mg. If blood pressure was uncontrolled, the LCZ696 dose was increased to 400 mg after 2 weeks (if there were no safety concerns; n=32), followed by an optional addition of another antihypertensive drug (except angiotensin receptor blocker and angiotensin-converting enzyme inhibitor) after 4 weeks (n=21). Reductions in office SBP/DBP (baseline, 173.4 mm Hg/112.4 mm Hg) and pulse pressure (baseline, 61.0 mm Hg) at week 8 were 35.3/22.1 mm Hg and 13.2 mm Hg, respectively. The overall incidence of adverse events was 48.6% with no reports of dizziness, hypotension, or angioedema. The LCZ696-based regimen was generally well-tolerated and could present a treatment option for severe hypertension in Asian patients especially in reducing SBP and pulse pressure. *J Clin Hypertens (Greenwich).* 2016;18:308–314. © 2015 Wiley Periodicals, Inc.

Severe hypertension (grade 3; office systolic blood pressure [SBP] ≥180 mm Hg or office diastolic blood pressure [DBP] ≥110 mm Hg) is associated with a high risk of hypertensive emergencies and cardiovascular (CV) risk.[1,2] CV mortality was reported to increase exponentially with increasing levels of blood pressure (BP) from ≥115/75 mm Hg.[3]

Early, effective, and rapid BP control in patients with severe hypertension is needed to significantly reduce CV risk and long-term adverse clinical outcomes.[4] Antihypertensive agents with favorable efficacy and safety profiles are required for the treatment of severe hypertension. Guidelines recommend combination therapy for the treatment of severe hypertension, initially a thiazide-type diuretic with an angiotensin-converting enzyme (ACE) inhibitor, an angiotensin receptor blocker (ARB), a β-blocker, or a calcium channel blocker (CCB).[5] However, treatment of severe hypertension has been shown to be inadequate, with a large proportion of patients achieving BP control,[6] which might be the result of a lack of lifestyle modifications or initiation of antihypertensive drug at inadequate doses or drug combinations.

Asian patients show several typical characteristics with respect to hypertension and BP-lowering effect of drugs.[6] A steeper association between BP and risk of stroke has been seen in Asians compared with Cau-

casians.[7] In addition, high salt intake and genetically high salt-sensitivity have been reported in Japanese.[8] The effect of high salt intake would be greater in Asian patients with hypertension, considering the increasing prevalence of obesity and metabolic syndrome, which, in turn, are known to increase salt-sensitivity.[9,10] Thus, there is a possibility that high salt intake and increased salt-sensitivity could be a cause of severe hypertension in Asians.

Monotherapy with renin-angiotensin-aldosterone system (RAAS) inhibitors was found to be less effective in providing BP reductions than CCBs in Asian patients who tend to have high salt intake and salt-sensitivity.[11,12] An antihypertensive drug that provides neprilysin inhibition with simultaneous RAAS inhibition may offer better target organ protection compared with other pharmacotherapies.

LCZ696 acts as an angiotensin receptor-neprilysin inhibitor (ARNI). After ingestion, LCZ696 delivers systemic exposure to sacubitril (AHU377), a neprilysin inhibitor pro-drug, and valsartan, an ARB. Subsequently, sacubitril gets rapidly metabolized by non-specific esterases[13] to the active neprilysin inhibitor LBQ657.

Neprilysin inhibitors enhance levels of active natriuretic peptides that confer protection to cardiac, vascular, and renal systems by vasodilation, natriuresis, diuresis, RAAS inhibition, sympathetic tone reduction, antiproliferative effects, and antihypertrophic effects.[14] Thus, enhancing natriuretic peptide levels present a potentially important therapeutic option for the treatment of hypertension and heart failure.[15] The significance of neprilysin inhibition with simultaneous RAAS inhibition would be particularly important in Asians because of their high salt intake and higher salt-sensitivity.

Clinical trial registry number: NCT01646671.

Address for correspondence: Kazuomi Kario, Division of Cardiovascular Medicine, Department of Medicine, Jichi Medical University School of Medicine, 3311-1, Yakushiji, Shimotsuke, Tochigi 329-0498, Japan
E-mail: kkario@jichi.ac.jp

Manuscript received: May 7, 2015; revised: July 15, 2015; accepted: July 16, 2015
DOI: 10.1111/jch.12667

NPC-VS-667-000000078

LCZ696 has demonstrated significant dose-dependent reductions in office and ambulatory BP compared with valsartan or placebo, in particular, SBP and pulse pressure (PP) reductions, and was found to be generally well tolerated in Caucasians and Asian patients with mild to moderate hypertension.[16,17] In patients with heart failure in the Prospective Comparison of Angiotensin Receptor-Neprilysin Inhibitor With Angiotensin-Converting Enzyme Inhibitor to Determine Impact on Global Mortality and Morbidity in Heart Failure Trial (PARADIGM-HF), LCZ696 was superior in reducing the risk of CV death and HF hospitalization compared with the ACE inhibitor, enalapril.[18] This is the first study that aimed to evaluate the safety and efficacy of LCZ696 in Asian patients with severe hypertension.

## MATERIALS AND METHODS

### Patients

Men and women of Japanese origin, aged 20 years and older, diagnosed with severe hypertension, and either untreated or treated with antihypertensive agents for during 4 weeks prior to screening were enrolled. Untreated patients (newly diagnosed or not receiving antihypertensive agents during 4 weeks prior to screening) who had office SBP ≥180 mm Hg and <220 mm Hg or office DBP ≥110 mm Hg and <120 mm Hg at screening and after the no-treatment run-in period were eligible. Treated patients who had office SBP ≥180 mm Hg and <220 mm Hg or office DBP ≥110 mm Hg and <120 mm Hg after the no-treatment run-in period were eligible.

Other key exclusion criteria included history of angioedema or a secondary form of hypertension; history of significant CV/cerebrovascular disease, active liver disease, renal dialysis, or renal transplantation; previous or current diagnosis of heart failure; diabetes mellitus not well controlled; malignancy; and any significant laboratory abnormalities at screening such as serum potassium >5.5 mmol/L, alanine aminotransferase or aspartate aminotransferase >2 times the upper limit of the normal range, and serum creatinine >1.5 times the upper limit of the normal range.

### Study Design

This was an 8-week, multicenter, open-label, efficacy and safety trial. The study protocol was reviewed and approved by an independent institutional review board at each center (Clinicaltrials.gov NCT01646671). Written informed consent was obtained from each patient before participation in any of the study procedures. The study was conducted in accordance with the International Conference on Harmonization Guidelines for Good Clinical Practice, the Declaration of Helsinki, and other applicable local regulations.

After screening, eligible patients had to withdraw their existing antihypertensive medication during a 1- to 4-week run-in period. However, if required for the safety of the patient, antihypertensive medications

(other than ARBs, ACE inhibitors, or fixed combinations containing an ARB/ACE inhibitor) were allowed to continue during the study, at the discretion of the investigator.

Eligible patients entered the treatment period as early as 1 week after beginning the run-in period. Treated patients, if not qualified after 1 week, continued the run-in period for an additional 3 weeks to determine their eligibility, after which ineligible patients were excluded. Patients were to be discontinued if confirmed to have office SBP ≥220 mm Hg and/or DBP ≥120 mm Hg at any time during the study.

All eligible patients received an initial dose of LCZ696 200 mg, which was uptitrated to 400 mg for patients who did not achieve an office DBP <100 mm Hg and SBP <160 mm Hg at 2 weeks or an office DBP <90 mm Hg and SBP <140 mm Hg at or after 4 weeks and had no safety concerns. For patients who did not achieve an office DBP <90 mm Hg and SBP <140 mm Hg with LCZ696 400 mg, addition of other antihypertensive agents (except an ARB or an ACE inhibitor or fixed combinations containing ARBs or ACE inhibitors) or increasing the dose of concomitant antihypertensive agent(s) as per the package insert(s) and investigator's opinion was allowed (Figure 1).

Patients with signs or symptoms of clinically significant hypotension, office DBP <55 mm Hg, or SBP <100 mm Hg at any time during the study were evaluated by the investigator and the study treatment was continued if clinically permissible. Laboratory abnormalities such as serum potassium >6.0 mEq/L, serum creatinine >3.0 mg/dL, and clinically significant hyponatremia (serum sodium <130 mEq/L with/without relevant symptoms or <135 mEq/L associated with persistent symptoms) were evaluated by the investigator and the study treatment was continued if clinically permissible.

### Study Assessments

BP was measured using an automated BP device (Omron BP monitor HEM-7080IC, OMRON HEALTHCARE Co., Ltd, Kyoto, Japan) with an appropriately sized cuff. Sitting and standing BP measurements were performed at trough (immediately prior to dosing at the clinic). An average of four sitting BP measurements (office BP), which were obtained with a 2-minute interval and fully deflated cuff between measurements, was considered for efficacy. PP was calculated as the difference between office SBP and DBP measurements.

Change in office SBP and DBP from baseline to the end of study (week 8), the proportion of patients achieving BP control (office SBP <140 mm Hg and DBP <90 mm Hg), SBP response (office SBP <140 mm Hg or ≥20 mm Hg reduction from baseline), and DBP response (office DBP <90 mm Hg or ≥10 mm Hg reduction from baseline) were assessed.

Safety assessments (primary objective) included monitoring and recording of all adverse events (AEs), serious

NPC-VS-667-000000079

LCZ696 in Asian Patients With Severe Hypertension | Kario et al.



**FIGURE 1.** Study design.

AEs (SAEs), discontinuations because of AEs, and other notable laboratory abnormalities. As a part of the safety assessments, physical examination, measurement of vital signs, electrocardiography, and hematology, blood chemistry, and urine examinations were performed at regular intervals during the study period.

### Statistical Analyses and Sample Size

A total of 48 enrolled patients were planned to achieve a sample size of 30 patients completing the 8-week treatment period, assuming a dropout rate of 30% prior to and 10% during the treatment period. This sample size was considered sufficient to evaluate overall safety and tolerability and was estimated to provide 79% chance to observe at least one AE for an AE with an underlying incidence of 5%.

Safety analyses were performed in all patients who received at least one dose of LCZ696, while efficacy analyses were performed in the full analysis set comprising all patients who entered the treatment phase. Descriptive statistics are provided for patient demographic characteristics and all safety and efficacy variables. Correlation between baseline and change from baseline to week 8 in PP, SBP, and DBP was tested.

### RESULTS

#### Patient Disposition and Baseline Characteristics

Of the 38 patients who entered the run-in period, 35 entered and completed the treatment period. Three patients who did not meet the inclusion criteria discon-

**TABLE I.** Demographic and Baseline Characteristics

| Characteristic at Study Entry | Total (N=35) |
|---|---|
| Age, y, No. (%) | 51.3 (9.5) |
| <65 y | 31 (88.6) |
| ≥65 y | 4 (11.4) |
| Sex, No. (%) | |
| Male | 33 (94.3) |
| Female | 2 (5.7) |
| Japanese ethnicity, No. (%) | 35 (100.0) |
| Duration of hypertension, y | 9.3 (9.1) |
| Body mass index, kg/m² | 27.3 (4.1) |
| Office BP, mm Hg | |
| SBP | 173.4 (12.7) |
| DBP | 112.4 (6.8) |
| PP | 61.0 (14.4) |
| eGFR group, No. (%) | |
| 30 ≤eGFR <60 mL/min/1.73 m² | 10 (28.6) |
| 60 ≤eGFR <90 mL/min/1.73 m² | 25 (71.4) |
| Diabetes, No. (%) | 2 (5.7) |
| Smoking status, No. (%) | 14 (40.0) |
| Never | 8 (22.9) |
| Current | 13 (37.1) |
| Former | 5.4 |
| Cholesterol, mmol/L | 2.4 |
| Triglycerides, mmol/L | |

Abbreviations: BP, blood pressure; DBP, diastolic blood pressure; eGFR, estimated glomerular filtration rate; PP, pulse pressure; SBP, systolic blood pressure. Data are presented as mean (standard deviation) unless otherwise indicated.

NPC-VS-667-000000080

tinued the study during the run-in period. Demographic and baseline characteristics are summarized in Table I. The mean age of the patients was 51.3 years and 11.4% of the study population were 65 years and older (elderly). The majority of patients were men (94.3%) and the mean duration of hypertension was 9.3 years. The mean office SBP and DBP was 173.4 mm Hg and 112.4 mm Hg, respectively. Baseline office SBP ≥180 mm Hg and DBP ≥110 mm Hg was reported in 14 and 31 patients, respectively. Of the five patients who continued the background antihypertensive treatment, two received CCBs, two received diuretics, and one received a β-blocker.

Of the 35 patients who completed the study, 32 had their dose uptitrated from 200 mg to 400 mg; of these, 21 (60%) patients received add-on antihypertensive agents such as CCBs (n=17), diuretics (n=3), or β-blockers (n=1) to achieve BP target during the study.

### Efficacy

Clinically significant reductions in office SBP and DBP were observed with the LCZ696-based regimen from baseline to the week 8 endpoint (Figure 2). BP reductions with LCZ696 were observed as early as week 1 (18.7/10.3 mm Hg) with the greatest reductions observed at the week 8 endpoint (35.3/22.1 mm Hg) (Figure 3). At week 4, which no additional antihypertensive therapies were added, LCZ696 provided a reduction of 23.1/14.0 mm Hg in office BP. The patients taking the LCZ696-based regimen showed a progressive reduction in BP over the treatment duration.

A reduction of 8.3±10.1 mm Hg (mean±standard deviation) in office PP was observed at week 1, which was further reduced by 8.2±10.4 mm Hg, 9.2±10.6 mm Hg, and 10.1±11.1 mm Hg at weeks 2, 4, and 6, respectively, with the greatest mean reduction observed at the week 8 endpoint (13.2±12.6 mm Hg) from baseline (Figure 3). Patients following the

LCZ696-based regimen demonstrated favorable reductions in office PP from treatment initiation, which persisted until the end of the study. BP control was observed in 40% of patients at the week 8 endpoint. SBP and DBP response were achieved in 85.7% and 100% of patients, respectively, by the week 8 endpoint.

### Safety and Tolerability

LCZ696 was generally tolerated, with 17 (48.6%) patients reporting at least one AE during the treatment period. Nasopharyngitis, increase in blood creatine phosphokinase and hyperuricemia were reported in more than one patient (Table II). Dizziness, hypotension, or other low BP-related signs and symptoms were not observed. The proportion of patients who had orthostatic BP changes (defined as a decrease of ≥20 mm Hg in SBP or a decrease of ≥10 mm Hg in DBP when a patient moves from a sitting position to a standing position) at any visit after baseline was the same as that at baseline (8.6%) for total patients. There were no reports of angioedema, deaths, or discontinuations caused by AEs during this study.

All AEs were mild in severity except two moderate AEs. An increase in blood bilirubin in one patient and hyperuricemia in one patient were considered to be related to the study drug. Increases in aspartate aminotransferase and alanine aminotransferase to >8 times the upper limit of normal were reported in one patient on day 10, which was considered an SAE. However, these values returned to normal levels after temporary cessation of LCZ696 and did not recur after resuming LCZ696. Incidence of serum potassium >5.5 mmol/L was not observed and serum potassium <3.5 mmol/L was reported in two (5.7%) patients who recovered during the treatment period.

### DISCUSSION

While a strong BP-lowering effect is essential for the treatment of hypertension, patients with severe hypertension constitute a special challenge to antihypertensive treatment, as the treatment needs to be effective without causing any safety concerns including those related to the excessive BP-lowering such as hypotension. This study indicates that an LCZ696-based regimen could be effective in lowering BP and generally well tolerated in this difficult to treat population.

Substantial evidence suggests that pharmacotherapy, which reduces BP to <140/80 mm Hg, is associated with a significant reduction in CV events.[9] Each difference in SBP/DBP by 20/10 mm Hg has been shown to be associated with more than a two-fold increase in CV death rates.[3] Furthermore, a steep association between BP and hemorrhagic stroke was observed, more so in Asians than Caucasians.[7] A recent meta-analysis reported a clear benefit of reduction in BP to <140/80 mm Hg in Asian patients with hypertension wherein the intervention group, compared with the reference group, showed a greater reduction in composite CV disease events (~27%), myocardial infarction (~21%),



**FIGURE 2.** Time course of reduction in office systolic blood pressure (SBP) and diastolic blood pressure (DBP) with the LCZ696-based regimen. Error bars represent standard deviation.

NPC-VS-667-000000081



**FIGURE 3.** Mean change in office systolic blood pressure (SBP), diastolic blood pressure (DBP), and pulse pressure (PP) from baseline to end of study with the LCZ696-based regimen. Error bars represent standard deviation.

**TABLE II.** Safety and Tolerability Profile of LCZ696

| Adverse Event (Preferred Term) | Total (N=35) |
|---|---|
| Any adverse events | 17 (48.6) |
| Nasopharyngitis | 6 (17.1) |
| Blood creatine phosphokinase increased | 3 (8.6) |
| Hyperuricemia | 2 (5.7) |
| Alanine aminotransferase increased | 1 (2.9) |
| Aspartate aminotransferase increased | 1 (2.9) |
| Blood alkaline phosphatase increased | 1 (2.9) |
| Blood bilirubin increased | 1 (2.9) |
| Cystitis | 1 (2.9) |
| Dyslipidemia | 1 (2.9) |
| Gamma-glutamyltransferase increased | 1 (2.9) |
| Gout | 1 (2.9) |
| Headache | 1 (2.9) |
| Hyperlipidemia | 1 (2.9) |
| Pharyngitis | 1 (2.9) |
| Protein urine present | 1 (2.9) |
| Clinically notable changes in laboratory values | |
| Potassium | |
| >6.0 mmol/L | 0 (0.0) |
| >5.5 mmol/L | 0 (0.0) |
| <3.5 mmol/L | 2 (5.7) |
| Creatinine | |
| >176.8 µmol/L | 0 (0.0) |
| BUN | |
| >14.28 mmol/L | 0 (0.0) |
| Sodium | |
| <130 mmol/L | 0 (0.0) |

Abbreviation: BUN, serum urea nitrogen. Values are presented as number (percentage).

emphasizes the importance of BP control in protecting target organs including cardiac, renal, vascular, and metabolic systems. LCZ696 provides a novel approach to neurohormonal modulation by simultaneous neprilysin inhibition and angiotensin receptor blockade. In the current study, an LCZ696-based regimen demonstrated a clinically significant reduction in office SBP/DBP (35.3/22.1 mm Hg) by the end of the study period in Asian patients with severe hypertension. By 8 weeks, BP control (DBP <90 mm Hg and SBP <140 mm Hg) was achieved in 40% of patients with a good SBP response rate of 85.7% and a DBP response rate of 100%.

PP is an independent predictor of CV events such as myocardial infarction, congestive heart failure, or CV death in hypertensive and healthy populations.[20] The Framingham Heart Study suggests an association between elevated PP and onset of CV events, reporting that an elevation in PP by 10 mm Hg increased the onset of CV events by 23%.[21] The LCZ696-based regimen demonstrated a mean reduction of 13.2 mm Hg in office PP by the end of this study. Previously, Ruilope and colleagues[16] and Kario and colleagues[17] reported significant reductions in 24-hour ambulatory and office PP with LCZ696 compared with valsartan and placebo.

The majority of antihypertensive therapies used by patients as continued background therapy or as add-on therapy were CCBs followed by diuretics. The beneficial effects of the combination of an RAAS inhibitor (ACE inhibitors, ARBs, or direct renin inhibitors) with a CCB or a diuretic in patients with moderate to severe hypertension are well recognized.[22,23]

The safety profile of LCZ696 reported in this study was favorable and in line with that reported in earlier studies with LCZ696 in Caucasians and Asians with mild to moderate hypertension[16,17] and healthy

stroke (−29%), and CV disease mortality (−19%).[19] This demonstrates that severe hypertension poses a greater risk than mild or moderate hypertension and

NPC-VS-667-000000082

subjects.[15] No specific drug-related event was seen in patients with severe hypertension. In this study, AEs associated with excessive BP-lowering such as dizziness, hypotension, or syncope, or specific safety issues related to renal function impairment and electrolyte dysfunction were not observed. Nasopharyngitis was the most frequently reported AE. All nasopharyngitis events were mild in severity and were not suspected to be related to the study drug. The incidence of nasopharyngitis was similar to that in a study conducted in Japanese patients with hypertension and renal dysfunction.[24] With regard to the liver enzyme elevation, the investigator stated that the patient who experienced SAEs had a concurrent condition of alcohol allergy (reported as such by the investigator) and the patient consumed beer 2 days before day 10; therefore, an effect of drinking alcohol could not be ruled out. However, the reported increase in aspartate aminotransferase and alanine aminotransferase (to >8 times the upper limit of normal) returned to normal levels after temporary cessation of LCZ696 and did not recur after resuming LCZ696. AEs that are frequently reported with ACE inhibitors[13,25,26] and the known effects of thiazides[27] were not observed in this study.

In this study, LCZ696 was generally safe and achieved a clinically meaningful BP reduction in Japanese patients with severe hypertension. LCZ696 enhances natriuretic peptide levels and may be an attractive treatment option, particularly in Asian patients who generally have high salt-sensitivity and salt intake. This may also confer protection to the cardiac, vascular, and renal systems beyond BP-lowering.[15,16]

## STUDY LIMITATIONS

The open-label nature, small sample size, lack of active comparator, and short study duration are the main limitations of this study. Further long-term and randomized clinical trials are warranted for better understanding of the efficacy and safety profiles of LCZ696, particularly in patients with severe hypertensive. In addition, monitoring ambulatory PP and central BP, and measurement of arterial stiffness in future studies add value to its potential in offering CV protection. In this study, patients received increasing doses of LCZ696 or other add-on antihypertensive agents only if they did not respond to a low dose of LCZ696 (200 mg) during the treatment period. Hence, the BP-lowering efficacy of different doses could not be compared.

## CONCLUSIONS

This 8-week study indicates that LCZ696, a first-in-class ARNI, is generally safe and effective, particularly for SBP and PP reductions, in the treatment of severe hypertension in Asian patients.

*Acknowledgments: We thank all investigators and study coordinators at the participating centers and all patients who participated in the study. We also thank Hyosung Kim and Sandra Thompson (who were employees of Novartis at the time of study completion) for statistical analysis and critical review of the manuscript, and Dr Krishna Swetha, Novartis Healthcare Pvt. Ltd., India, for medical writing support.*

*Disclosures: This study was supported by Novartis Pharma AG. K.K. received a research grant from Novartis, Teijin, and Takeda, a consultant fee from Novartis, and is on the speakers bureau of Takeda, Mochida, and Daiichi Sankyo. Y.T., H.G., M.Z., N.O., and J.Z. are employees of Novartis Pharmaceutical Corporation.*

## References

1. Preston RA, Baltodano NM, Cienki J, Materson BJ. Clinical presentation and management of patients with uncontrolled, severe hypertension: results from a public teaching hospital. *J Hum Hypertens*. 1999;13:249–255.

2. Zampaglione B, Pascale C, Marchisio M, Cavallo-Perin P. Hypertensive urgencies and emergencies. Prevalence and clinical presentation. *Hypertension*. 1996;27:144–147.

3. Lewington S, Clarke R, Qizilbash N, et al; Prospective Studies Collaboration. Age-specific relevance of usual blood pressure to vascular mortality: a meta-analysis of individual data for one million adults in 61 prospective studies. *Lancet*. 2002;360:1903–1913.

4. Franklin SS, Neutel JM. Initial combination therapy for rapid and effective control of moderate and severe hypertension. *J Hum Hypertens*. 2009;23:4–11.

5. Chobanian AV, Bakris GL, Black HR, et al. The Seventh Report of the Joint National Committee on Prevention, Detection, Evaluation, and Treatment of High Blood Pressure: the JNC 7 report. *JAMA*. 2003;289:2560–2572.

6. Kario K. Proposal of a new strategy for ambulatory blood pressure profile-based management of resistant hypertension in the era of renal denervation. *Hypertens Res*. 2013;36:478–484.

7. Perkovic V, Huxley R, Wu Y, et al. The burden of blood pressure-related disease: a neglected priority for global health. *Hypertension*. 2007;50:991–997.

8. Katsuya T, Ishikawa K, Sugimoto K, et al. Salt sensitivity of Japanese from the viewpoint of gene polymorphism. *Hypertens Res*. 2003;26:521–525.

9. Chen J, Gu D, Huang J, et al. Metabolic syndrome and salt sensitivity of blood pressure in non-diabetic people in China: a dietary intervention study. *Lancet*. 2009;373:829–835.

10. Usu T, Kimura G, Yamauchi A, et al. Enhanced sodium sensitivity and disturbed circadian rhythm of blood pressure in essential hypertension. *J Hypertens*. 2006;24:1627–1632.

11. Eguchi K, Kario K, Shimada K. Effects of long-acting ACE inhibitor (temocapril) and long-acting Ca channel blocker (amlodipine) on 24-h ambulatory BP in elderly hypertensive patients. *J Hum Hypertens*. 2001;15:643–648.

12. Wang JG, Kario K, Lau T, et al. Use of dihydropyridine calcium channel blockers in the management of hypertension in Eastern Asians: a scientific statement from the Asian Pacific Heart Association. *Hypertens Res*. 2011;34:423–430.

13. Gu J, Noe A, Chandra P, et al. Pharmacokinetics and pharmacodynamics of LCZ696, a novel dual-acting angiotensin receptor-neprilysin inhibitor (ARNi). *J Clin Pharmacol*. 2010;50:401–414.

14. Pankey KN. Biology of natriuretic peptides and their receptors. *Peptides*. 2005;26:901–932.

15. Mangiafico S, Costello-Boerrigter LC, Andersen IA, et al. Neutral endopeptidase inhibition and the natriuretic peptide system: an evolving strategy in cardiovascular therapeutics. *Eur Heart J*. 2013;34:886–893c.

16. Kario K, Sun N, Chiang FT, et al. Efficacy and safety of LCZ696, a first-in-class angiotensin receptor neprilysin inhibitor, in Asian patients with hypertension: a randomized, double-blind, placebo-controlled study. *Hypertension*. 2014;63:698–705.

17. Ruilope LM, Dukat A, Bohm M, et al. Blood-pressure reduction with LCZ696, a novel dual-acting inhibitor of the angiotensin II receptor and neprilysin: a randomised, double-blind, placebo-controlled, active comparator study. *Lancet*. 2010;375:1255–1266.

18. McMurray JJ, Packer M, Desai AS, et al. Angiotensin-neprilysin inhibition versus enalapril in heart failure. *N Engl J Med*. 2014;371:993–1004.

19. Yano Y, Briasoulis A, Bakris GL, et al. Effects of antihypertensive treatment in Asian populations: a meta-analysis of prospective randomized controlled studies (CARdiovascular protectioN group in Asia: CARNA). *J Am Soc Hypertens*. 2014;8:103–116.

NPC-VS-667-000000083

LCZ696 in Asian Patients With Severe Hypertension  |  Kario et al.

20. Safar ME. Systolic blood pressure, pulse pressure and arterial stiffness as cardiovascular risk factors. *Curr Opin Nephrol Hypertens.* 2001;10:257–261.

21. Franklin SS, Larson MG, Khan SA, et al. Does the relation of blood pressure to coronary heart disease risk change with aging? The Framingham Heart Study. *Circulation.* 2001;103:1245–1248.

22. 2013 Practice guidelines for the management of arterial hypertension of the European Society of Hypertension (ESH) and the European Society of Cardiology (ESC): ESH/ESC Task Force for the Management of Arterial Hypertension. *J Hypertens.* 2013;31:1925–1938.

23. Ogihara T, Kikuchi K, Matsuoka H, et al. The Japanese Society of Hypertension Guidelines for the Management of Hypertension (JSH 2009). *Hypertens Res.* 2009;32:3–107.

24. Ito S, Satoh M, Tamaki Y, et al. Safety and efficacy of LCZ696, a first-in-class angiotensin receptor neprilysin inhibitor, in Japanese patients with hypertension and renal dysfunction. *Hypertens Res.* 2015;38:269–275.

25. Volpe M, Miele C, Haag U. Efficacy and safety of a stepped-care regimen using olmesartan medoxomil, amlodipine and hydrochlorothiazide in patients with moderate-to-severe hypertension: an open-label, long-term study. *Clin Drug Invest.* 2009;29:381–391.

26. Sica DA. Angiotensin-converting enzyme inhibitors side effects: physiologic and non-physiologic considerations. *J Clin Hypertens (Greenwich).* 2004;6:410–416.

27. Lacourcière Y, Taddei S, Konis G, et al. Clinic and ambulatory blood pressure lowering effect of aliskiren/amlodipine/hydrochlorothiazide combination in patients with moderate-to-severe hypertension: a randomised active-controlled trial. *J Hypertens.* 2012;30:2047–2055.

NPC-VS-667-000000084

# EXHIBIT 19

# ClinicalTrials.gov

A service of the U.S. National Institutes of Health

Trial record 1 of 1 for:   NCT01922089

Previous Study | Return to List | Next Study

## Safety and Tolerability of Initiating LCZ696 in Heart Failure Patients (TITRATION)

This study has been completed.

**Sponsor:**
Novartis Pharmaceuticals

**Information provided by (Responsible Party):**
Novartis ( Novartis Pharmaceuticals )

**ClinicalTrials.gov Identifier:**
NCT01922089

First received: August 12, 2013
Last updated: September 16, 2015
Last verified: September 2015
History of Changes

| Full Text View | Tabular View | Study Results | Disclaimer | How to Read a Study Record |

## ➤ Purpose

The purpose of this study is to assess the safety and tolerability of initiating LCZ696 in heart failure patients with reduced ejection fraction (HF-rEF) using conservative (reaching target dose over 6 weeks) and condensed (reaching target dose over 3 weeks) up-titration regimens.

| Condition | Intervention | Phase |
|---|---|---|
| Heart Failure With Reduced Ejection Fraction | Drug: LCZ696 | Phase 2 |

**Study Type:** Interventional
**Study Design:** Allocation: Randomized
Endpoint Classification: Safety/Efficacy Study
Intervention Model: Parallel Assignment
Masking: Double Blind (Subject, Caregiver, Investigator, Outcomes Assessor)
Primary Purpose: Treatment

**Official Title:** A Multicenter, Randomized, Double-blind, Parallel Group Study to Assess the Safety and Tolerability of Initiating LCZ696 in Heart Failure Patients Comparing Two Titration Regimens.

**Resource links provided by NLM:**

MedlinePlus related topics:   Heart Failure

U.S. FDA Resources

**Further study details as provided by Novartis:**

**Primary Outcome Measures:**

* Number of Participants Experiencing Hypotension, Renal Dysfunction, Hyperkalemia and Angioedema and by Renin-Angiotensin-Aldosterone System (RAAS) Stratum (High vs. Low ) [ Time Frame: 12 weeks ] [ Designated as safety issue: No ]

  Participants experiencing hypotension, renal dysfunction, hyperkalemia and angioedema and by Renin-Angiotensin-Aldosterone System (RAAS) stratum (high vs. low ) High RAAS stratum Patients receiving > 160 mg of valsartan or ≥ 10 mg total daily dose of enalapril, or equivalent doses of other ARBs/ACEls, respectively, at screening Low RAAS stratum: Patients receiving ≤ 160 mg of valsartan or ≤ 10 mg total daily dose of enalapril, or equivalent doses of other ARBs/ACEls, respectively, at screening. This stratum also included patients who were not on an ACEl or an ARB 4 weeks prior to screening (i.e., ACEl/ARB-naive patients)

**Secondary Outcome Measures:**

* Number of Participants Who Achieved Treatment Success Over the 12 Weeks and by Renin-Angiotensin-Aldosterone System (RAAS) Stratum (High vs. Low ) [ Time Frame: 12 weeks ] [ Designated as safety issue: No ]

  Treatment success was defined as the number of participants who achieved and maintained LCZ696 200 mg bid without any dose interruption or down-titration over 12 weeks and by Renin-Angiotensin-Aldosterone System (RAAS) stratum (high vs. low ) High RAAS stratum Patients receiving > 160 mg of valsartan or ≥ 10 mg total daily dose of enalapril, or equivalent doses of other ARBs/ACEls, respectively, at screening Low RAAS stratum: Patients receiving ≤ 160 mg of valsartan or ≤ 10 mg total daily dose of enalapril, or equivalent doses of other ARBs/ACEls, respectively, at screening. This stratum also included patients who were not on an ACEl or an ARB 4 weeks prior to screening (i.e., ACEl/ARB-naive patients)

- Number of Participants Who Tolerated Study Medication for at Least the Last Two Weeks of the Study and by Renin-Angiotensin-Aldosterone System (RAAS) Stratum (High vs. Low). [ Time Frame: 12 weeks ] [ Designated as safety issue: No ]

  Tolerability was assessed as the number of participants who achieved LCZ696 200 mg bid and maintained this dose for at least 2 weeks before study completion, regardless of previous dose interruption or down-titration and by Renin-Angiotensin-Aldosterone System (RAAS) stratum (high vs. low) High RAAS stratum Patients receiving > 160 mg of valsartan or > 10 mg total daily dose of enalapril, or equivalent doses of other ARBs/ACEIs, respectively, at screening Low RAAS stratum Patients receiving ≤ 160 mg of valsartan or ≤ 10 mg total daily dose of enalapril, or equivalent doses of other ARBs/ACEIs, respectively, at screening. This stratum also included patients who were not on an ACEI or an ARB 4 weeks prior to screening (i.e., ACEI/ARB-naïve patients)

| | |
|---|---|
| Enrollment: | 498 |
| Study Start Date: | November 2013 |
| Study Completion Date: | August 2014 |
| Primary Completion Date: | August 2014 (Final data collection date for primary outcome measure) |

| Arms | Assigned Interventions |
|---|---|
| Experimental: LCZ696 Condensed<br>Up-titration to LCZ696 200 mg twice daily (bid) over 3 weeks | Drug: LCZ696<br>LCZ696 50 mg/100 mg/200 mg bid |
| Experimental: LCZ696 Conservative<br>Up-titration to LCZ696 200 mg bid over 8 weeks | Drug: LCZ696<br>LCZ696 50 mg/100 mg/200 mg bid |

## ► Eligibility

| | |
|---|---|
| Ages Eligible for Study: | 18 Years and older |
| Genders Eligible for Study: | Both |
| Accepts Healthy Volunteers: | No |

**Criteria**

Inclusion Criteria:

- Age ≥ 18 years; CHF with New York Heart Association class II-IV; left ventricular ejection fraction ≤ 35%; on beta blockers

Exclusion Criteria:

- Potassium > 5.2 mmol/l; estimated glomerular filtration rate < 30 ml/min/1.73 m2; systolic blood pressure <100 mmHg or > 180 mmHg; history of intolerance to recommended target doses of angiotensin converting enzyme inhibitors or angiotensin receptor blockers

Other protocol-defined inclusion/exclusion criteria may apply.

## ► Contacts and Locations

Choosing to participate in a study is an important personal decision. Talk with your doctor and family members or friends about deciding to join a study. To learn more about this study, you or your doctor may contact the study research staff using the Contacts provided below. For general information, see Learn About Clinical Studies.

Please refer to this study by its ClinicalTrials.gov identifier: NCT01922089.

❊ Show 185 Study Locations

**Sponsors and Collaborators**

Novartis Pharmaceuticals

**Investigators**

Study Director:   Novartis Pharmaceuticals   Novartis Pharmaceuticals

## ► More Information

| | |
|---|---|
| Responsible Party: | Novartis Pharmaceuticals |
| ClinicalTrials.gov Identifier: | NCT01922089   History of Changes |
| Other Study ID Numbers: | CLCZ696B2228   2013-001835-33 |
| Study First Received: | August 12, 2013 |
| Results First Received: | July 16, 2015 |
| Last Updated: | September 16, 2015 |
| Health Authority: | United States: Food and Drug Administration |
| | United Kingdom: Medicines and Healthcare Products Regulatory Agency |
| | Germany: Federal Institute for Drugs and Medical Devices |
| | Canada: Health Canada |
| | Czech Republic: State Institute for Drug Control |

NPC-VS-667-000000103

Case 1:23-cv-00401-RGA    Document 40-1    Filed 10/20/23    Page 195 of 223 PageID #: 446

Slovak Republic: Ethics Committee
Italy: Ministry of Health
Spain: Ministry of Health
Turkey: Ministry of Health
Bulgaria: Ministry of Health
Hungary: Institutional Ethics Committee
Finland: Ministry of Social Affairs and Health
Norway: Norwegian Medicines Agency

Keywords provided by Novartis:
Heart failure, reduced ejection fraction, LCZ696, titration, safety, tolerability

Additional relevant MeSH terms:

Heart Failure                                    LCZ 696
Cardiovascular Diseases                          Angiotensin Receptor Antagonists
Heart Diseases                                   Molecular Mechanisms of Pharmacological Action

ClinicalTrials.gov processed this record on June 14, 2016

NPC-VS-667-000000104



U.S. National Library of Medicine

*ClinicalTrials.gov archive*

# History of Changes for Study: NCT01922089

## Safety and Tolerability of Initiating LCZ696 in Heart Failure Patients

Latest version (September 16, 2015) on ClinicalTrials.gov

- A study version is represented by a row in the table.
- Select two study versions to compare. One each from columns A and B.
- Choose either the "Merged" or "Side-by-Side" comparison format to specify how the two study versions are to be displayed. The Side-by-Side format only applies to the Protocol section of the study.
- Click "Compare" to do the comparison and show the differences.
- Select a version's date link to see a rendering of the study for that version.
- Edits or deletions will be displayed in red.
- Additions will be displayed in green.
- The yellow choices in the table indicate the study versions currently compared below. A yellow row indicates the study version being viewed.
- Hover over the "Recruitment Status" to see how the study's recruitment status changed.

## Study Record Versions

| Version | A | B | Date | Changes |
|---|---|---|---|---|
| 1 | ◉ | ◌ | August 13, 2013 | Nothing (earliest Version on record) |
| 2 | ◌ | ◌ | November 11, 2013 | Contacts/Locations, Study Status and Conditions |
| 3 | ◌ | ◌ | November 20, 2013 | Recruitment Status, Contacts/Locations and Study Status |
| 4 | ◌ | ◌ | May 12, 2014 | Contacts/Locations and Study Status |
| 5 | ◌ | ◌ | August 4, 2014 | Recruitment Status, Contacts/Locations, Study Status and Study Design |
| 6 | ◌ | ◌ | September 24, 2014 | Recruitment Status and Study Status |
| 7 | ◌ | ◉ | September 16, 2015 | Study Status, Outcome Measures, Contacts/Locations, Arms and Interventions, Results and Study Design |

Compare        Comparison Format:        ◉ Merged
                                          ◌ Side-by-Side

NPC-VS-667-000000272

Scroll up to access the controls

## Study NCT01922089
## on Date: November 20, 2013 (v3)

### Study Identification

Unique Protocol ID: CLCZ696B2228

Brief Title: Safety and Tolerability of Initiating LCZ696 in Heart Failure Patients (TITRATION)

Official Title: A Multicenter, Randomized, Double-blind, Parallel Group Study to Assess the Safety and Tolerability of Initiating LCZ696 in Heart Failure Patients Comparing Two Titration Regimens

Secondary IDs: 2013-001835-33 [EudraCT Number]

### Study Status

Record Verification: November 2013

Overall Status: Unknown status [Previously: Recruiting]

Study Start: November 2013

Primary Completion: August 2014 [Anticipated]

Study Completion: August 2014 [Anticipated]

First Submitted: August 12, 2013

First Submitted that met QC criteria: August 13, 2013

First Posted: August 14, 2013 [Estimate]

Last Update Submitted that Met QC Criteria: November 20, 2013

Last Update Posted: November 21, 2013 [Estimate]

### Sponsor/Collaborators

Sponsor: Novartis Pharmaceuticals

Responsible Party: Sponsor

Collaborators:

### Oversight

U.S. FDA-regulated Drug:

U.S. FDA-regulated Device:

Data Monitoring:

NPC-VS-667-000000273

## Study Description

Brief Summary: The purpose of this study is to assess the safety and tolerability of initiating LCZ696 in heart failure patients with reduced ejection fraction (HF-rEF) using conservative (reaching target dose over 6 weeks) and condensed (reaching target dose over 3 weeks) up-titration regimens.

Detailed Description:

## Conditions

Conditions: Heart Failure With Reduced Ejection Fraction

Keywords: Heart failure, reduced ejection fraction, LCZ696, titration, safety, tolerability

## Study Design

Study Type: Interventional

Primary Purpose: Treatment

Study Phase: Phase 2

Interventional Study Model: Parallel Assignment

Number of Arms: 2

Masking: QuadrupleParticipant, Care Provider, Investigator, Outcomes Assessor

Allocation: Randomized

Enrollment: 480 [Anticipated]

## Arms and Interventions

| Arms | Assigned Interventions |
|------|------------------------|
| Experimental: Condensed up-titration<br>    Up-titration to LCZ696 200 mg twice daily (bid) over 3 weeks | Drug: LCZ696<br>    LCZ696 50 mg/100 mg/200 mg bid |
| Experimental: Conservative up-titration<br>    Up-titration to LCZ696 200 mg bid over 6 weeks | Drug: LCZ696<br>    LCZ696 50 mg/100 mg/200 mg bid |

## Outcome Measures

Primary Outcome Measures:

1. Percentage of patients experiencing specified adverse events
   12 weeks

2. Percentage of patients with systolic blood pressure < 95 mmHg
   12 weeks

NPC-VS-667-000000274

3. Percentage of patients with abnormal serum creatinine and doubling of serum creatinine
   12 weeks

4. Percentage of patients with Serum potassium > 5.5 mmol/l and ≥ 6.0 mmol/l
   12 weeks

Secondary Outcome Measures:

5. Percentage of patients who achieve treatment success
   12 weeks

6. Percentage of patients who tolerate study medication for at least the last two weeks of the study
   12 weeks

## Eligibility

|  |  |
|---|---|
| Minimum Age: | 18 Years |
| Maximum Age: | |
| Sex: | All |
| Gender Based: | |
| Accepts Healthy Volunteers: | No |
| Criteria: | Inclusion Criteria: |

- Age ≥ 18 years; CHF with New York Heart Association class II-IV; left ventricular ejection fraction ≤ 35%; on beta blockers

Exclusion Criteria:

- Potassium > 5.2 mmol/l; estimated glomerular filtration rate < 30 ml/min/1.73 m2; systolic blood pressure <100 mmHg or > 180 mmHg; history of intolerance to recommended target doses of angiotensin converting enzyme inhibitors or angiotensin receptor blockers

Other protocol-defined inclusion/exclusion criteria may apply.

## Contacts/Locations

Study Officials: Novartis Pharmaceuticals
Study Director
Novartis Pharmaceuticals

Locations: **United States, Alaska**

Novartis Investigative Site
Anchorage, Alaska, United States, 99508

**United States, Arizona**

Novartis Investigative Site
Gilbert, Arizona, United States, 85297

Novartis Investigative Site
Tucson, Arizona, United States, 85710

**United States, California**

Novartis Investigative Site
Anaheim, California, United States, 92801

Novartis Investigative Site
Sacramento, California, United States, 95817

Novartis Investigative Site
Torrance, California, United States, 90502

**United States, Florida**

Novartis Investigative Site
Atlantis, Florida, United States, 33462

Novartis Investigative Site
Chiefland, Florida, United States, 32626

**United States, Idaho**

Novartis Investigative Site
Boise, Idaho, United States, 83702

**United States, Illinois**

Novartis Investigative Site
Aurora, Illinois, United States, 60504

Novartis Investigative Site
Melrose Park, Illinois, United States, 60160

Novartis Investigative Site
Peoria, Illinois, United States, 61606

**United States, Indiana**

Novartis Investigative Site
Evansville, Indiana, United States, 47714

**United States, Louisiana**

Novartis Investigative Site
Slidell, Louisiana, United States, 70458

**United States, Massachusetts**

Novartis Investigative Site
Ayer, Massachusetts, United States, 01432

**United States, Minnesota**

NPC-VS-667-000000276

Novartis Investigative Site
    Minneapolis, Minnesota, United States, 55417

**United States, Missouri**

Novartis Investigative Site
    St. Louis, Missouri, United States, 63110

**United States, New York**

Novartis Investigative Site
    Buffalo, New York, United States, 14215

Novartis Investigative Site
    Laurelton, New York, United States, 11422

**United States, Ohio**

Novartis Investigative Site
    Cincinnati, Ohio, United States, 45219

**United States, Pennsylvania**

Novartis Investigative Site
    Beaver, Pennsylvania, United States, 15009

**United States, Tennessee**

Novartis Investigative Site
    Oak Ridge, Tennessee, United States, 37830

**United States, Texas**

Novartis Investigative Site
    Beaumont, Texas, United States, 77702

Novartis Investigative Site
    Dallas, Texas, United States, 75231

Novartis Investigative Site
    Houston, Texas, United States, 77030

Novartis Investigative Site
    Houston, Texas, United States, 77064

Novartis Investigative Site
    Houston, Texas, United States, 77070

Novartis Investigative Site
    Houston, Texas, United States, 77094

Novartis Investigative Site
    Livingston, Texas, United States, 77351

**United States, Washington**

Novartis Investigative Site

Tacoma, Washington, United States, 98405

**Bulgaria**

Novartis Investigative Site
Gabrovo, Bulgaria, 5300

Novartis Investigative Site
Plovdiv, Bulgaria, 4000

Novartis Investigative Site
Plovdiv, Bulgaria, 4004

Novartis Investigative Site
Smolian, Bulgaria, 4700

Novartis Investigative Site
Sofia, Bulgaria, 1202

Novartis Investigative Site
Sofia, Bulgaria, 1407

**Finland**

Novartis Investigative Site
HUS, Finland, 00029

Novartis Investigative Site
Jyvaskyla, Finland, 40620

Novartis Investigative Site
Tampere, Finland, 33520

Novartis Investigative Site
Turku, Finland, FIN-20520

**Germany**

Novartis Investigative Site
Anderbeck, Germany, 38836

Novartis Investigative Site
Bad Krozingen, Germany, 79189

Novartis Investigative Site
Berlin-Buch, Germany, 13125

Novartis Investigative Site
Berlin, Germany, 10367

Novartis Investigative Site
Berlin, Germany, 10369

Novartis Investigative Site
Berlin, Germany, 10787

Novartis Investigative Site

Berlin, Germany, 10789

Novartis Investigative Site
Berlin, Germany, 13353

Novartis Investigative Site
Berlin, Germany, 13405

Novartis Investigative Site
Dresden, Germany, 01309

Novartis Investigative Site
Eilenburg, Germany, 04838

Novartis Investigative Site
Frankfurt, Germany, 60594

Novartis Investigative Site
Göttingen, Germany, D-37075

Novartis Investigative Site
Ingelheim, Germany, 55218

Novartis Investigative Site
Kelkheim, Germany, 65779

Novartis Investigative Site
Kleve, Germany, 47533

Novartis Investigative Site
Leipzig, Germany, 04315

Novartis Investigative Site
Ludwigshafen, Germany, 67061

Novartis Investigative Site
Magdeburg, Germany, 39110

Novartis Investigative Site
Mainz, Germany, 55116

Novartis Investigative Site
Mainz, Germany, 55131

Novartis Investigative Site
Mayen, Germany, 56727

Novartis Investigative Site
Muehlhausen, Germany, 99974

Novartis Investigative Site
Siegen, Germany, 57072

Novartis Investigative Site
Straubing, Germany, 94315

NPC-VS-667-000000279

Novartis Investigative Site
Stuttgart, Germany, 70378

Novartis Investigative Site
Würzburg, Germany, 97078

**Hungary**

Novartis Investigative Site
Budapest, Hungary, 1042

Novartis Investigative Site
Budapest, Hungary, 1145

Novartis Investigative Site
Budapest, Hungary, H-1096

Novartis Investigative Site
Csongrad, Hungary, 6640

Novartis Investigative Site
Debrecen, Hungary, 4032

Novartis Investigative Site
Mosonmagyarovar, Hungary, 9200

Novartis Investigative Site
Nyiregyháza, Hungary, 4400

Novartis Investigative Site
Pecs, Hungary, 7623

Novartis Investigative Site
Szekesfehervar, Hungary, 8000

**Italy, AO**

Novartis Investigative Site
Aosta, AO, Italy, 11100

**Italy, AR**

Novartis Investigative Site
Cortona, AR, Italy, 52044

**Italy, BG**

Novartis Investigative Site
Bergamo, BG, Italy, 24128

**Italy, BO**

Novartis Investigative Site
Bologna, BO, Italy, 40138

**Italy, FE**

Novartis Investigative Site
Ferrara, FE, Italy, 44100

**Italy, RM**

Novartis Investigative Site
Albano Laziale, RM, Italy, 00041

Novartis Investigative Site
Roma, RM, Italy, 00163

**Italy, SS**

Novartis Investigative Site
Sassari, SS, Italy, 07100

**Italy, TV**

Novartis Investigative Site
Vittorio Veneto, TV, Italy, 31029

**Italy, UD**

Novartis Investigative Site
San Daniele Del Friuli, UD, Italy, 33038

**Norway**

Novartis Investigative Site
Oslo, Norway, 0407

Novartis Investigative Site
Oslo, Norway, 0424

**Puerto Rico**

Novartis Investigative Site
San Juan, Puerto Rico, 00936-6528

**Slovakia, Slovak Republic**

Novartis Investigative Site
Brezno, Slovak Republic, Slovakia, 977 42

**Slovakia, Slovak republic**

Novartis Investigative Site
Nitra, Slovak republic, Slovakia, 95201

**Slovakia, Slovak Republic**

Novartis Investigative Site
Svidnik, Slovak Republic, Slovakia, 08901

**Slovakia**

Novartis Investigative Site
Bratislava, Slovakia, 83301

NPC-VS-667-000000281

Novartis Investigative Site
Kosice, Slovakia, 040 01

Novartis Investigative Site
Lucenec, Slovakia, 98439

Novartis Investigative Site
Nove Zamky, Slovakia, 940 52

**Spain, Andalucia**

Novartis Investigative Site
Almeria, Andalucia, Spain, 04120

Novartis Investigative Site
Malaga, Andalucia, Spain, 29010

Novartis Investigative Site
Sanlucar de Barrameda, Andalucia, Spain, 11540

Novartis Investigative Site
Sevilla, Andalucia, Spain, 41014

**Spain, Cataluña**

Novartis Investigative Site
Barcelona, Cataluña, Spain, 08035

**Spain**

Novartis Investigative Site
Madrid, Spain, 28009

**Turkey**

Novartis Investigative Site
Haydarpasa/Istanbul, Turkey, 34668

Novartis Investigative Site
Istanbul, Turkey, 34304

Novartis Investigative Site
Kocaeli, Turkey, 41380

Novartis Investigative Site
Mersin, Turkey, 33079

Novartis Investigative Site
Sivas, Turkey, 58140

**IPDSharing**

Plan to Share IPD:

**References**

Citations: Senni M, McMurray JJ, Wachter R, McIntyre HF, Reyes A, Majercak I,
Andreka P, Shehova-Yankova N, Anand I, Yilmaz MB, Gogia H,

NPC-VS-667-000000282

Martinez-Selles M, Fischer S, Zilahi Z, Cosmi F, Gelev V, Galve E, Gómez-Doblas JJ, Nociar J, Radomska M, Sokolova B, Volterrani M, Sarkar A, Reimund B, Chen F, Charney A. Initiating sacubitril/valsartan (LCZ696) in heart failure: results of TITRATION, a double-blind, randomized comparison of two uptitration regimens. Eur J Heart Fail. 2016 Sep;18(9):1193-202. doi: 10.1002/ejhf.548. Epub 2016 May 12. PubMed 27170530

Links:

Available IPD/Information:

U.S. National Library of Medicine | U.S. National Institutes of Health | U.S. Department of Health & Human Services

NPC-VS-667-000000283

# EXHIBIT 20

European Journal of Heart Failure (2016) 18, 1193–1202
doi:10.1002/ejhf.548

RESEARCH ARTICLE

# Initiating sacubitril/valsartan (LCZ696) in heart failure: results of TITRATION, a double-blind, randomized comparison of two uptitration regimens

Michele Senni[1]*, John J.V. McMurray[2], Rolf Wachter[3], Hugh F. McIntyre[4], Antonio Reyes[5], Ivan Majercak[6], Peter Andreka[7], Nina Shehova-Yankova[8], Inder Anand[9], Mehmet B. Yilmaz[10], Harinder Gogia[11], Manuel Martinez-Selles[12], Steffen Fischer[13], Zsolt Zilahi[14], Franco Cosmi[15], Valeri Gelev[16], Enrique Galve[17], Juanjo J. Gómez-Doblas[18], Jan Nociar[19], Maria Radomska[20], Beata Sokolova[21], Maurizio Volterrani[22], Arnab Sarkar[23], Bernard Reimund[24], Fabian Chen[25], and Alan Charney[25]

[1]Cardiology, Heart Failure and Heart Transplant Unit, Azienda Ospedaliera Papa Giovanni XXIII, Bergamo, Piazza OMS, 24127, Bergamo, Italy; [2]British Heart Foundation Cardiovascular Research Centre, University of Glasgow, Glasgow, UK; [3]University Medicine Goettingen, Clinic for Cardiology and Pneumology, Goettingen, Germany; [4]Hon Reader in Medicine, Brighton and Sussex Medical School, UK; [5]University Hospital Virgen de Valme, Medicina Interna, Sevilla, Spain; [6]Outpatient Internal Medicine, Cardiology, Kosice, Slovakia; [7]Gottsegen Gyorgy, Orszagos Kardiologiai Intezet, Felnott Kardiologiai Osztaly, Budapest, Hungary; [8]MHAT Bratan Shukerov, Cardiology Department, Smolian, Bulgaria; [9]Veterans Medical Center -Minneapolis, Minneapolis, MN, USA; [10]Cumhuriyet University Medical Faculty Cardiology, Sivas, Turkey; [11]Cardiology Consultants of Orange County, Anaheim, CA, USA; [12]Hospital Gregorio Maranon, Servicio de Cardiologia, and Universidad Europea y Universidad Complutense, Madrid, Spain; [13]Praxis Dr Fischer, Leipzig, Germany; [14]Kardiologiai Szakrendelos, Nyiregyhaza, Hungary; [15]P.O. Ospedale Valdichiana S. Margherita, U.O. di Cardiologia, Cortona, Italy; [16]MHAT Tokuda Hospital Sofia, Clinic of Cardiology and Angio, Sofia, Bulgaria; [17]Hospital Vall D'Hebron, Cardiology, Paseo Valle de Hebron, Barcelona, Spain; [18]Hospital Virgen de la Victoria, Cardiologia, Campus Universitario Teatinos, Malaga, Spain; [19]Kardio 1 s.r.o., Lucenec, Slovakia; [20]Letesia s.r.o., Trebisov, Slovakia; [21]Galenum s.r.o., Ambulancia v odbore Vutorne Lekarstvo, Bratislava, Slovakia; [22]IRCCS San Raffaele Pisana, Rome, Italy; [23]Novartis HC Ltd, Hyderabad, India; [24]Novartis Pharma AG, Basel, Switzerland; and [25]Novartis Pharmaceuticals Corporation, East Hanover, NJ, USA

Received 11 January 2016; revised 29 February 2016; accepted 12 March 2016; online publish-ahead-of-print 12 May 2016

| Aims | To assess the tolerability of initiating/uptitrating sacubitril/valsartan (LCZ696) from 50 to 200 mg twice daily (target dose) over 3 and 6 weeks in heart failure (HF) patients (ejection fraction $\leq$35%). |
| --- | --- |
| Methods and results | A 5-day open-label run-in (sacubitril/valsartan 50 mg twice daily) preceded an 11-week, double-blind, randomization period [100 mg twice daily for 2 weeks followed by 200 mg twice daily ('condensed' regimen) vs. 50 mg twice daily for 2 weeks, 100 mg twice daily for 3 weeks, followed by 200 mg twice daily ('conservative' regimen)]. Patients were stratified by pre-study dose of angiotensin-converting enzyme inhibitor/angiotensin-receptor blocker (ACEI/ARB); low-dose stratum included ACEI/ARB-naive patients. Of 540 patients entering run-in, 498 (92%) were randomized and 429 (86.1% of randomized) completed the study. Pre-defined tolerability criteria were hypotension, renal dysfunction and hyperkalaemia; and adjudicated angioedema, which occurred in ('condensed' vs. 'conservative') 9.7% vs. 8.4% ($P = 0.570$), 7.3% vs. 7.6% ($P = 0.990$), 7.7% vs. 4.4% ($P = 0.114$), and 0.0% vs. 0.8% of patients, respectively. Corresponding proportions for pre-defined systolic blood pressure <95 mmHg, serum potassium >5.5 mmol/L, and serum creatinine >3.0 mg/dL were 8.9% vs. 5.2% ($P = 0.102$), 7.3% vs. 4.0% ($P = 0.097$), and 0.4% vs. 0%, respectively. In total, 378 (76%) patients achieved and maintained sacubitril/valsartan 200 mg twice daily without dose interruption/down-titration over 12 weeks (77.8% vs. 84.3% |

*Corresponding author. Tel: +39 035 267 3565, Fax: +39 035 267 5164, Email: msenni@hpg23.it
ClinicalTrials.gov Identifier: NCT01922089.

© 2016 The Authors. European Journal of Heart Failure published by John Wiley & Sons Ltd on behalf of European Society of Cardiology.
This is an open access article under the terms of the Creative Commons Attribution-NonCommercial-NoDerivs License, which permits use and distribution in any medium, provided the original work is properly cited, the use is non-commercial and no modifications or adaptations are made.

NPC-VS-667-000000729

for 'condensed' vs. 'conservative'; $P = 0.078$). Rates by ACEI/ARB pre-study dose stratification were 82.6% vs. 83.8% ($P = 0.783$) for high-dose/'condensed' vs. high-dose/'conservative' and 84.9% vs. 73.6% ($P = 0.030$) for low-dose/'conservative' vs. low-dose/'condensed'.

**Conclusions**    Initiation/uptitration of sacubitril/valsartan from 50 to 200 mg twice daily over 3 or 6 weeks had a tolerability profile in line with other HF treatments. More gradual initiation/uptitration maximized attainment of target dose in the low-dose ACEI/ARB group.

**Keywords**    LCZ696 ● Sacubitril ● Valsartan ● ARNI ● Heart failure ● Tolerability

## Introduction

The Prospective comparison of angiotensin receptor neprilysin inhibitor (ARNI) with angiotensin-converting enzyme inhibitor (ACEI) to Determine Impact on Global Mortality and morbidity in Heart Failure (PARADIGM-HF) trial established the safety and tolerability of the target dose of the ARNI sacubitril/valsartan (200 mg twice daily), also known as LCZ696, in ambulatory patients with chronic heart failure with reduced ejection fraction (HFrEF) already treated with an ACEI/angiotensin receptor blocker (ARB). The trial included a single-blind active run-in period, during which tolerability to both enalapril and sacubitril/valsartan was assured prior to randomisation.[1,2] During the PARADIGM-HF run-in, patients transitioned from enalapril 10 mg twice daily to sacubitril/valsartan 100 mg (sacubitril 49 mg and valsartan 51 mg) twice daily and then sacubitril/valsartan 200 mg (sacubitril 97 mg and valsartan 103 mg) twice daily over a 6–8 week period before randomisation.

While the PARADIGM-HF population comprised patients pre-exposed to optimal doses of enalapril, it is accepted that many HFrEF patients encountered in routine practice are not at target doses of ACEI/ARBs.[3] The present trial addresses whether the tolerability of initiating sacubitril/valsartan is affected by the duration of the initiation/uptitration regimen. The rate of pre-specified adverse events associated with initiating/uptitrating sacubitril/valsartan using a short (3-week 'condensed') and longer (6-week 'conservative') duration was assessed in a broader range of patients than previously studied, including, hospitalized as well as ambulatory patients, and those treated with a low dose of ACEI/ARB or ACEI/ARB-naïve. Furthermore, patients were not required to have elevated levels of brain natriuretic peptide (BNP) or N-terminal pro-brain natriuretic peptide (NT-proBNP) before entry to the study. Therefore, TITRATION aimed to characterize the tolerability of initiating/uptitrating sacubitril/valsartan (LCZ696) in a range of patients representative of daily clinical practice, including patients naïve to or with varying levels of pre-exposure to ACEI/ARBs, using a 'condensed' and 'conservative' regimen.

## Methods

### Patients

Inpatient and outpatient males and females (≥18 years old) with heart failure (HF) [New York Heart Association (NYHA) functional class

II–IV] with a reduced left ventricular ejection fraction (LVEF ≤35%) were potentially eligible for inclusion. One or more of the following additional eligibility requirements were required at screening: for outpatients currently treated with ACEI/ARB, the dose must have been stable for at least 2 weeks; to be classed as ACEI/ARB-naïve, the patient must not have taken ACEI/ARB for at least 4 weeks; hospitalized patients had to be either ACEI/ARB-naïve, or on a tolerated dose of an ACEI/ARB at screening. Elevated levels of BNP or NT-proBNP was not a requirement for participation in the study.

Other therapies representing optimal treatment under current guidelines,[4,5] including a β-blocker, mineralocorticoid receptor antagonist (MRA), cardiac resynchronization therapy and an implantable cardioverter–defibrillator were recommended in the protocol.

Key exclusion criteria included: previous intolerance to recommended target doses of ACEI/ARBs; symptomatic hypotension and/or a systolic blood pressure (SBP) <100 mmHg or SBP >180 mmHg at screening; estimated glomerular filtration rate (eGFR) <30 mL/min.1.73 m² at screening; known history of angioedema; and current hospitalization for conditions other than decompensated HF.

The study was conducted in accordance with the International Conference on Harmonization Guidelines for Good Clinical Practice[6] and the Declaration of Helsinki.[7] The protocol was approved by each site's ethics committee; all patients gave written informed consent.

### Study design and randomization

This multicentre, randomized, double-blind, parallel-group study comprised three phases: (i) a 1-week screening phase; (ii) a sacubitril/valsartan run-in phase lasting approximately 1 week (Day 1–5); and (iii) a randomized phase lasting approximately 11 weeks (*Figure 1*).

As both treatment arms start with sacubitril/valsartan 50 mg (sacubitril 24 mg and valsartan 26 mg) twice daily, the run-in phase was open-label to simplify the study. Patients were then randomized to one of the two blinded treatment arms. The 'condensed' uptitration arm comprised uptitration of sacubitril/valsartan from 50 mg twice daily to 200 mg twice daily over 3 weeks (including the run-in phase). The 'conservative' uptitration arm comprised uptitration of sacubitril/valsartan from 50 mg twice daily to 200 mg twice daily over 6 weeks (including the run-in phase). A double-dummy design was used to preserve blinding.

Patients were stratified according to dose of ACEI/ARB at screening, pre-specified as follows. 'High-dose' received a total daily dose >160 mg of valsartan or >10 mg of enalapril, or equivalent doses of other ARBs or ACEIs, respectively; 'low-dose' received a total daily dose ≤160 mg of valsartan or ≤10 mg of enalapril, or equivalent doses of other ARBs or ACEIs, respectively, at screening (see the

© 2016 The Authors. *European Journal of Heart Failure* published by John Wiley & Sons Ltd on behalf of European Society of Cardiology.

NPC-VS-667-000000730



Figure 1 Study design. ACEI, angiotensin-converting enzyme inhibitor; ARB, angiotensin receptor blocker; BID, twice daily; EOS, end of study; Sac/Val, sacubitril/valsartan; V, visit.

Supplementary material online, *Table S1*). The 'low-dose' ACEI/ARB stratum also included patients who were ACEI/ARB-naïve.

## Study procedures

All patients received open-label sacubitril/valsartan 50 mg twice daily during a 5-day run-in period. Patients using an ACEI before enrolment discontinued this treatment for a 36-h washout period before starting sacubitril/valsartan.

At the end of the run-in period, patients who were able to tolerate sacubitril/valsartan 50 mg twice daily according to the following criteria entered the double-blind, randomized phase: potassium level ≤5.4 mmol/L; an eGFR ≥30 mL/min.1.73 m² and eGFR reduction ≤35% compared with screening; no symptomatic hypotension and SBP ≥95 mmHg; no postural symptoms or any other adverse events (AEs) precluding continuation according to investigator judgment. Those not meeting these criteria were considered run-in failures.

Patients randomized to the 'condensed' uptitration arm were uptitrated to sacubitril/valsartan 100 mg twice daily for 2 weeks, followed by uptitration to sacubitril/valsartan 200 mg for the remaining study period. Patients randomized to the 'conservative' uptitration arm continued to receive sacubitril/valsartan 50 mg twice daily for 2 weeks followed by uptitration to sacubitril/valsartan 100 mg for further 3 weeks and to 200 mg twice daily thereafter until the end of study (*Figure 1*).

At each visit (*Figure 1*), the assessment of tolerability of sacubitril/valsartan was based on the tolerability criteria used for the run-in phase. Patients not meeting these criteria at any visit were considered treatment failures, as were those who required dose reduction/interruption in study medication. These patients were switched to open-label sacubitril/valsartan, the dose of which was at the discretion of the investigator.

Patients switched to open-label sacubitril/valsartan were uptitrated based on the investigator's judgment with the goal of achieving and maintaining sacubitril/valsartan 200 mg twice daily for at least the final 2 weeks leading to completion of the study.

## Primary objective: tolerability according to predefined adverse events and laboratory assessments

The primary objective of the trial was to characterize the tolerability of the two initiation/uptitration regimens of sacubitril/valsartan in patients with HFrEF. The primary tolerability assessment was the number and proportion of patients in the two uptitration regimens who, following randomization, experienced pre-specified AEs coded according to the industry standard medical dictionary for regulatory activities (MedDRA).[8] These AEs were hypotension (MedDRA preferred terms: hypotension, orthostatic hypotension, or blood pressure decreased), hyperkalaemia (MedDRA preferred terms: hyperkalaemia or blood potassium increased), renal dysfunction (MedDRA preferred terms: blood creatinine increased, glomerular filtration rate decreased, renal failure, renal failure acute, renal failure chronic, or renal impairment), and angioedema (confirmed by the Angioedema Adjudication Committee).

Other pre-specified primary tolerability assessments included the number and proportion of patients experiencing SBP <95 mmHg or any of the following biochemical changes after randomization: serum potassium >5.5 mmol/L and ≥6.0 mmol/L, serum creatinine >3.0 mg/dL (267 µmol/L), and doubling of serum creatinine from baseline levels. These were all measured in a central laboratory (Eurofins Medinet LLC, Lancaster, PA, USA, for USA, and Eurofins Medinet BV, Breda, the Netherlands for non-USA).

## Secondary objectives: proportion of patients achieving 'treatment success' or protocol-defined 'tolerability success'

The two secondary objectives were to assess: (i) 'treatment success' defined as the proportion of patients, excluding non-AE- or non-death-related discontinuations, in the two treatment groups who achieved and maintained a dose of sacubitril/valsartan 200 mg twice daily without any dose interruption or down-titration over 12 weeks; (ii) 'tolerability success' defined as the proportion of patients, excluding patients who discontinued for reasons other than AE or death, who tolerated a dose of sacubitril/valsartan of 200 mg twice daily for at least the final 2 weeks leading to study completion, regardless of previous dose interruption or down-titration.

Overall safety assessments comprised monitoring all AEs and serious AEs (SAEs), laboratory assessments, and vital signs, and are discussed in the Supplementary material online, *Appendix S2*.

## Statistical analysis

TITRATION was not hypothesis driven as the primary objective was to characterize the tolerability of initiating sacubitril/valsartan using a 'conservative' and a 'condensed' uptitration regimen. Hence, the

© 2016 The Authors. *European Journal of Heart Failure* published by John Wiley & Sons Ltd on behalf of European Society of Cardiology.



**Figure 2** Patient disposition. [a]Includes two patients who discontinued run-in because of a protocol deviation without taking run-in medication; therefore, 538 patients received at least one dose of run-in medication. [b]Nineteen patients achieved target dose and maintained it for at least 2 weeks leading to study completion following dose interruption or down-titration, giving a total of 397 patients achieving 'tolerability success'. AE, adverse event; bid, twice daily; d/c, discontinuations.

sample size was not based on establishing the statistical significance of observed differences between uptitration regimens or stratum, but to provide precise estimates of the event rates in each stratum and uptitration regimen.

Assuming a 1:1 stratification between the high/low ACEI/ARB dose strata and based on the approximate event rates of 1.7%, 1.2%, 1.6%, and 0.1% for hypotension, hyperkalaemia, renal dysfunction, and angioedema, respectively, as estimated with available information from PARADIGM-HF at that time, a sample size of 120 per treatment per stratum (480 in total for both treatment arms) was expected to ensure adequate precision of the estimates [length of the 95% confidence interval (CI)] as 0.045, 0.038, 0.044, and 0.011, respectively. The primary analysis summarized descriptive statistics of count and percentage of the pre-specified adverse events and laboratory assessments throughout the double-blind treatment phase, within each stratum and each uptitration regimen.

For each of the events, the annualized percentage for the overall population was estimated using an exponential survival regression model, in which uptitration regimen and pre-study ACEI/ARB treatment level stratum (high/low) were fixed-effect factors. For stratum-specific estimates, separate exponential regression models with uptitration regimen as fixed effect factors were fitted. The annualized percentages were used to derive comparison between uptitration regimens within each stratum by estimating hazard ratios and their 95% CIs. Although *P*-values are presented, it is important to note that the study was not powered to detect statistically significant differences between regimens.

Secondary variables were analysed using a logistic regression model with uptitration regimen, pre-study ACEI/ARB treatment stratum, and

region as fixed factors. For within-stratum-specific estimates, separate logistic regression models were fitted with uptitration regimen and region as the fixed factors. Statistical testing was performed at the two-sided significance level of 0.05 and estimated odds ratio and 95% CIs are provided.

## Results

### Study disposition

The study was carried out between November 2013 and August 2014. Patient disposition is summarized in *Figure 2*. Of 681 patients screened across 107 centres in 10 countries (for centres and principal investigators see the Supplementary material online, *Appendix S1*), 540 entered the run-in and 538 (99.6%) received at least one dose of sacubitril/valsartan 50 mg. Run-in failure occurred in 42 patients. Of the remaining 498 patients randomized, 429 (86.1%) patients completed the study while taking study medication (*Figure 2*). Reasons for study discontinuation during the run-in and after randomization are shown in the Supplementary material online, *Table S3*.

### Patient characteristics

Baseline demographics and clinical characteristics, including medical history and treatment, were well balanced between the randomized groups (*Tables 1* and *2*). Most patients were ambulatory (*n* = 56, 11.2%, were inpatients) and male and were equally divided

© 2016 The Authors. *European Journal of Heart Failure* published by John Wiley & Sons Ltd on behalf of European Society of Cardiology.

NPC-VS-667-000000732

### Table 1 Baseline demographics

| Demographic | Titration regimen | | ACEI/ARB dose stratum | | Total (n = 498) |
|---|---|---|---|---|---|
| | Condensed (n = 247) | Conservative (n = 251) | High (n = 247) | Low (n = 251) | |
| Age (years) | | | | | |
| Mean (SD) | 64.2 (11.86) | 63.8 (10.94) | 63.1 (12.10) | 64.9 (10.60) | 64.0 (11.39) |
| Gender, n (%) | | | | | |
| Male | 191 (77.3) | 201 (80.1) | 196 (79.4) | 196 (78.1) | 392 (78.7) |
| Predominant race, n (%) | | | | | |
| Caucasian | 228 (92.3) | 234 (93.2) | 224 (90.7) | 238 (94.8) | 462 (92.8) |
| Black | 12 (4.9) | 11 (4.4) | 12 (4.9) | 11 (4.4) | 23 (4.6) |
| Other | 7 (2.8) | 6 (2.4) | 11 (4.5) | 2 (0.8) | 13 (2.6) |
| Patients composition, n (%) | | | | | |
| Inpatient | 25 (10.1) | 31 (12.4) | 17 (6.9) | 39 (15.5) | 56 (11.2) |
| Outpatient | 222 (89.9) | 220 (87.6) | 230 (93.1) | 212 (84.5) | 442 (88.8) |
| High-dose ACEI/ARB | 120 (48.6) | 127 (50.6) | | | 247 (49.6) |
| Low-dose ACEI/ARB | 127 (51.4) | 124 (49.4) | | | 251 (50.4) |
| ACEI/ARB-naive[a] | 17 (6.9) | 16 (6.4) | | | 33 (6.6) |
| Baseline LVEF (%) | | | | | |
| Mean (SD) | 29.8 (5.15) | 29.6 (5.36) | 30.5 (5.08) | 28.9 (5.32) | 29.7 (5.25) |
| NYHA class at screening, n (%) | | | | | |
| II | 175 (70.9) | 178 (70.9) | 191 (77.3) | 162 (64.5) | 353 (70.9) |
| III | 72 (29.1) | 72 (28.7) | 56 (22.7) | 88 (35.1) | 144 (28.9) |
| IV | 0 (0.0) | 1 (0.4) | 0 (0.0) | 1 (0.4) | 1 (0.2) |
| Body mass index (kg/m$^2$) at screening | | | | | |
| Mean (SD) | 30.9 (5.88) | 30.6 (6.03) | 31.6 (6.10) | 30.0 (5.70) | 30.8 (5.95) |
| SBP (mmHg) at Visit 2 | | | | | |
| Mean (SD) | 130.8 (16.64) | 130.8 (15.98) | 132.7 (16.91) | 129.0 (15.49) | 130.8 (16.30) |
| DBP (mmHg) at Visit 2 | | | | | |
| Mean (SD) | 77.2 (9.99) | 77.6 (9.26) | 78.0 (9.34) | 76.8 (9.87) | 77.4 (9.62) |
| Baseline eGFR (mL/min.1.73 m$^2$) at screening | | | | | |
| Mean (SD) | 69.6 (21.63) | 70.6 (25.16) | 71.4 (21.85) | 68.8 (24.90) | 70.1 (23.45) |
| Baseline eGFR group (mL/min.1.73 m$^2$) at screening, n (%) | | | | | |
| <60 | 83 (33.6) | 85 (33.9) | 73 (29.6) | 95 (37.8) | 168 (33.7) |
| ≥60 | 163 (66.0) | 164 (65.3) | 173 (70.0) | 154 (61.4) | 327 (65.7) |

ACEI, angiotensin-converting enzyme inhibitor; ARB, angiotensin receptor blocker; DBP, diastolic blood pressure; eGFR, estimated glomerular filtration rate; LVEF, left ventricular ejection fraction; NYHA, New York Heart Association; SBP, systolic blood pressure.
[a] Included in the overall low-dose ACEI/ARB stratum.

### Table 2 Relevant medical history

| | Sacubitril/valsartan Condensed (n = 247) | Sacubitril/valsartan Conservative (n = 251) | Total (n = 498) |
|---|---|---|---|
| Previous hospitalization because of heart failure at baseline | 131 (53.0) | 146 (58.2) | 277 (55.6) |
| Treated with | | | |
| ACEI | 170 (68.8) | 161 (64.1) | 331 (66.5) |
| ARB | 60 (24.3) | 74 (29.5) | 134 (26.9) |
| Diuretic | 205 (83.0) | 195 (77.7) | 400 (80.3) |
| Aldosterone antagonist | 147 (59.5) | 152 (60.6) | 299 (60.0) |
| Beta-blocker | 235 (95.1) | 238 (94.8) | 473 (95.0) |
| Cardiac resynchronization therapy | 5 (2.0) | 9 (3.6) | 14 (2.8) |
| Implantable defibrillator insertion | 44 (17.8) | 37 (14.7) | 81 (16.3) |
| Type 2 diabetes | 31 (12.6) | 30 (12.0) | 61 (12.2) |

Values are number (%). ACEI, angiotensin-converting enzyme inhibitor; ARB, angiotensin receptor blocker.

© 2016 The Authors. *European Journal of Heart Failure* published by John Wiley & Sons Ltd on behalf of European Society of Cardiology.

NPC-VS-667-000000733

**1198**                                                                                                           M. Senni *et al.*



Figure 3 Primary endpoints by regimen. (a) Incidence of predefined adverse events. (b) Incidence of systolic blood pressure (SBP) <95 mmHg and pre-specified laboratory assessments. CI, confidence interval; HR, hazard ratio; SCr, serum creatinine.

between the low- and high-dose ACEI/ARB strata; 33 (6.6%) patients were ACEI/ARB-naive. Approximately one-third had evidence of chronic kidney disease (eGFR <60 mL/min.1.73 m²) and 12% had type 2 diabetes; approximately 60% were treated with a MRA and 95% with a beta-blocker.

### Tolerability according to predefined adverse events

#### 'Condensed' and 'conservative' initiation/uptitration regimens

As shown in *Figure 3* and *Table 3*, the incidence of hypotension was 9.7% vs. 8.4% in the 'condensed' and 'conservative' initiation/ uptitration regimens, respectively, and for renal dysfunction 7.3% vs. 7.6%. The incidence of hyperkalaemia was 7.7% in the

'condensed' regimen and 4.4% in the 'conservative' regimen (*Figure 3* and *Table 3*). Angioedema was rare, with no cases in the 'condensed' uptitration group and two non-severe cases in the 'conservative' uptitration group (one of the two cases was reassessed by the Angioedema Adjudication Committee as 'not an angioedema event' after the database lock).

#### Angiotensin-converting enzyme inhibitor/angiotensin receptor blocker dose strata

Hypotension, renal dysfunction, and hyperkalaemia were each more common in the low-dose ACEI/ARB stratum, irrespective of uptitration regimen. The highest rate of these AEs was observed in the low-dose ACEI/ARB-'condensed' uptitration group (*Table 3*). In the high-dose ACEI/ARB stratum, rates of hypotension and

© 2016 The Authors. *European Journal of Heart Failure* published by John Wiley & Sons Ltd on behalf of European Society of Cardiology.

**Table 3** **Primary and key secondary endpoints**

| Response variable | ACEI/ARB dose stratum | Sacubitril/valsartan Condensed n/N (%) | | Sacubitril/valsartan Conservative n/N (%) | P-value |
|---|---|---|---|---|---|
| **Pre-specified adverse events during post-randomization period** | | | | | |
| Hypotension | High | 5/120 (4.2) | | 7/127 (5.5) | 0.657 |
| | Low | 19/127 (15.0) | | 14/124 (11.3) | 0.353 |
| | All | 24/247 (9.7) | | 21/251 (8.4) | 0.570 |
| Renal dysfunction | High | 5/120 (4.2) | | 9/127 (7.1) | 0.371 |
| | Low | 13/127 (10.2) | | 10/124 (8.1) | 0.492 |
| | All | 18/247 (7.3) | | 19/251 (7.6) | 0.990 |
| Hyperkalaemia | High | 8/120 (6.7) | | 5/127 (3.9) | 0.312 |
| | Low | 11/127 (8.7) | | 6/124 (4.8) | 0.225 |
| | All | 19/247 (7.7) | | 11/251 (4.4) | 0.114 |
| Angioedema | High | 0/120 (0.0) | | 1/127 (0.8) | -- |
| | Low | 0/127 (0.0) | | 1/124 (0.8) | -- |
| | All | 0/247 (0.0) | | 2[*]/251 (0.8) | -- |
| **Pre-specified abnormal central laboratory and vital signs outcomes during post-randomisation period** | | | | | |
| SBP <95 mmHg | High | 4/120 (3.3) | | 7/126 (5.6) | 0.439 |
| | Low | 18/126 (14.3) | | 6/123 (4.9) | 0.016 |
| | All | 22/246 (8.9) | | 13/249 (5.2) | 0.102 |
| Serum potassium >5.5 mmol/L | High | 9/119 (7.6) | | 6/125 (4.8) | 0.327 |
| | Low | 9/126 (7.1) | | 4/122 (3.3) | 0.169 |
| | All | 18/245 (7.3) | | 10/247 (4.0) | 0.097 |
| Serum potassium ≥6.0 mmol/L | High | 2/119 (1.7) | | 0/125 (0.0) | -- |
| | Low | 1/126 (0.8) | | 1/122 (0.8) | 0.999 |
| | All | 3/245 (1.2) | | 1/247 (0.4) | 0.322 |
| Serum creatinine >3.0 mg/dL (267 μmol/L) | High | 0/119 (0.0) | | 0/125 (0.0) | -- |
| | Low | 1/126 (0.8) | | 0/123 (0.0) | -- |
| | All | 1/245 (0.4) | | 0/248 (0.0) | -- |
| Serum creatinine 200% of baseline | High | 0/119 (0.0) | | 0/125 (0.0) | -- |
| | Low | 2/126 (1.6) | | 1/123 (0.8) | 0.569 |
| | All | 2/245 (0.8) | | 1/248 (0.4) | -- |
| **Pre-specified 'treatment success' and 'tolerability success'** | | Sacubitril/valsartan Condensed, n/N[†] (%) | Sacubitril/valsartan Conservative, n/N[†] (%) | Odds ratio (95% CI) | |
| Treatment success | High | 90/109 (82.6) | 98/117 (83.8) | 0.91 (0.45, 1.83) | 0.783 |
| | Low | 89/121 (73.6) | 101/119 (84.9) | 0.50 (0.26, 0.94) | 0.030 |
| | All | 179/230 (77.8) | 199/236 (84.3) | 0.65 (0.41, 1.05) | 0.078 |
| Tolerability success | High | 94/109 (86.2) | 103/117 (88.0) | 0.84 (0.38, 1.84) | 0.657 |
| | Low | 97/121 (80.2) | 103/119 (86.6) | 0.63 (0.32, 1.26) | 0.189 |
| | All | 191/230 (83.0) | 206/236 (87.3) | 0.72 (0.43, 1.20) | 0.207 |

ACEI, angiotensin-converting enzyme inhibitor; ARB, angiotensin receptor blocker; CI, confidence interval; n, total number of patients with specified adverse events included in the analysis; N, total number of patients included in the analysis; SBP, systolic blood pressure.

[*]One of the two cases in the post-randomization period was reassessed by the Angioedema Adjudication Committee as 'not an angioedema event' after the database lock.

[†]Excluding non-AE/death-related discontinuations.

renal dysfunction were similar in the two uptitration groups while hyperkalaemia was more frequent in the 'condensed' uptitration group. However, there was no apparent interaction between the ACEI/ARB dose stratum and uptitration regimen for any pre-defined AE (*Table 3*; see the Supplementary material online, *Table S2*).

**Angiotensin-converting enzyme inhibitor/angiotensin receptor blocker-naïve patients**

For ACEI/ARB-naïve patients, three episodes of hypotension were reported in each uptitration group ['condensed' uptitration group: 3 of 17 patients (17.6%); 'conservative' uptitration group: 3 of 16 patients (18.8%)]. The corresponding numbers for hyperkalaemia

© 2016 The Authors. *European Journal of Heart Failure* published by John Wiley & Sons Ltd on behalf of European Society of Cardiology.

NPC-VS-667-000000735

were 1 (6.0%) and 2 (12.5%), and for renal dysfunction they were 3 (17.6%) and 3 (18.8%). No angioedema AEs were reported for ACEI/ARB-naive patients in either uptitration group. While the number of ACEI/ARB-naive patients in the study was small, the rates of AEs were comparable to those observed for patients overall.

## Tolerability according to predefined systolic blood pressure and laboratory thresholds

Results for the pre-specified SBP and laboratory measurement thresholds were in line with the pre-specified AEs (*Figure 3* and *Table 3*). The incidence of serum potassium >5.5 mmol/L was similar in the 'condensed' and 'conservative' uptitration regimen. There were few cases of serum potassium ≥6.0 mmol/L and few notable changes in serum creatinine (*Table 3*).

However, the incidence of SBP <95 mmHg in each of the ACEI/ARB strata differed according to uptitration regimen (interaction $P = 0.0392$; see the Supplementary material online, *Table S2*), driven by a difference in the rate of SBP <95 mmHg with the 'condensed' vs. 'conservative' uptitration regimens in the low-dose ACEI/ARB stratum (14.3% vs. 4.9%, $P = 0.016$) (*Table 3*).

The rates of SBP <95 mmHg in ACEI/ARB-naive patients were similar to those in the low-dose ACEI/ARB stratum overall [2 of 14 patients (11.8%) and 2 of 16 patients (12.5%) for the 'condensed' and 'conservative' uptitration regimens, respectively].

## Proportion of patients achieving pre-specified 'treatment success'

Overall, 378 of the 498 (75.9%) randomized patients achieved 'treatment success', defined as achieving and maintaining a dose of sacubitril/valsartan of 200 mg twice daily without any dose interruption/down-titration over 12 weeks. A total of 32 patients discontinued for reasons other than AE or death. When these patients were excluded ($n = 466$), the proportion achieving 'treatment success' was 81.1%.

When all patients taking run-in medication ($n = 538$) are considered, the proportion achieving treatment success was 70.3%. The corresponding rate was 76.2% when the 42 non-AE-related discontinuations are excluded from all patients taking run-in medication ($n = 496$).

### 'Condensed' and 'conservative' initiation/uptitration regimens

When analysed by uptitration regimen (excluding non-AE/non-death-related discontinuations, $n = 466$), treatment success was achieved in 77.8% of patients in the 'condensed' and 84.3% in the 'conservative' uptitration groups ($P = 0.078$; *Table 3*).

### Angiotensin-converting enzyme inhibitor/angiotensin receptor blocker dose strata

In the low-dose ACEI/ARB stratum, more patients in the 'conservative' uptitration group achieved treatment success compared with the 'condensed' uptitration group (84.9% vs. 73.6%, $P = 0.03$; *Table 3*). In the high-dose ACEI/ARB stratum the uptitration regimen had no impact on the treatment success rate (corresponding rates of 83.8% and 82.6%, $P = 0.783$).

## Patients switched to open-label sacubitril/valsartan after down-titration or dose interruption and proportion achieving 'tolerability success'

Of the 74 patients (15% of randomized patients) switched to open-label sacubitril/valsartan following down-titration/dose interruption during the post-randomization period, 19 (25.7%; 9 patients from the high-dose ACEI/ARB stratum and 10 patients from the low-dose ACEI/ARB stratum) were able to maintain a dose of sacubitril/valsartan 200 mg twice daily for at least the final 2 weeks leading to the completion of the study.

By definition, 'tolerability success' included all patients achieving 'treatment success' ($n = 378$) plus patients who achieved and maintained a dose of sacubitril/valsartan of 200 mg twice daily for at least the final 2 weeks leading to the completion of the study following down-titration/dose interruption and switch to open-label sacubitril/valsartan ($n = 19$). Therefore, the overall number of patients achieving tolerability success was 397 [85.2% of the randomized population, excluding non-AE/non-death discontinuations ($n = 466$) and 79.7% of all randomized patients ($n = 498$)].

The resulting proportion of patients achieving 'tolerability success' was comparable between 'condensed' and 'conservative' regimens (83.0% vs. 87.3%, $P = 0.207$) (*Table 3*).

Rates of achieving 'tolerability success' in the high-dose ACEI/ARB stratum were similar regardless of uptitration regimen (86.2% vs. 88.0%, $P = 0.656$). The 'tolerability success' rate in the low-dose ACEI/ARB stratum patients was higher with the 'conservative' compared with 'condensed' uptitration regimen (86.6% vs. 80.2%, $P = 0.189$).

'Treatment success' and 'tolerability success' rates in ACEI/ARB-naive patients were generally comparable to the profile in the other low-dose ACEI/ARB stratum patients.

For further details on tolerability in patients switched to open-label sacubitril/valsartan after randomisation see the Supplementary material online, *Appendix S2*.

## Discussion

Overall, the demography of the patients included in TITRATION was similar to other HF trials, including PARADIGM-HF, and to the European Society of Cardiology (ESC) long-term HF registry.[1,9,10] We found that rates of patients achieving and maintaining the target dose of sacubitril/valsartan of 200 mg twice daily exceeded 70% when all 498 randomized patients or all 538 patients receiving at least one dose of study medication were considered. Furthermore, 76% of patients achieved and maintained the target dose to the end of the 12-week study period when patients discontinuing for non-AE or non-death-related reasons were excluded.

© 2016 The Authors. *European Journal of Heart Failure* published by John Wiley & Sons Ltd on behalf of European Society of Cardiology.

NPC-VS-667-000000736

Hypotension and hyperkalaemia were the most commonly reported AEs, but most were not SAEs and did not lead to permanent discontinuation. There were two confirmed cases of angioedema overall [one in the run-in period (see the Supplementary material online, *Table S3*) and one in the post-randomization period]; neither case was serious or involved compromise of the airway.

## Effect of uptitration regimen and pre-study exposure to angiotensin-converting enzyme inhibitor/angiotensin receptor blockers on the sacubitril/valsartan tolerability profile

We did not find a significant increase of pre-defined AEs (including hypotension, renal dysfunction and hyperkalaemia) and pre-defined SBP and laboratory thresholds with a more rapid uptitration; however, the numbers of events are small and need to be interpreted with caution. The tolerability profile of sacubitril/valsartan in TITRATION was within the range typically observed in other trials of approved HF therapies[1,11] even when initiating/uptitrating over 3 weeks. Therefore, the tolerability of initiating/uptitrating sacubitril/valsartan can be considered acceptable regardless of the uptitration regimen. However, according to pre-study dose of ACEI/ARB, more patients transitioned from a low ACEI/ARB dose or treatment-naive patients were able to achieve and maintain the sacubitril/valsartan target dose if they were uptitrated more gradually. This difference was due to fewer hypotension, hyperkalaemia, and renal dysfunction-related AEs with uptitration over 6 weeks compared to 3 weeks. Conversely, approximately 84% of the patients pre-treated with a higher dose of ACEI/ARB achieved and maintained the target dose to the end of the 12-week study period regardless of the duration of sacubitril/valsartan uptitration. There were no notable differences between uptitration regimens in the proportion achieving and maintaining the target dose over the entire study period among hospitalized patients or among ACEI/ARB-naive patients, although the number of patients in both subgroups was too small to draw reliable conclusions.

## Achievement and maintenance of target dose in patients initially not tolerating sacubitril/valsartan

In patients not initially tolerating a dose of sacubitril/valsartan, the use of down-titration can result in the eventual achievement of the target dose. In fact, 26% of patients who had dose adjustment/interruption achieved the target dose for at least 2 weeks leading to the completion of the study. When taking these patients into account, >79% of the randomized population achieved and maintained sacubitril/valsartan 200 mg twice daily for at least the final 2 weeks of the study.

## Clinical implications

The present study provides a practical approach to attaining the evidence-based dose of sacubitril/valsartan in a broad spectrum of patients with HFrEF. We have shown that with the more gradual 'conservative' uptitration regimen, a high rate of success is possible, even in patients taking a low dose (or naive to) ACEI/ARB. Moreover, the high rates of successful uptitration were attained despite the addition of sacubitril/valsartan to other disease-modifying therapies including a $\beta$-blocker (in 95% of patients) and MRA (in 60%), which themselves reduce blood pressure and can cause renal dysfunction and hyperkalaemia.[4,5,12]

## Limitations of the study

Limitations of the study included a number of exclusion criteria, notably hypotension and a low eGFR, and the small number of ACEI/ARB-naive and hospitalized patients recruited. Indeed, there is a need for further study of the tolerability of sacubitril/valsartan in ACEI/ARB-naive patients. In addition, while the regimen allocation was double-blind, the study was open-label in terms of the agent being received. Finally, the sample size was calculated to accurately characterize the tolerability of the 3- and 6-week initiation/uptitration regimens, but was not powered to detect differences in AE rates between regimens and strata.

## Conclusions

In conclusion, we describe two initiation and uptitration regimens for sacubitril/valsartan, both of which had a tolerability profile considered in line with other treatments for HF. Notably, both regimens led to high rates of attainment of the target dose in a wide range of patients, including both inpatients and outpatients and those taking low doses of ACEI/ARB therapy. More gradual uptitration can increase the chance of attaining the target dose of sacubitril/valsartan in patients transitioning from lower doses of ACEI/ARBs.

## Supplementary Information

Additional Supporting Information may be found in the online version of this article:

**Appendix S1.** Principal investigators (responsible for data collection).

**Appendix S2.** Tolerability in patients switched to open-label sacubitril/valsartan after randomization (treatment failures), study drug discontinuation and overall safety.

**Table S1.** Definition of low-dose and high-dose ACEI/ARB inhibition strata based on pre-study ACEI/ARB total daily dose at screening.

**Table S2.** Hazard rates and ratios for pre-specified AEs, SBP <95 mmHg, and laboratory criteria.

**Table S3.** Discontinuations for AEs during the run-in and post-randomization periods.

**Table S4.** Most common AEs (at least 2% in either uptitration group) in the post-randomized phase.

© 2016 The Authors. *European Journal of Heart Failure* published by John Wiley & Sons Ltd on behalf of European Society of Cardiology.

NPC-VS-667-000000737

## Acknowledgements

The study was funded by Novartis Pharmaceuticals Corporation, USA. A first draft of the manuscript was developed by the first author with editorial assistance provided by Syed Abdul Haseeb and Paul Coyle (employees of Novartis). All authors reviewed and critically revised the manuscript for content and approved the final version of the manuscript for submission.

**Conflict of interest:** M.S. reports consulting fees for Novartis and Abbott Vascular. J.J.V.M.s. employer, the University of Glasgow, was/is being paid by Novartis for his time spent as Executive Committee member/co-chair of PARADIGM-HF. R.W. has served as an investigator, consultant, or speaker for Bayer, CVRx, Boehringer Ingelheim, Johnson & Johnson, Medtronic, European Union, Bundesministerium für Bildung und Forschung, Novartis, Pfizer, Sanofi, and Servier. H.F.Mcl reports consulting fees for Novartis and Bayer. I.A. reports consulting fees for Novartis. M.B.Y. reports institutional fees from Novartis and Cardiorentis. I.M., J.N., M.R. and B.S. report study-related fees from Novartis. A.S., B.R., F.C. and A.C. are employees of Novartis. The remaining authors declare no conflicts of interest.

## References

1. McMurray JJ, Packer M, Desai AS, Gong J, Lefkowitz MP, Rizkala AR, Rouleau JL, Shi VC, Solomon SD, Swedberg K, Zile MR; PARADIGM-HF Investigators and Committees. Angiotensin-neprilysin inhibition versus enalapril in heart failure. *N Engl J Med* 2014;**371**:993–1004.
2. McMurray JJ, Packer M, Desai AS, Gong J, Lefkowitz MP, Rizkala AR, Rouleau J, Shi VC, Solomon SD, Swedberg K, Zile MR; PARADIGM-HF Investigators and Committees. Dual angiotensin receptor and neprilysin inhibition as an alternative to angiotensin-converting enzyme inhibition in patients with chronic systolic heart failure: rationale for and design of the Prospective comparison of ARNI with ACEI to Determine Impact on Global Mortality and morbidity in Heart Failure trial (PARADIGM-HF). *Eur J Heart Fail* 2013;**15**:1062–1073.
3. Calvert MJ, Shankar A, McManus RJ, Ryan R, Freemantle N. Evaluation of the management of heart failure in primary care. *Fam Pract* 2009;**26**:145–153.
4. McMurray JJ, Adamopoulos S, Anker SD, Auricchio A, Böhm M, Dickstein K, Falk V, Filippatos G, Fonseca C, Gomez-Sanchez MA, Jaarsma T, Køber L, Lip GY, Maggioni AP, Parkhomenko A, Pieske BM, Popescu BA, Rønnevik PK, Rutten FH, Schwitter J, Seferovic P, Stepinska J, Trindade PT, Voors AA, Zannad F, Zeiher A; ESC Committee for Practice Guidelines. ESC Guidelines for the diagnosis and treatment of acute and chronic heart failure 2012: the Task Force for the Diagnosis and Treatment of Acute and Chronic Heart Failure 2012 of the European Society of Cardiology. Developed in collaboration with the Heart Failure Association (HFA) of the ESC. *Eur Heart J* 2012;**33**:1787–1847.
5. Yancy CW, Jessup M, Bozkurt B, Butler J, Casey DE Jr, Drazner MH, Fonarow GC, Geraci SA, Horwich T, Januzzi JL, Johnson MR, Kasper EK, Levy WC, Masoudi FA, McBride PE, McMurray JJ, Mitchell JE, Peterson PN, Riegel B, Sam F, Stevenson LW, Tang WH, Tsai EJ, Wilkoff BL, American College of Cardiology Foundation, American Heart Association Task Force on Practice Guidelines. 2013 ACCF/AHA guideline for the management of heart failure: a report of the American College of Cardiology Foundation/American Heart Association Task Force on Practice Guidelines. *J Am Coll Cardiol* 2013;**62**:e147–e239.
6. ICH harmonised tripartite guideline—guideline for good clinical practice: E6(R1). Geneva: International Conference on Harmonisation of Technical Requirements for Registration of Pharmaceuticals for Human Use, June 10, 1996. http://www.ich.org/products/guidelines/efficacy/efficacy-single/article/good-clinical-practice.html (5 October 2014).
7. Declaration of Helsinki: ethical principles for medical research involving human subjects. http://www.wma.net/en/30publications/10policies/b3/index.html (5 October 2014).
8. MedDRA (2015) MedDRA MedDRA: Medical Dictionary for Regulatory Activities. 2015. Available at http://www.meddra.org/
9. Krum H, McMurray JJ, Abraham WT, Dickstein K, Kober L, Desai AS, Solomon SD, Chiang Y, Gimpelewicz C, Reimund B, Ali MA, Tarnesby G, Massie BM; Committees and Investigators. The Aliskiren Trial to Minimize OutcomeS in Patients with HEart failure trial (ATMOSPHERE): revised statistical analysis plan and baseline characteristics. *Eur J Heart Fail* 2015;**17**:1075–1083.
10. Maggioni AP, Anker SD, Dahlstrom U, Filippatos G, Ponikowski P, Zannad F, Amir O, Chioncel O, Leiro MC, Drozdz J, Erglis A, Fazlibegovic E, Fonseca C, Fruhwald F, Gatzov P, Goncalvesova E, Hassanein M, Hradec J, Kavoliuniene A, Lainscak M, Logeart D, Merkely B, Metra M, Persson H, Seferovic P, Temizhan A, Tousoulis D, Tavazzi L; Heart Failure Association of the ESC. Are hospitalized or ambulatory patients with heart failure treated in accordance with European Society of Cardiology guidelines? Evidence from 12 440 patients of the ESC Heart Failure Long-Term Registry. *Eur J Heart Fail* 2013;**15**:1173–1184.
11. Effect of enalapril on mortality and the development of heart failure in asymptomatic patients with reduced left ventricular ejection fractions. The SOLVD Investigators. *N Engl J Med* 1992;**327**:685–691.
12. McMurray J, Cohen-Solal A, Dietz R, Eichhorn E, Erhardt L, Hobbs FD, Krum H, Maggioni A, McKelvie RS, Pina IL, Soler-Soler J, Swedberg K. Practical recommendations for the use of ACE inhibitors, beta-blockers, aldosterone antagonists and angiotensin receptor blockers in heart failure: putting guidelines into practice. *Eur J Heart Fail* 2005;**7**:710–721.

© 2016 The Authors. *European Journal of Heart Failure* published by John Wiley & Sons Ltd on behalf of European Society of Cardiology.

NPC-VS-667-000000738

# EXHIBIT 21

# TITRATION study confirms LCZ696 safe and tolerated in clinical practice

escardio.org/The-ESC/Press-Office/Press-releases/TITRATION-study-confirms-LCZ696-safe-and-tolerated-in-clinical-practice

**Embargoes dates:**
23 May 2015 11:00 CEST (Paris)
23 May 2015 10:00 BST (London)
23 May 2015 05:00 EDT (New York)

**Seville, Spain – 23 May 2015**: The TITRATION study has confirmed that LCZ696 is safe and tolerated by patients with heart failure and reduced ejection fraction (HFrEF) in clinical practice, announced principal investigator Dr Michele Senni in a late breaking trials session today at Heart Failure 2015. More than 70% of patients achieved the target dose 200 mg BID over a 3- or 6-week up-titration regimen.

> "At the end of the study patients asked us to continue LCZ696 because they felt better."

Heart Failure 2015 is the main annual meeting of the Heart Failure Association (HFA) of the European Society of Cardiology (ESC). The scientific programme is here.

Dr Senni, who is head of the Cardiology, Heart Failure and Heart Transplant Unit, Azienda Ospedaliera Papa Giovanni XXIII, Bergamo, Italy, and national leader of PARADIGM-HF, said: "When you are treating patients you need to be confident with a new drug. The PARADIGM-HF trial demonstrated the superiority of LCZ696, an angiotensin receptor neprilysin inhibitor, over the ACE inhibitor enalapril in reducing the risk of cardiovascular mortality and heart failure hospitalisation.[1] Moreover it prevented clinical progression in patients with HFrEF. The TITRATION study was designed to evaluate the practical application of LCZ696 in the clinic."

TITRATION was a randomised, double blind study that assessed the safety and tolerability of initiating and up-titrating LCZ696 from 50mg BID to a target dose of 200mg BID in a 3-week (condensed) versus 6-week (conservative) regimen in patients with HFrEF (ejection fraction ≤35%). The study enrolled a broader range of patients than the PARADIGM-HF trial, including inpatients and patients naïve to ACE inhibitors or angiotensin receptor blockers (ARBs).

The study was conducted in two phases. The first was an open label run in period in which LCZ696 was tested for tolerability and safety at a dosage of 50 mg BID for 5 days. Patients were then randomised 1:1 to LCZ696 in a conservative up-titration over 6 weeks versus a condensed up-titration over 3 weeks. In both groups the target dose was 200 mg BID.

1/4

NPC-VS-667-000000748

Primary endpoints were the proportion of patients experiencing pre-specified adverse events (symptomatic hypotension, hyperkalaemia, renal dysfunction, angioedema) and laboratory outcomes including systolic blood pressure <95 mmHg and a doubling of serum creatinine from baseline. Secondary endpoints included the number of patients achieving the target dose without any down-titration or interruption over 12 weeks (defined as treatment success).

Of the 540 patients enrolled in the run in, 498 (92%) were randomised and of those, 429 (86%) completed the study. There were no differences in the primary endpoints between groups. After excluding patients who discontinued LCZ696 because of non-adverse events or death, treatment success was achieved in 78% and 84% of patients in the condensed and conservative regimens, respectively (p=0.07).

Dr Senni said:

> "At least 76% of randomised patients achieved and maintained the target dose of LCZ696 200mg BID, regardless of the up-titration regimen. The target dose was also achieved for at least 2 weeks leading to study completion in 80% of patients including those requiring a temporary down-titration or dose interruption during the study. Commonly reported adverse events in the TITRATION study were in line with the LCZ696 group in the PARADIGM-HF trial, confirming those findings in real life."

He added:

> "This study provides complementary data beyond PARADIGM-HF to support the use of LCZ696 in clinical practice in a broader range of patients such as inpatients and patients naïve to ACE inhibitors and ARBs, which largely mimics the real life situation. Both regimens reached a very high rate of treatment success and tolerability."

Dr Senni concluded:

> "We expect LCZ696 to be on the market in Europe and the US within the coming year which is good news. At the end of the study patients asked us to continue LCZ696 because they felt better. TITRATION was an open label study so we know patients were taking the drug. We have seen in real life that switching to LCZ696 is beneficial for patients."

ENDS

## References

**1**McMurray JJ, Packer M, Desai AS, Gong J, Lefkowitz MP, Rizkala AR, Rouleau JL, Shi VC, Solomon SD, Swedberg K, Zile MR; PARADIGM-HF Investigators and Committees. Angiotensin-neprilysin inhibition versus enalapril in heart failure. N Engl J Med. 2014

NPC-VS-667-000000749

Sep 11;371(11):993-1004. doi: 10.1056/NEJMoa1409077. Epub 2014 Aug 30.

## Notes to editor

SOURCES OF FUNDING: The study was sponsored by Novartis

DISCLOSURES: Professor Michele Senni is a consultant for Novartis and Abbot Vascular, and has also received honoraria. He has also received speaking honoraria from Novartis and Abbot Vascular.

About the Heart Failure Association
The European Society of Cardiology (ESC) represents more than 80 000 cardiology professionals across Europe and the Mediterranean. Its mission is to reduce the burden of cardiovascular disease in Europe.

The Heart Failure Association (HFA) is a registered branch of the ESC. Its aim is to improve quality of life and longevity, through better prevention, diagnosis and treatment of heart failure, including the establishment of networks for its management, education and research.

Information for journalists attending Heart Failure 2015
Heart Failure 2015 will be held 23 to 26 May in Seville, Spain, at the Sevilla Palacio de Congresos. The full scientific programme is available here

• Free registration applies to press representatives upon receipt of valid credentials and a fully completed embargo form. (to be sent to press@escardio.org)
• Credential: A valid press card or appropriate letter of assignment with proof of three recent published articles (cardiology or health-related, or referring to a previous ESC Event). The ESC media and embargo policy is here
• The ESC Press Office will check your credential and confirm your press accreditation by email.
• Press registration is not available to Industry or its Public Relations representatives, event management, marketing or communications representatives
• The decision of the ESC Press Office is final regarding all press registration requests.
• The ESC Press Office will verify the documents and confirm by email that your Press Accreditation is valid.

## More than 70% of HFrEF patients achieved the target dose

23 May 2015
The TITRATION study has confirmed that LCZ696 is safe and tolerated by patients with heart failure and reduced ejection fraction (HFrEF) in clinical practice, announced

NPC-VS-667-000000750

principal investigator Dr Michele Senni in a late breaking trials session today at Heart Failure 2015

Heart Failure

NPC-VS-667-000000751